**No. 21-2287**

# In the United States Court of Appeals for the Seventh Circuit

———————————————

ROY SARGEANT (Federal Prisoner No. #11709-171),

*Plaintiff-Appellant*,

v.

ARACELIE BARFIELD,

*Defendant-Appellee.*

———————————————

On Appeal from the United States District Court
for the Northern District of Illinois
No. 3:19-cv-50187 (Hon. Iain D. Johnston)

———————————————

## BRIEF OF APPELLANT

———————————————

Andrew R. Hirschel
Jacob P. Saracino
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000

Andrew T. Tutt
R. Stanton Jones
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Roy Sargeant*

September 20, 2022

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Roy Patrick Sargeant

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ Andrew Tutt     Date: 9/20/2022

Attorney's Printed Name: Andrew T. Tutt

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** [✓]     **No** [ ]

Address: Arnold & Porter Kaye Scholer LLP

601 Massachusetts Ave, NW Washington, DC 20001-3743

Phone Number: (202) 942-5242     Fax Number: (202) 942-5999

E-Mail Address: andrew.tutt@arnoldporter.com

rev. 12/19 AK

i

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Roy Patrick Sargeant

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: /s/ R. Stanton Jones                Date: 9/20/2022

Attorney's Printed Name:  R. Stanton Jones

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]    **No** [✓]

Address:  Arnold & Porter Kaye Scholer LLP

 601 Massachusetts Ave, NW Washington, DC 20001-3743

Phone Number:  (202) 942-5563                Fax Number:  (202) 942-5999

E-Mail Address: stanton.jones@arnoldporter.com

rev. 12/19 AK

Save As     Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __21-2287__

Short Caption: __Sargeant v. Barfield__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Roy Patrick Sargeant

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: __/s/ Andrew R. Hirschel__      Date: __9/20/2022__

Attorney's Printed Name: __Andrew R. Hirschel__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: __Arnold & Porter Kaye Scholer LLP__

__250 West 55th Street New York, NY 10019-9710__

Phone Number: __(212) 836-7827__      Fax Number: __(212) 836-8689__

E-Mail Address: __andrew.hirschel@arnoldporter.com__

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __21-2287__

Short Caption: __Sargeant v. Barfield__

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    [ ] **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Roy Patrick Sargeant

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy

(3) If the party, amicus or intervenor is a corporation:

  i) Identify all its parent corporations, if any; and

  ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

Attorney's Signature: __/s/ Jacob Saracino__  Date: __9/20/2022__

Attorney's Printed Name: __Jacob Saracino__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** [ ] **No** [✓]

Address: __Arnold & Porter Kaye Scholer LLP__

   __250 West 55th Street New York, NY 10019-9710__

Phone Number: __(212) 836-7917__  Fax Number:  __(212) 836-8689__

E-Mail Address: __jacob.saracino@arnoldporter.com__

rev. 12/19 AK

iv

# TABLE OF CONTENTS

RULE 26.1 DISCLOSURES ......................................................................... i

TABLE OF AUTHORITIES........................................................................ vii

JURISDICTIONAL STATEMENT .............................................................. 1

ISSUE PRESENTED .................................................................................. 1

INTRODUCTION ....................................................................................... 1

STATUTES AND REGULATIONS ............................................................ 4

STATEMENT OF THE CASE .................................................................... 4

    A.   Legal Background ........................................................................ 4

    B.   Factual and Procedural Background........................................... 7

SUMMARY OF ARGUMENT .................................................................. 10

STANDARD OF REVIEW........................................................................ 13

ARGUMENT:  Plaintiff's Complaint Stated a *Bivens* Claim Under the Eighth
Amendment. ............................................................................................. 14

    A.   Plaintiff's Claim Arises In The Familiar Context of a Prisoner's Eighth
            Amendment Failure to Protect Claim....................................... 15

    B.   Even If Plaintiff's Claim Arises in a New Context, this Case Would
            Warrant An Exceedingly Modest Extension of the *Bivens* Remedy .................... 23

CONCLUSION ......................................................................................... 32

CERTIFICATE OF COMPLIANCE ......................................................... 33

CERTIFICATE OF FILING AND SERVICE ........................................... 34

APPENDIX

Certificate of Compliance with Circuit Rule 30 ................................................................. i

Judgment of dismissal,
    Dist. Ct. Dkt. 73 (June 17, 2021) ................................................................. A1

Memorandum and Order Granting Motion to Dismiss,
    Dist. Ct. Dkt. 72 (June 17, 2021) ................................................................. A2

Order appointing counsel,
    Dist. Ct. Dkt. 57 (July 24, 2020) ................................................................. A6

PLRA screening order,
    Dist. Ct. Dkt. 29 (March 4, 2020) ................................................................. A9

Amended complaint,
    Dist. Ct. Dkt. 24 (April 22, 2020) ................................................................. A14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bagola v. Kindt*,
131 F.3d 632 (7th Cir. 1997) ........................................................................ 10, 18

*Bistrian v. Levi*,
696 F.3d 352 (3d Cir. 2012) ................................................................................ 10

*Bistrian v. Levi*,
912 F.3d 79 (3d Cir. 2018) ..................................... 2, 6, 10, 11, 15, 16, 17, 18, 19, 24, 28, 29, 30

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
403 U.S. 388 (1971) ........................................................................................ 1, 4

*Bush v. Lucas*,
462 U.S. 367 (1983) ............................................................................................ 29

*Caldwell v. Warden, FCI Talladega*,
748 F.3d 1090 (11th Cir. 2014) ......................................................................... 22

*Carlson v. Green*,
446 U.S. 14 (1980) .......................................................... 1, 5, 19, 24, 25, 29, 30

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .............................................................................................. 29

*Correctional Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) ................................................................................................ 6

*Curry v. Crist*,
226 F.3d 974 (8th Cir. 2000) ................................................................................ 6

*Dale v. Poston*,
548 F.3d 563 (7th Cir. 2008) ........................................................................ 10, 18

*Davis v. Passman*,
442 U.S. 228 (1979) .............................................................................................. 5

*Doty v. Hollingsworth*,
No. 15-3016 (NLH), 2018 WL 1509082 (D.N.J. Mar. 27, 2018) ........................ 22

*Egbert v. Boule*,
142 S. Ct. 1793 (2022) ................................ 2, 3, 6, 7, 9, 11, 12, 13, 23, 30, 31

*Egbert v. Boule*,
    142 S. Ct. 457 (2021) ........................................................................... 12

*Estelle v. Gamble*,
    429 U.S. 97 (1976) .............................................................................. 26

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ......................................... 1, 5, 6, 19, 21, 25, 26, 28

*Fleming v. Reed*,
    2019 WL 4195890 (C.D. Cal. Sept. 3, 2019) ...................................... 22

*Fleming v. Reed*,
    No. ED-cv-16-0684-PSG (AGR), 2019 WL 4196322 (C.D. Cal. July 23,
    2019) .................................................................................................... 22

*Garraway v. Cuifo*,
    No. 1:17-cv-00533-DAD-GSA (PC), 2020 WL 860028 (E.D. Cal. Feb. 21,
    2020) .................................................................................................... 21

*Gillespie v. Civiletti*,
    629 F.2d 637 (9th Cir. 1980) ............................................................. 22

*Gloria S.S. Co. v. Smith*,
    376 F.2d 46 (5th Cir. 1967) .................................................................. 3

*Gooch v. Young*,
    24 F.4th 624 (7th Cir. 2022) .............................................................. 28

*Hernandez v. Mesa*,
    140 S. Ct. 735 (2020) ......................................................................... 12

*Herron v. Meyer*,
    820 F.3d 860 (7th Cir. 2016) ........................................................ 10, 18

*Hicks v. Ferreyra*,
    965 F.3d 302 (4th Cir. 2020) ............................................................. 19

*Himmelreich v. Fed. Bureau of Prisons*,
    No. 4:10-cv-2404, 2019 WL 4694217 (N.D. Ohio Sept. 25, 2019) ...... 21

*Hoffman v. Preston*,
    26 F.4th 1059 (9th Cir. 2022) .............................. 2, 11, 12, 23, 24

*Jacobs v. Alam*,
    915 F.3d 1028 (6th Cir. 2019) ........................................................... 18

*In re Kilgus,*
811 F.2d 1112 (7th Cir. 1987) ................................................................ 3

*Kurowski v. Krajewski,*
848 F.2d 767 (7th Cir. 1988) .................................................................. 3

*Lee v. Matevousian,*
No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593 (E.D. Cal. Oct. 26, 2018) ...... 21

*Line Berry v. Johnson,*
No. 5:17-04124, 2018 WL 4232907 (S.D.W. Va. Aug. 10, 2018) ................. 21

*Lineberry v. United States,*
No. 5:17-cv-04124, 2018 WL 4224458 (S.D.W. Va. Sept. 5, 2018) ............... 21

*Mammana v. Fed. Bureau of Prisons,*
934 F.3d 368 (3d Cir. 2019) ................................................................... 20

*Marcue v. Lynn,*
992 F.3d 625 (7th Cir. 2021) ................................................................. 14

*McCarthy v. Madigan,*
503 U.S. 140 (1992) ............................................................................... 6

*McCutcheon v. Fed. Election Comm'n,*
572 U.S. 185 (2014) ............................................................................. 31

*McDaniels v. United States,*
2019 WL 1045132 (C.D. Cal. Mar. 5, 2019) ........................................... 21

*McDaniels v. United States,*
No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292 (C.D. Cal. Dec. 28, 2018) ..... 21

*Minneci v. Pollard,*
565 U.S. 118 (2012) ............................................................................... 6

*Ochoa v. State Farm Life Ins. Co.,*
910 F.3d 992 (7th Cir. 2018) ................................................................. 13

*Peraza v. Martinez,*
No. 14-cv-03056-MJW, 2017 WL 11486456 (D. Colo. Nov. 29, 2017) ............ 22

*Smith v. United States,*
561 F.3d 1090 (10th Cir. 2009) ............................................................. 22

*Strickland v. Halsey,*
638 F. App'x 179 (4th Cir. 2015) ............................................................ 6

*United States v. Carolene Prods. Co.,*
    304 U.S. 144 (1938) ............................................................................ 12, 31

*Walker v. Schult,*
    45 F.4th 598 (2d Cir. 2022) .................................................................. 21

*Walker v. Schult,*
    463 F. Supp. 3d 323 (N.D.N.Y. 2020) ................................................ 21

*Wash. Alliance of Tech. Workers v. U.S. Dep't of Homeland Sec.,*
    892 F.3d 332 (D.C. Cir. 2018) ............................................................. 14

*Wright v. North Carolina,*
    787 F.3d 256 (4th Cir. 2015) ............................................................... 13, 14

*Ziglar v. Abbasi,*
    137 S. Ct. 1843 (2017) .................................................... 5, 7, 11, 18, 19, 20, 27

**Statutes**

28 U.S.C. § 1915A(a) (1996) ........................................................................ 27

28 U.S.C. § 2679(b)(2)(A) ............................................................................ 30

42 U.S.C. § 1997e(a) (2013) ......................................................................... 26, 28

Prison Litigation Reform Act, 42 U.S.C. §1997e(c) .................................... 4

**Legislative Materials**

141 Cong. Rec. H14078 (daily ed. Dec. 6, 1995) ........................................ 26

S. Rep. No. 93-588 (1973) ............................................................................ 29

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice &*
    *Procedure* § 1357 (3d ed. 2015) ......................................................... 14

John Hart Ely, *Democracy and Distrust: A Theory of Judicial Review* 103
    (1980) .................................................................................................... 31

## JURISDICTIONAL STATEMENT

Plaintiff-appellant Roy Sargeant sued Defendant-appellee under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) alleging a violation of Plaintiff-appellant's clearly established rights under the First and Eighth Amendments. *Sargeant v. Barfield*, No. 19 CV 50187, 2021 WL 2473805, at *1 (N.D. Ill. June 17, 2021). "Jurisdiction is supplied by 28 U.S.C. § 1331, because a claim under *Bivens* presents a federal question." *Leavell v. Kieffer*, 189 F.3d 492, 495 (7th Cir. 1999).

The district court entered final judgment on June 17, 2021, dismissing all of Mr. Sargeant's claims against the Defendant. No motion for new trial or motion to reconsider the judgment was filed. Mr. Sargeant had 60-days to appeal the judgment because the Defendant is a federal official sued in an individual capacity. Fed. R. App. P. 4(a)(1)(B)(iv). Mr. Sargeant timely noticed an appeal 26 days after the entry of final judgment, on July 13, 2021. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUE PRESENTED

Whether plaintiff's *pro se* complaint of a prison official's deliberate indifference to a substantial risk of serious harm states a plausible claim for an Eighth Amendment violation under *Carlson v. Green*, 446 U.S. 14 (1980) as ratified and expanded by *Farmer v. Brennan*, 511 U.S. 825 (1994), or, alternatively, under a modest extension of *Bivens,* 403 U.S. 388.

## INTRODUCTION

This case is about the scope of the Supreme Court's decision in *Carlson v. Green*, 446 U.S. 14 (1980), as ratified and expanded by *Farmer v. Brennan*, 511 U.S. 825 (1994). *Carlson* and *Farmer* are cases that came after *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) in which the Supreme Court held that federal

1

prisoners may bring an Eighth Amendment claim for damages against prison officials who exhibit deliberate indifference to a significant risk that they will suffer grievous harm and then suffer that harm.

The Plaintiff-appellant in this case, Roy Sargeant, was (and is) a federal inmate. In retaliation for filing grievances, Defendant-appellee Aracelie Barfield assigned Mr. Sargeant to live in housing with known violent inmates. As a consequence Mr. Sargeant suffered intimidation, violent attacks, and physical harm at the hands of those inmates. Mr. Sargeant now seeks a remedy against Ms. Barfield for her failure to protect him from the substantial risk that Mr. Sargeant would be harmed by those known violent inmates, in violation of his clearly established Eighth Amendment rights. The only issue on appeal is whether Mr. Sargeant has a remedy for this severe constitutional violation. Because Mr. Sargeant is no longer in custody in Ms. Barfield's prison, the only possible redress for Mr. Sargeant is damages.

Mr. Sargeant *does* have a viable claim and his case should not have been dismissed. A case may proceed under *Bivens* if either of two conditions are met: (1) the case arises in a previously recognized "*Bivens* context"; or (2) arises in a "new *Bivens* context" but there is no "reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 142 S. Ct. 1793, 1803-04 (2022). Mr. Sargeant's case meets both prongs of that analysis and thus may proceed for both reasons. His case arises in the same *Bivens* context as *Carlson* and *Farmer*, *see Bistrian v. Levi*, 912 F.3d 79, 88-94 (3d Cir. 2018), and even if it did not, this case would warrant "a very modest expansion of the Bivens remedy to this context," *Hoffman v. Preston*, 26 F.4th 1059, 1061 (9th Cir. 2022).

To be sure, after reviewing Mr. Sargeant's *pro se* complaint, the court below dismissed Mr. Sargeant's Eighth Amendment claim at the screening stage and permitted only a First Amendment *Bivens* claim to proceed. *See* A5 n.2, A9-A13. The court appointed counsel solely to argue the First Amendment claim, A6-A8, and ultimately dismissed the case on the grounds that First Amendment claims are not cognizable in actions under *Bivens*, A2-A5. This Court later held this appeal in abeyance pending the Supreme Court's decision in *Egbert*, Dkt. 16, which held that First Amendment claims are not cognizable in actions under *Bivens*, *see Egbert*, 142 S. Ct. at 1807. But the decision in *Egbert* does not end this case, because the facts alleged in the complaint, construed in the light most favorable to Mr. Sargeant, allege a clear Eighth Amendment violation on the basis of failure to protect. A3, A10, A22. As a consequence, the complaint should not have been dismissed on that basis.[1]

At bottom, this case presents a classic *Carlson* claim, as ratified and expanded by *Farmer*. Even if it did arise in a different context from *Carlson* and *Farmer* (and it does not), it would require at most an immaterial expansion of *Bivens*, an expansion there is no reason to believe that Congress is better positioned to recognize than the courts, given the

---

[1] The Court can construe this appeal *either* as an appeal of the final dismissal order (Dkt.72) *or* as an appeal from the screening order (Dkt.29). The general rule is that "[a]n appeal from the final judgment brings up all antecedent issues," *In re Kilgus*, 811 F.2d 1112, 1115 (7th Cir. 1987), and "all interlocutory orders are reviewable on appeal from the final decree," *Gloria S.S. Co. v. Smith*, 376 F.2d 46, 47 (5th Cir. 1967). Thus "[i]nterlocutory orders"—including the district court's initial dismissals in its screening order—"therefore may be stored up and raised at the end of the case." *Kurowski v. Krajewski*, 848 F.2d 767, 772 (7th Cir. 1988).

political powerlessness of prisoners and the courts' unique role as the protectors of their Eighth Amendment rights. The Court should reverse.

## STATUTES AND REGULATIONS

The Prison Litigation Reform Act, 42 U.S.C. §1997e(c), provides in relevant part:

**(c) Dismissal**
(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

## STATEMENT OF THE CASE

### A.     Legal Background

This case begins with *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388. In *Bivens* the Supreme Court recognized that individuals could bring suits for damages against federal officials who violated their clearly established rights under the Fourth Amendment. *Id.* at 389. In that case, agents of the Federal Bureau of Narcotics violated the Fourth Amendment by warrantlessly entering the plaintiff's apartment, arresting him for alleged narcotics violations, conducting an illegal search, and later subjecting him to a visual strip search. *Id.* No criminal case was brought meaning the exclusionary rule was unavailable. *Id.* at 410 (Harlan, J., concurring). The Court held that the plaintiff could pursue a damages remedy for these egregious constitutional violations because there were "no special factors counseling hesitation" against the recognition of a remedy to deter such conduct by federal agents. *Id.* at 396.

In the following decade, the Court twice extended the *Bivens* cause of action—first, to permit a former congressional staffer's Fifth Amendment sex-discrimination claim, *see*

*Davis v. Passman*, 442 U.S. 228 (1979); and second, to permit a federal prisoner's deliberate indifference claim under the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14 (1980). In *Carlson*, the complaint alleged that federal prison officials failed to protect an inmate from a known risk of physical harm, specifically a serious risk to his physical wellbeing.  *See* 446 U.S. at 16-23 & n.1. The prison officials knowingly failed to give the inmate competent medical care and the inmate suffered personal injuries, from which he ultimately died. *Id.* In *Abbasi*, which limited the extension of *Bivens* to new contexts, the Supreme Court made clear that *Carlson* remains good law and that a *Bivens* claim that arises in the same context as *Carlson* remains viable. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017).

Fourteen years after *Carlson*, in 1994, the Supreme Court ratified and broadened the scope of *Carlson* in *Farmer v. Brennan*, 511 U.S. 825 (1994).  In *Farmer*, the Court assessed a "failure to protect" claim brought under the Eighth Amendment and *Bivens* as a result of prisoner-on-prisoner violence. 511 U.S. at 829-34. Although the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim (because that was not the question on which the Court granted certiorari) it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length "deliberate indifference" as the legal standard to assess the *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed. *Id.* at 832-49.  After clarifying the legal significance of "deliberate indifference," *id*. at 832, the Supreme Court remanded the case for the plaintiff to proceed under *Carlson*.  In so doing, the Supreme Court signaled that the damages remedy for deliberate indifference first recognized by *Carlson* extends

not just to inadequate medical care, but to risks that an inmate will be the victim of inmate-on-inmate violence. *Id*. at 851; *see Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018).

In the years since *Farmer* courts nationwide have held that *Farmer* "clearly establishes that the Eighth Amendment protects prisoners from violence perpetrated by other inmates." *Strickland v. Halsey*, 638 F. App'x 179, 189 (4th Cir. 2015); *see also Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000) ("Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates.").

Since *Farmer*, the Supreme Court has continued to view that decision as recognizing a *Bivens* claim. In *Minneci v. Pollard*, 565 U.S. 118, 130 (2012), the Court specifically discussed *Farmer* as setting a standard applicable to *Bivens* actions, comparing a *Farmer* deliberate indifference claim to state-law causes of action to note that "*Bivens* actions, even if more generous to plaintiffs in some respects, may be less generous in others." 565 U.S. at 129-30. Likewise, in *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 73 (2001), the Court pointed to *Farmer* as establishing the appropriate "'deliberate indifference' standard of Eighth Amendment liability" for a complaint "raising a *Bivens* claim." Indeed, in *Malesko*, every Justice recognized that *Farmer* reflected an established *Bivens* claim. *See id.* at 76 (Stevens, J., dissenting) ("We have never . . . qualified our holding that Eighth Amendment violations are actionable under *Bivens*.") (citing *Farmer v. Brennan*, 511 U.S. 825 (1994); *McCarthy v. Madigan*, 503 U.S. 140 (1992)).

Since *Bivens*, *Davis*, *Carlson*, and *Farmer*, "the Court has not implied additional causes of action under the Constitution." *Egbert*, 142 S. Ct. at 1802. The Supreme Court's two most recent opinions, in *Egbert* and *Abbasi* have said bluntly that "recognizing a cause

of action under Bivens is 'a disfavored judicial activity.' *Id.* at 1803 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856-57 (2017)).  Nonetheless, the Court has noted that *Bivens* actions are permitted in the three "contexts" in which the Court has already extended the *Bivens* remedy.  *Abbasi*, 137 S. Ct. at 1855, 1857, 1860.  Outside of those contexts "[i]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong" courts are instructed to hesitate to expand the *Bivens* remedy.  *Id.* at 1858; *accord Egbert*, 142 S. Ct. at 1803 (explaining courts should not expand the remedy if "there is any reason to think that Congress might be better equipped to create a damages remedy").

Thus, the Supreme Court's *Bivens* cases now call on courts to make two threshold determinations.  First, "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action."  *Egbert*, 142 S. Ct. at 1803 (cleaned up).  Second, "if a claim arises in a new context" whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  *Id.* (cleaned up).

### B.    Factual and Procedural Background

At all times relevant to this case, Mr. Sargeant was a federal inmate confined in the United States Penitentiary in Thomson, Illinois ("Thomson").  The facts relevant to his claim revolve around adverse actions taken by defendant Aracelie Barfield, Mr. Sargeant's case manager, who was responsible for guiding and evaluating Mr. Sargeant while he was incarcerated.

Mr. Sargeant asked one of the defendant's BOP colleagues, Nicole Cruze in April 2019 about why the delivery of books he had ordered in March was delayed. A18. She "verbalize[d] negative insults to [his] sexual preferences, needs, and wants" and told Mr. Sargeant that the books were a security risk. A18.  He ultimately received the books later in April. A18.  Ms. Cruze stopped delivery of a second book order that arrived at the prison on June 14, 2019, although Ms. Cruze denied having these books. A18.  Mr. Sargeant eventually received those books in August, but in the meantime he reported her conduct as intimidation and retaliation for Mr. Sargeant "correcting her about [his] sexual preferences." A18.  He also, on July 19, 2019, filed a PREA report about Ms. Cruze's "sexual harassment." A18.

That same day, Ms. Barfield (Mr. Sargeant's case manager) and Ms. Cook-Jenkins (the unit manager) did rounds and gave Mr. Sargeant a copy of the response being prepared to his PREA report. A19.  The response was signed by Ms. Cruze, which Mr. Sargeant alleges was a violation of policy. A19. When Mr. Sargeant pointed this out to Ms. Barfield, she "angrily" started "parading around" telling other officers that Mr. Sargeant had filed a PREA over books. A20. Mr. Sargeant then filed a "bias complaint" against Ms. Barfield accusing her of misconduct. A20.  According to Mr. Sargeant, in retaliation for filing his PREA report, Ms. Barfield assigned him to live with inmates known to be particularly violent, and with whom Mr. Sargeant should not have been housed because they were "active" inmates and he was a "programming" inmate. A22.  Some of these inmates attacked Mr. Sargeant and started fights with him.  A22.  He compared the dangerousness of the situation to an earlier event in which he was attacked by another inmate while handcuffed

and unable to protect himself. A22. These actions continued until Mr. Sargeant was transferred to a different facility. Dist. Ct. Dkt. 67, at 3.

Mr. Sargeant filed suit *pro se*, alleging the above facts and seeking redress without defining specific claims or causes of action. At the screening stage, the district court construed Mr. Sargeant's *pro se* complaint as seeking a *Bivens* remedy for First Amendment retaliation and permitted only that claim to move forward, dismissing all other claims without considering whether the allegations might state a claim under the Eighth Amendment, *Carlson*, and *Farmer*. A9-A13. Thereafter, Defendant moved to dismiss the complaint, focusing on the fact that the Supreme Court had not previously recognized a First Amendment *Bivens* remedy. Dist. Ct. Dkt. 53, 54. The district court appointed counsel for Mr. Sargeant for the specific purpose of responding to Defendant's motion to dismiss. A6-A8.

The district court rejected Mr. Sargeant's First Amendment *Bivens* claim and granted the motion to dismiss. A2-A5. This appeal followed.

During the pendency of this appeal, the Supreme Court granted certiorari in *Egbert*. The second question presented in that case was "[w]hether a cause of action exists under *Bivens* for First Amendment retaliation claims." Dkt. 15 at 2. At the request of the parties here, the Court placed this appeal in abeyance pending the Supreme Court's decision in *Egbert*. Dkt. 16. The Supreme Court ultimately held that First Amendment retaliation claims are not cognizable under *Bivens*. *Egbert*, 142 S. Ct. at 1807. The parties here then jointly sought to set a briefing schedule so that Appellant could pursue "the theory that his

*pro se* complaint stated an Eighth Amendment claim cognizable under *Bivens*." Dkt. 17 at 1. The Court set the requested schedule. Dkt. 18.

## SUMMARY OF ARGUMENT

The court should reverse because this case does not arise in a new *Bivens* context, and even if it did (and *it does not*) any expansion of the *Bivens* remedy here would be so exceptionally modest that it would satisfy the stringent criteria the Supreme Court set forth in *Egbert* and *Abbasi* for expanding *Bivens*.

**A.** This is a *Carlson/Farmer* case. "[A]n inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context." *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018) (Jordan, J., for the court).[2] This species of *Carlson* claim is deeply entrenched nationwide and in this Circuit. *See Herron v. Meyer*, 820 F.3d 860, 862 (7th Cir. 2016); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997). Nothing in the Supreme Court's recent cases explicitly or tacitly overrules those cases. As courts have recognized for decades *Carlson*'s context is (1) an Eighth Amendment suit (2) by an inmate against a rank and file prison official (3) for deliberate indifference to a known risk of substantial harm.

That conclusion is bolstered by *Egbert* and *Abbasi*'s statement that for a *Bivens* context to be "new" it must be "*meaningfully* different" from an already recognized *Bivens*

---

[2] In *Bistrian* the plaintiff was a pretrial detainee, meaning the plaintiff's claims arose under the Fifth Amendment rather than the Eighth Amendment. *See Bistrian v. Levi*, 696 F.3d 352, 372–74 & n.8 (3d Cir. 2012) (explaining "pretrial detainees are, at least, on equal footing with sentenced inmates when they claim that prison officials failed to protect them from other inmates"). The two contexts are the same. *See id.*

context. *Egbert*, 142 S. Ct. at 1803; *Abbasi*, 137 S. Ct. at 1859 (emphasis added). *Abbasi* listed as examples of factors that would amount to potentially meaningful differences "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]" *Abbasi*, 137 S. Ct. at 1860. None of those differences— nor any differences of a similar magnitude—distinguish this case from *Carlson* and *Farmer*. Because Mr. Sargeant's claims make out a straightforward failure-to-protect claim under *Carlson*, as ratified and broadened by *Farmer*, this case does not present a new *Bivens* context and therefore should be allowed to proceed. *Bistrian*, 912 F.3d at 90-91.

**B.** Even if this case arose in a new *Bivens* context (and it does not) it would warrant "a very modest expansion of the *Bivens* remedy to this context." *Hoffman*, 26 F.4th at 1061. "[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Abbasi*, 137 S. Ct. at 1858). Here there are none. *See Hoffman*, 26 F.4th at 1065-74. Other remedies potentially available to Mr. Sargeant do not adequately redress his harms and therefore do not caution against expansion, no legislative action suggests that Congress does not want a damages remedy here, and allowing this claim to proceed would not risk an undue impact on governmental operations systemwide. *Id.* The Supreme

Court would not have left open the possibility of further extension of *Bivens*, nor would it have dedicated pages of dense analysis across multiple opinions to delineating the proper standard of review for such extensions, if no such extensions could ever occur. If it had intended to foreclose even *de minimis* extensions of *Bivens*, it knew perfectly well how to do so.

More fundamentally, the Courts have a special duty to protect the Eighth Amendment rights of prisoners because they are a discrete and insular minority lacking in political power. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938). There is no reason to think "Congress might be better equipped" than the courts here, *Egbert*, 142 S. Ct. at 1803, because prisoners—the people whose rights the Eighth Amendment vitally protects—have almost no ability to influence Congress to create an effective remedy to protect their Eighth Amendment rights within the prison walls. Thus, even if this case arose in a new context (and *it does not*) it would warrant "a modest extension of *Bivens*." *Hoffman*, 26 F.4th at 1074.

**C.** The Supreme Court's recent decision in *Egbert* does not change the foregoing analysis. *Egbert* presented questions regarding the propriety of expanding Fourth and First Amendment *Bivens* remedies in the border context—an area to which the Supreme Court has devoted considerable attention. *See, e.g.*, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020). The Supreme Court's decision in *Egbert* did not consider the scope of Eighth Amendment *Bivens* claims pursuant to either *Carlson* or *Farmer*. Further, the Supreme Court explicitly declined to revisit existing precedent under *Bivens*. *See Egbert v. Boule*, 142 S. Ct. 457 (2021) (Mem.) (denying certiorari as to "whether the Court should reconsider

*Bivens*"). *Egbert* also reaffirms the applicability of the two-step *Abbasi* framework. *Egbert*, 142 S. Ct. at 1803-04. To the extent *Egbert* clarifies the appropriate framework for determining when a *Bivens* remedy may lie, that clarification does not undermine this Court's deeply-rooted precedents recognizing that *Carlson*'s and *Farmer*'s context reaches claims of deliberate indifference to a substantial risk of inmate-on-inmate violence. *Egbert* considered, and rejected, extending *Bivens* to two new contexts—(1) Fourth Amendment claims against border agents and (2) First Amendment retaliation claims—but neither of those contexts are presented here. The concerns that counsel hesitation before extending *Bivens* to those contexts do not apply at all to claims like Mr. Sargeant's that fall within a well-worn *Bivens* context. Nor would they apply even if Mr. Sargeant's case required a trivial expansion of the *Bivens* remedy, because his case does not implicate concerns for border security or the possibility of manufactured claims of First Amendment retaliation that appeared to animate the Court's holdings.

This case involves a straightforward failure to protect claim in a prison. Those claims arise in an entrenched pre-existing *Bivens* context and play a vital role in protecting federal prisoners from serious harm at the hands of prison officials. The Court should reverse.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal under Rule 12(b)(6). *Ochoa v. State Farm Life Ins. Co.*, 910 F.3d 992, 994 (7th Cir. 2018). "[A] complaint is to be construed liberally so as to do substantial justice." *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (internal quotation marks omitted). "Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can

best be assessed after factual development." *Id.* (internal quotation marks omitted); *see also* 5B Charles Alan Wright & Arthur R. Miller et al., *Federal Practice & Procedure* § 1357 (3d ed. 2015) (noting that courts should "be especially reluctant to dismiss on the basis of the pleadings when the asserted theory of liability" should be "explored").

Under the *de novo* standard, this Court stands in the shoes of a district court, and when faced with a complaint that does not set forth explicit claims, this Court may construe the complaint to assert any plausibly stated legal claim. This Circuit has held that a complaint that states a claim may not be dismissed merely on the basis of counsel's failure to adequately oppose an argument in a motion to dismiss. *Marcue v. Lynn*, 992 F.3d 625, 630-31 (7th Cir. 2021); *see also Washington Alliance of Tech Workers*, 892 F.3d 332, 345 (D.C. Cir. 2018) (concluding that "a party may rest on its complaint in the face of a motion to dismiss if the complaint itself adequately states a plausible claim for relief.").

## ARGUMENT:
### Plaintiff's Complaint Stated a *Bivens* Claim Under the Eighth Amendment.

The district court's decision has two fundamental flaws, both of which are sufficient to reverse. First, fairly construed, Mr. Sargeant has stated a *Carlson/Farmer* claim: his allegations fall squarely within the context recognized in *Carlson*, as ratified by *Farmer*, which has been preserved over decades of scrutiny. Second, even if the Court were to find that Mr. Sargeant's Eighth Amendment claim arises in a new context (it does not), a trivial extension is warranted here, as it is exceedingly narrow and presents no special factors counseling hesitation.

**A.    Plaintiff's Claim Arises In The Familiar Context of a Prisoner's Eighth Amendment Failure to Protect Claim**

Mr. Sargeant's claims should not have been dismissed because his claim arises in an existing *Bivens* context—namely, Mr. Sargeant's case presents a straightforward *Carlson* claim (as ratified by *Farmer*). As the Third Circuit recently held in *Bistrian*, a case similar to this one in all material respects, "an inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context."[3] *Bistrian v. Levi*, 912 F.3d 79, 90 (3d Cir. 2018). In *Bistrian*, a pretrial detainee was placed in the Special Housing Unit of a federal prison. *Id.* at 84. While there he earned some privileges and became an orderly, a prison job that provided him the opportunity to interact with other inmates housed in the unit. *Id.* Knowing of his access to others in the unit, another inmate asked the plaintiff to pass notes between inmates. *Id.* The plaintiff reported this request to prison officials. *Id.* This led to the formation of a surveillance operation in which the plaintiff secretly passed inmate notes to prison officials. *Id.* The other inmates discovered the plaintiff's cooperation with prison officials, however, and he received multiple threats and made prison officials aware of them, including defendants. *Id.* Yet, despite their knowledge of the credible threats against the plaintiff, prison officials placed him in the recreation yard where he was brutally beaten by other inmates. *Id.* He suffered severe physical and psychological injuries forming the basis of his claim under the Fifth Amendment that the prison officials failed to protect him. *Id.* The district court denied the defendants' motions for summary judgment which claimed

---

[3] As explained *supra*, the claim in *Bistrian* arose under the Fifth Amendment because the plaintiff was a pretrial detainee. But that difference is immaterial because the two standards are identical.

that the plaintiff's *Bivens* claim failed as a matter of law.  *Id.* at 86.  The defendants' took interlocutory appeals.  *Id.*

On appeal, the Third Circuit affirmed the district court's denial of summary judgment.  *Id.* at 88.  The Third Circuit held that the claims did not arise in a new context *and even if they did* they would warrant a modest expansion of the *Bivens* remedy.  *Id.* Wrote the court: "prisoner-on-prisoner violence is not a new context for *Bivens* claims, and no special factors counsel against allowing a failure-to-protect cause of action."  *Bistrian*, 912 F.3d at 88.

On the question whether the action arose in a new context, the Court held that it did not because it represents an application of *Carlson* as ratified by *Farmer*.  Wrote the Third Circuit "an inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context."  *Id.* at 90. The Third Circuit explained that "*Farmer* is of greatest significance."  *Id.*  "In that case, the Court assessed a "failure to protect" claim brought under the Eighth Amendment and *Bivens* as a result of prisoner-on-prisoner violence."  *Id.* "Although the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim, it not only vacated the grant of summary judgment in favor of the prison officials but also discussed at length "deliberate indifference" as the legal standard to assess a *Bivens* claim, the standard by which all subsequent prisoner safety claims have been assessed."  *Id.*  Thus, concluded the Third Circuit:  "It seems clear, then, that the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment."  *Id.* at 91.

The Court further explained that "*Abbasi* does not contradict that reasoning." *Id.* Addressing the fact that the Court in *Abbasi* only "identified three *Bivens* contexts and did not address, or otherwise cite to, *Farmer*" the Third Circuit explained that it may be that "the Court simply viewed the failure-to-protect claim as not distinct from the Eighth Amendment deliberate indifference claim in the medical context." *Id.* "*Farmer* continues to be the case that most directly deals with whether a *Bivens* remedy is available for a failure-to-protect claim resulting in physical injury." *Id.* The Court further explained that the fact that the claim arose under the Fifth Amendment, rather than the Eighth Amendment, also did not change the analysis "because it is a given that the Fifth Amendment provides the same, if not more, protection for pretrial detainees than the Eighth Amendment does for imprisoned convicts." *Id.* "The failure-to-protect claim here thus does not call for any extension of *Bivens*." *Id.*

This case is on all fours with *Bistrian*. Here, Mr. Sargeant was intentionally placed into housing with known violent inmates who were likely to attack him and he did indeed "battle" and get into "fights" with them. A22. He compared the level of dangerousness of the situation to a situation in which he was attacked while handcuffed by an earlier dangerous inmate in a violent confrontation. *Id.* Moreover, his allegations clearly allege that Ms. Barfield knew that this assignment posed a danger to Mr. Sargeant—in fact, according to the complaint, assigning Mr. Sargeant to live with dangerous inmates was the point. *Id.*

This Court's own settled law is in accord with *Bistrian*. This Court has long recognized that inmates may bring deliberate indifference Eighth Amendment claims

17

under *Farmer. See Herron v. Meyer*, 820 F.3d 860, 862 (7th Cir. 2016); *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *Bagola v. Kindt*, 131 F.3d 632, 646 (7th Cir. 1997). In *Herron*, for example, the Court held that the plaintiff could maintain an Eighth Amendment claim under *Farmer* against a guard for deliberately "transferring him to a cell that the guard knew was likely to cause him injury" because the guard "disliked the fact that [the plaintiff] … had filed grievances and had refused to share a cell with an inmate who he thought endangered him." 820 F.3d at 861-62. In *Dale* the Court recognized that a plaintiff could maintain an Eighth Amendment claim under *Farmer* against several corrections officers for their failure to prevent a fellow inmate's assault. 548 F.3d at 569. In *Bagola*, the Court recognized that an inmate could maintain a claim under *Farmer* for deliberate indifference to the inmate's safety while using dangerous machinery. 131 F.3d at 646. Neither *Abbasi* nor *Egbert* overruled those cases by implication, meaning they remain binding precedent. *See Jacobs v. Alam*, 915 F.3d 1028, 1036 (6th Cir. 2019) (unless existing "Sixth Circuit precedents [are] inconsistent with *Ziglar* and *Hernandez*, we too must follow them").

First principles confirm the correctness of *Bistrian*'s holding. A straightforward application of the "new context" analysis set forth in *Egbert* and *Abbasi* establishes that Mr. Sargeant's case does not arise in a new context. Under *Egbert* and *Abbasi*, a claim may proceed if it arises in an existing *Bivens* context meaning it is not "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court[.]" *Bistrian*, 912 F.3d at 89-90 (quoting *Abbasi*, 137 S.Ct. at 1859). Examples of potentially meaningful differences include "[1] the rank of the officers involved; [2] the constitutional right at issue; [3] the generality or specificity of the official action; [4] the extent of judicial guidance as to how an

officer should respond to the problem or emergency to be confronted; [5] the statutory or other legal mandate under which the officer was operating; [and] [6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]" *Id.* at 90 (quoting *Abbasi*, 137 S.Ct. at 1860).

Taking each of the potential differences identified by *Abbasi* one at a time, this case is indistinguishable from *Carlson* and *Farmer*. *See Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020) (holding that a *Bivens* context is not new where "along every dimension the Supreme Court has identified as relevant to the inquiry" the case matches an earlier-recognized *Bivens* context). Start with "[1] the rank of the officers involved." *Abbasi*, 137 S.Ct. at 1860. The rank of the officers involved here is *lower* than in *Carlson* and *Farmer*. Mr. Sargeant seeks *only* to hold accountable the individual rank-and-file prison official who he alleges was directly responsible for the substantial risk of harm that Mr. Sargeant faced. The plaintiff in *Carlson*, by contrast, sought damages from a range of officials, including the federal BOP director, 446 U.S. at 14; the plaintiff in *Farmer* sued the prison warden in addition to multiple rank-and-file officials, 511 U.S. at 825. Next consider "[2] the constitutional right at issue." *Abbasi*, 137 S.Ct. at 1860. Here it is the Eighth Amendment, just as it was in *Carlson* and *Farmer*. And, just as in *Carlson* and *Farmer*, the alleged *mens rea* is deliberate indifference to a known substantial risk of serious harm. Turn then to "[3] the generality or specificity of the official action" involved. *Id.* In *Carlson* it was indifference in the face of a serious medical problem, in *Farmer* it was in the face of a serious risk of prisoner-on-prisoner violence. Here is materially identical: all three cases involve a claim of direct harm to the plaintiff, predicated by the specific acts of the individuals sought

19

to be held accountable; no policy challenge is involved.  The next consideration is "[4] the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted."  *Id.*  Here the question is not close—it is beyond peradventure that *intentionally* placing a prisoner in a situation where he is likely to be attacked by particularly violent inmates violates the Eighth Amendment.  It is at least as egregious as the disregard of a substantial risk of harm related to a medical need at issue in *Carlson*, and the risk of violence by other inmates at issue in *Farmer*.  Another consideration is "[5] the statutory or other legal mandate under which the officer was operating."  *Id.*  But the legal mandate here is exactly the same as it was in *Carlson* and *Farmer*—to guard prisoners.  That mandate requires prison officials to protect prisoners from violent attacks by other particularly dangerous prisoners.

The other *Abbasi* consideration is "[6] the risk of disruptive intrusion by the Judiciary into the functioning of other branches[.]"  *Id.*  But there is no particular risk here, in light of *Carlson* and *Farmer*, of intrusion by the judiciary into the functioning of other branches of government.  Certainly nothing beyond what this Court and the Supreme Court have already sanctioned.  This case, like *Carlson*, does not require the Court to "balance[e] the rights of incarcerated citizens with the administrative judgment of prison officials," *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 370 (3d Cir. 2019), because no "administrative judgment" was exercised when Ms. Barfield deliberately assigned Mr. Sargeant to live with inmates known to be violent.  As a federal prisoner subjected to harm as a result of a rank and file prison official's deliberate indifference to the risk that that

harm would occur, Mr. Sargeant's claim presents a familiar *Carlson* fact pattern and involves no special factors that have not already been considered by the Supreme Court.

Thus, like the Third Circuit in *Bistrian*, several district courts in other Circuits have also held, even after *Abbasi*, that allegations that a prison official failed to protect an inmate from a known substantial risk of physical harm *are* brought in the *Carlson* context. *See McDaniels v. United States*, no. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at *5 (C.D. Cal. Dec. 28, 2018) (holding that an Eighth Amendment claim alleging a prison official failed to protect an inmate from assault was not a new context from *Carlson*), *adopted by* 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Line Berry v. Johnson*, No. 5:17-04124, 2018 WL 4232907, at *9 (S.D.W. Va. Aug. 10, 2018) (holding that a claim of excessive force by prison guards does not present a new *Bivens* context from *Carlson* because both involved "direct Eighth Amendment allegations against . . . individual officers for specific actions taken against an individual inmate"), *adopted sub nom. Lineberry v. United States*, No. 5:17-cv-04124, 2018 WL 4224458 (S.D.W. Va. Sept. 5, 2018); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *8 (E.D. Cal. Oct. 26, 2018) (holding that a failure to protect claim did not present a new *Bivens* context under *Carlson*).[4]

---

[4] The number of such district court cases is legion. *See Walker v. Schult*, 463 F. Supp. 3d 323, 330 (N.D.N.Y. 2020) ("This Court is not empowered to presume that simply because *Abbasi* does not reference *Farmer* that the case has been somehow impliedly overruled."), *rev'd and remanded on qualified immunity grounds*, 45 F.4th 598 (2d Cir. 2022); *Garraway v. Cuifo*, No. 1:17-cv-00533-DAD-GSA (PC), 2020 WL 860028, at *2 (E.D. Cal. Feb. 21, 2020) (holding that *Farmer* recognized a *Bivens* cause of action and remains binding authority post-*Abbasi*); *Himmelreich v. Fed. Bureau of Prisons*, No. 4:10-cv-2404, 2019 WL 4694217, at *8 n.9 (N.D. Ohio Sept. 25, 2019) ("Despite its absence from the list in *Abbasi*, the Supreme Court has also recognized a *Bivens* remedy under the Eighth Amendment for failure to protect a plaintiff's safety in the prison setting.") (citing *Farmer*,

Nor is the Third Circuit the only Circuit to have held that a failure-to-protect claim arises in the same context as a *Carlson* claim. The Ninth Circuit held much the same thing over *thirty years ago* in *Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) writing "[t]he Supreme Court's application of the guidelines [set forth in *Bivens*] to the circumstances in *Carlson* appears to be equally appropriate in the present case [involving a failure-to-protect]." 629 F.2d at 642. Other Circuits have also long recognized *Bivens* claims arising in the failure-to-protect context. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099-1102 (11th Cir. 2014) (allowing a *Bivens* claim based on allegations that federal prison officials failed to protect an inmate from attack by another inmate to proceed past summary judgment); *Smith v. United States*, 561 F.3d 1090, 1104–06 (10th Cir. 2009) (holding that an inmate stated a claim under *Bivens* based on allegations that federal prison officials failed to protect the inmate from a known risk presented by exposure to asbestos during a work assignment).

Like the plaintiffs in *Carlson*, *Farmer*, *Bistrian*, and in recent district court cases, Mr. Sargeant, a federal prisoner, challenges the individual actions of a low-level federal prison official, which amounted to deliberate indifference to a substantial risk that Mr. Sargeant would suffer serious harm, in violation of his Eighth Amendment rights. Recognizing Mr. Sargeant's claim does not require that this Court take any bold new step.

---

511 U.S. 825 (1994)); *Fleming v. Reed*, No. ED-cv-16-0684-PSG (AGR), 2019 WL 4196322, at *3 (C.D. Cal. July 23, 2019) ("*Farmer* was a *Bivens* case."), adopted by 2019 WL 4195890 (C.D. Cal. Sept. 3, 2019); *Doty v. Hollingsworth*, No. 15-3016 (NLH), 2018 WL 1509082, at *3 (D.N.J. Mar. 27, 2018) (recognizing that *Farmer* involved a *Bivens* suit); *Peraza v. Martinez*, No. 14-cv-03056-MJW, 2017 WL 11486456, at *3–4 (D. Colo. Nov. 29, 2017) (holding that *Abbasi* did not change the legal landscape for Eighth Amendment *Bivens* claims of excessive force and failure to protect).

The Court need only recognized that Mr. Sargeant alleged a plausible *Carlson* and *Farmer* claim and reverse.

### B.     Even If Plaintiff's Claim Arises in a New Context, this Case Would Warrant An Exceedingly Modest Extension of the *Bivens* Remedy

Mr. Sargeant's claim does not present a new *Bivens* context. Thus there is no need to address the second step of the *Abbasi* framework and consider whether the *Bivens* remedy should be expanded to a new context. But even if Mr. Sargeant's claim did arise in a new context (and *it does not*) this case would warrant a narrow expansion of the *Bivens* remedy. The Supreme Court has held that the courts should expand *Bivens* to new contexts in very limited situations: only where there is no reason to think that Congress might be better equipped to create a damages remedy. *See Egbert*, 142 S.Ct. at 1804. But this case— and other failure-to-protect prisoner cases—present that rare circumstance. *See Hoffman*, 26 F.4th 1059. The facts here resemble *Carlson* and *Farmer*, not *Abbasi*, *Hernandez*, or *Egbert*. Further, because prisoners are politically powerless Congress is unlikely to create a damages remedy for Eighth Amendment violations for federal inmates like Mr. Sargeant, which favors expansion in these unique circumstances.

The Ninth Circuit recently reached this precise conclusion in *Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022). In *Hoffman*, the plaintiff, a federal prisoner, alleged that a correctional officer labeled him a "snitch" to other prisoners, offered them a bounty to assault the plaintiff, and failed to protect him from the predictable assault by another prisoner. *Id.* at 1061. The Court held that, given the similarity of the plaintiff's claims to *Carlson*, and the nature of the claims themselves, this was the rare case in which "a very modest expansion of the *Bivens* remedy" was warranted. *Id.* In reaching that conclusion

the Ninth Circuit exhaustively canvassed all of the special factors the Supreme Court has told courts to consider before expanding *Bivens* in any respect. *See id.* at 1065-74. Ultimately, the court concluded that other potentially available remedies were inadequate, no Congressional action counseled against a damages remedy in this context, and allowing the claim to proceed risked no undue impact on governmental operations systemwide. *Id.*

The Ninth Circuit's conclusion in *Hoffman* is in accord with the Third Circuit's conclusion in *Bistrian*, which held in the alternative that even if the claim of failure to protect from prisoner-on-prisoner violence did present a new *Bivens* context, it would be appropriate to recognize a new *Bivens* remedy in these unique circumstances. *See Bistrian*, 912 F.3d at 92. To the extent a narrow extension of *Carlson* or *Farmer* is necessary to reach the precise facts alleged here, such an extension falls well within the bounds of the type of *Bivens* claim that this Court and others continue to treat as viable.

Direct application of the considerations the Supreme Court identified in *Egbert* and *Abbasi* counsels the same result in this case. First, the degree of expansion involved in this case would be the least imaginable. This case is indistinguishable from *Carlson* and *Farmer* in every conventional material respect. The Supreme Court itself framed *Carlson* in the general terms of cruel and unusual punishment—*not* "deliberate indifference." *See Carlson*, 446 U.S. at 16 n.1, 18. In *Carlson*, the Supreme Court recognized a *Bivens* claims in the context of a prison guard's deliberate indifference to the dire medical needs of an inmate when the guard withheld lifesaving medical treatment from the inmate. *Id.* at 16, n.1. But that factual context was offered in a footnote; the face of the opinion refers to these circumstances only as "a violation of the Eighth Amendment's proscription against cruel

and unusual punishment." *Id*. at 17. As alleged, the Defendant here acted with the knowledge and purpose that her actions would result in a threat to Mr. Sargeant's life— conduct arguably more egregious than that of the prison guard in *Carlson*, and conduct that is also a clearly established violation of the Eighth Amendment's proscription against cruel and unusual punishment. Denying redress to Mr. Sargeant on the grounds that Defendant's actions here were more severe than denial of medical care in *Carlson* would be bizarre. Doubly so where the application of the deliberate indifference standard here would be easier than it was in *Carlson*, because there is no need to reflect on whether adequate treatment was given or withheld based on complex and ever-evolving medical standards.

There can be no reasonable dispute that this case is more similar to *Carlson* and *Farmer* than it is to *Abbasi*, *Hernandez*, or *Egbert*. The factors articulated in *Abbasi* illustrate that Mr. Sargeant's claim is not meaningfully different from the claims presented in *Carlson* and *Farmer*. The claims presented in *Carlson*, *Farmer*, and Mr. Sargeant's case all involve claims against individual federal prison officials who were involved in conduct that specifically targeted the plaintiff—not claims challenging policy decisions of high-ranking officials. Each of the three cases involves an allegation that individual prison officials violated an inmate's Eighth Amendment rights by taking specific actions toward the individual inmate that exposed the inmate to a known risk of physical harm. *See Carlson*, 446 U.S. at 16 & n.1; *Farmer*, 511 U.S. at 829–31; A22. None of these cases presents a risk of disrupting the functioning of the Executive Branch because the claims target specific conduct of federal prison officials, rather than general policies formulated by high-level executives.

All three claims also involve the same, specific constitutional responsibility of federal prison officials to refrain from taking actions with deliberate indifference to a substantial risk that an inmate will suffer physical harm. Similar judicial guidance was available for all three cases about a prison official's duties under the Eighth Amendment. In *Estelle v. Gamble*, which was decided before both *Carlson* and *Farmer*, the Supreme Court explained that deliberate indifference to a prisoner's serious illness or injury violates the Eighth Amendment. 429 U.S. 97, 104–05 (1976). Even more judicial guidance is available because of *Farmer* itself, which supplies guidance to prison officials in the specific situation of failure to protect an inmate from a known substantial risk of physical attack by other inmates. *See Farmer*, 511 U.S. at 832–47. *Farmer* made clear that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted).  Indeed, the fact that Ms. Barfield intentionally exposed Mr. Sergeant to serious harm by intentionally placing him in housing with known violent inmates makes this case a particularly egregious example of deliberate indifference.

In addition, when Congress enacted the Prison Litigation Reform At ("PLRA"), it declined to disturb a *Bivens* remedy that, at the time, was widely understood to be available. The purpose of the PLRA was to decrease frivolous lawsuits, and it added an exhaustion requirement prior to filing a *Bivens* claim.  *See* 42 U.S.C. § 1997e(a) (2013); *see also* 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo) ("An exhaustion requirement [as imposed by the PLRA] would aid in deterring frivolous claims: by raising the cost, in time/money terms, of pursuing a *Bivens* action, only those claims with a greater probability/magnitude of success, would, presumably, proceed.").  Congress thus

recognized that a claim that a prison official exposed an inmate to a known substantial risk of physical harm could support a *Bivens* remedy under the Eighth Amendment, provided that the inmate follows the procedural requirements of the PLRA.

Finally, no special factors counsel hesitation here.  Here, no high-level executive policy is challenged; the Defendant is a party because of her individual actions, not those of her subordinate; Mr. Sargeant does not seek to alter policy, but only to redress the isolated violations of his constitutional rights by a rogue official; there is no cross-border aspect; no allegation implicates foreign policy or national security.  Mr. Sargeant's case will not impact government operations on a systemwide level—he simply seeks to hold an individual officer liable for a specific, egregious instance of misconduct with no conceivable legitimate justification.  This is the type of *Bivens* extension *Egbert* and *Abbasi* still permit: because the purpose of *Bivens* is to deter officers from unconstitutional behavior, *Bivens* claims should be "brought against the individual official for his or her own acts, not the acts of others." *Abbasi*, 137 S. Ct. at 1860.

Any concern that recognizing Mr. Sargeant's claim would open the litigation floodgates is refuted by the legal safeguards Congress has enacted. The PLRA limits a plaintiff's ability to bring a *Bivens* suit until after the plaintiffs has exhausted administrative remedies, and courts then must screen complaints brought by prisoners seeking relief against a government officer. *See* 28 U.S.C. § 1915A(a) (1996). And even when a plaintiff meets the procedural prerequisites to bring a *Bivens* suit, *Farmer*'s deliberate indifference standard is demanding, requiring that a prison official subjectively disregarded a serious risk of harm to an inmate, and defendants further have the protection

of qualified immunity. *See Farmer*, 511 U.S. at 847. These hurdles are more than sufficient to prevent undue disruption from litigation, without categorically leaving prisoners like Mr. Sargeant without a remedy for an egregious constitutional violation.

Moreover, neither the Federal Bureau of Prisons ("BOP") administrative grievance process, a suit for declaratory and injunctive relief, nor a Federal Tort Claims Act ("FTCA") action, presents an adequate alternative remedy for Mr. Sargeant. First, the availability of a BOP administrative grievance process cannot preclude a *Bivens* remedy. Any such suggestion is foreclosed by Congress's recognition, in passing the PLRA, that an inmate could still bring a *Bivens* claim after following BOP administrative grievance procedures. *See* 42 U.S.C. § 1997e(a). In legislating on whether an inmate must exhaust prison remedies before bringing a *Bivens* action, Congress cannot possibly have intended such remedies to displace a *Bivens* action. The grievance remedy was also unavailable to Mr. Sargeant because the Eighth Amendment violation in this case arose out of his attempts to use that procedure, making if practically unavailable to him. *See Gooch v. Young*, 24 F.4th 624, 628 (7th Cir. 2022) ("A remedy is not considered 'available' to an inmate who is prevented by threats or intimidation by prison officials from submitting a grievance according to the prescribed policies.").

Second, prospective relief will not provide a remedy for harm suffered from past misconduct. *See Bistrian*, 912 F.3d at 92. Injunctive relief would not remedy the harm that Mr. Sargeant has suffered from Ms. Barfield's past actions. Given that Mr. Sargeant has been transferred away from the relevant prison, meaning that the conduct has no reasonable likelihood of recurring, Mr. Sargeant would not even have standing to bring a

claim for prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (past exposure to illegal conduct does not establish standing for injunctive relief if there is not a real and immediate threat that the conduct will occur again in the future).

Third, the Federal Tort Claims Act also does not provide an adequate alternative remedy. The FTCA provides liability against the federal government, not individual federal officers. The availability of such a claim would do little to deter constitutional violations because it does not give individual officers an incentive to follow the law. *See Carlson*, 446 U.S. at 20–21; *Bush v. Lucas*, 462 U.S. 367, 378 (1983); *Bistrian*, 912 F.3d at 92. Whatever the import of the FTCA might be in a more exotic extension of *Bivens* much further afield from the doctrine's historical core, Congress clearly expected that prison inmates would still be able to bring constitutional claims against individual prison officials despite the existence of the FTCA. The legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 446 U.S. at 19–20; *see also Bistrian*, 912 F.3d at 92. The Senate Report accompanying the FTCA stated that "this provision should be viewed as a *counterpart* to the *Bivens* case and its progen[y]" as it waives sovereign immunity to make the federal government "independently liable" for the same type of conduct that *Bivens* imposes "upon the individual Government officials involved." *Carlson*, 446 U.S. at 20 (quoting S. Rep. No. 93-588, at 3 (1973)).

Moreover, the FTCA explicitly states it is not the exclusive remedy for suits brought against individual federal officers for constitutional violations, signaling a clear intent that inmates would still be able to bring suit if individual prison officers violated their

constitutional rights. *See Bistrian*, 912 F.3d at 92; *see also* 28 U.S.C. § 2679(b)(2)(A). Indeed, the Supreme Court squarely held in *Carlson* that the FTCA is not an adequate alternative remedy for a *Bivens* Eighth Amendment claim based on a prison official's deliberate indifference to an inmate's physical safety. *See Carlson*, 446 U.S. at 19–23. Notably—and possibly for this reason—in *Egbert*, the Supreme Court did not invoke the availability of the FTCA as a ground for declining to extend *Bivens* in that case. *See Egbert*, 142 S. Ct. at 1806–07, 1822 n.7 (Sotomayor, J., concurring in part and dissenting in part) ("[Petitioner] contends that the FTCA offers an alternative remedy for claims like [respondent's]. This Court does not endorse this argument, and for good reason. This Court repeatedly has observed that the FTCA does not cover claims against Government employees for violations of the Constitution of the United States." (cleaned up)).

In summary, no special factors counsel hesitation before recognizing the infinitesimal extension of *Bivens* that this case could be deemed to represent: applying *Carlson* to more egregious cruel and unusual punishment than was at issue in that case. There is no conceivable reason, rooted in the separation-of-powers or otherwise, why a *Bivens* claim should not be permitted when a prison officer is deliberately indifferent to a substantial risk of harm from physical violence, when it is already permitted against officers who are deliberately indifferent to a substantial risk of harm from inadequate medical care.

An additional consideration supports extension of *Bivens* to claims like Mr. Sargeant's: federal prisoners do not have the political power to obtain relief through legislation. As the Supreme Court has said, the new context and special factors inquiries often resolve into a single question: "whether there is any reason to think that Congress

might be better equipped to create a damages remedy." *Egbert*, 142 S.Ct. at 1798. For federal inmates like Mr. Sargeant, the answer to that question is a resounding "no." Federal inmates cannot lobby Congress to enact a cause of action to protect their rights. They lack all control over their residency and are frequently moved between prisons (and, relatedly, electoral districts) without any say. They lack attachment to their political communities, confined within the prison walls. In many states, they lack the right to vote, even *after* their release. Many are indigent and therefore lack the resources to "participate in democracy through political contributions." *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014). They cannot leaflet on the public street or volunteer for political campaigns. They are politically unpopular. As a result, Mr. Sargeant is more likely to be carved *out* of a cause of action than carved into one. Democracy does not work for "discrete and insular minorities" who lack access to "those political processes ordinarily to be relied upon to protect" them. *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 n.4 (1938). The judiciary has a duty to ensure that constitutional protections have meaning, even when those protections guard the rights of the politically unpopular and powerless. When it comes to ensuring a remedy for the violations of the constitutional rights of inmates, the courts, not Congress, are suited to the task. This the very theoretical foundation of strict scrutiny doctrine—courts closely scrutinize where there is reason to be skeptical of legislative majorities. *See* John Hart Ely, *Democracy and Distrust: A Theory of Judicial Review* 103 (1980) (explaining that courts must intervene where "though no one is actually denied a voice or a vote" a minority suffers "out of simple hostility or a prejudiced refusal

to recognize commonalities of interest . . . thereby denying that minority the protection afforded other groups by a representative system").

\* \* \* \* \*

Mr. Sargeant has pleaded a *Carlson* and *Farmer* claim that should be allowed to proceed as any other would. Even if the Court disagrees that his claim presents a quintessential *Carlson/Farmer* claim, no special factors counsel against an exceedingly narrow extension of *Carlson* to fit the allegations presented here. The Court is well suited to evaluate the constitutional remedies needed to protect the politically isolated, politically unpopular class of federal inmates. This is a claim of gross constitutional misconduct by a rank and file prison official where it is damages or nothing. Here, if anywhere, a *Bivens* remedy is necessary.

### CONCLUSION

The judgment below should be reversed.

Dated: September 20, 2022                    Respectfully submitted,

*s/ Andrew Tutt*

Andrew R. Hirschel                          Andrew T. Tutt
Jacob P. Saracino                           R. Stanton Jones
ARNOLD & PORTER KAYE SCHOLER LLP            ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street                        601 Massachusetts Ave., N.W.
New York, NY 10019                          Washington, DC 20001
(212) 836-8000                              (202) 942-5000
                                            andrew.tutt@arnoldporter.com

**CERTIFICATE OF COMPLIANCE**

The foregoing brief complies with the type-volume limitation of Circuit Rule 32(c). The brief contains 9,521 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 (2016) in Century Expanded BT 12-point font.

*s/ Andrew Tutt*
Andrew T. Tutt

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on

September 20, 2022, I electronically filed the foregoing Brief of Appellant via ECF, and

service was accomplished on counsel of record by that means.


s/ *Andrew Tutt*
Andrew T. Tutt

**APPENDIX**

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

I hereby certify that the Appendix herein includes all of the materials required by

Circuit Rule 30(a) and (b).


s/ *Andrew Tutt*
Andrew Tutt

# TABLE OF CONTENTS

Certificate of Compliance with Circuit Rule 30............................................................................ i

Judgment of dismissal,
    Dist. Ct. Dkt. 73 (June 17, 2021) ....................................................................... A1

Memorandum and Order Granting Motion to Dismiss,
    Dist. Ct. Dkt. 72 (June 17, 2021) ....................................................................... A2

Order appointing counsel,
    Dist. Ct. Dkt. 57 (July 24, 2020) ....................................................................... A6

PLRA screening order,
    Dist. Ct. Dkt. 29 (March 4, 2020) ..................................................................... A9

Amended complaint,
    Dist. Ct. Dkt. 24 (April 22, 2020).................................................................... A14

ILND 450 (Rev. 10/13) Judgment in a Civil Action

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Roy Sargeant,

Plaintiff(s),

v.

A. Barfield,

Defendant(s).

Case No.  19 CV 50187
Judge Iain D. Johnston

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $            ,

which ☐ includes        pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒ other: Judgment entered against the plaintiff and in favor of the defendant.  Case closed.

---

This action was *(check one)*:

☐ tried by a jury with Judge        presiding, and the jury has rendered a verdict.
☐ tried by Judge      without a jury and the above decision was reached.
☒ decided by Judge Iain D. Johnston on a motion to dismiss.

Date:   6/17/2021

Thomas G. Bruton, Clerk of Court

\s\Yvonne Pedroza, Deputy Clerk

A1

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Roy Sargeant, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19 CV 50187 |
| | ) Judge Iain D. Johnston |
| Aracelie Barfield, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

In *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the Supreme Court found an implied claim for damages existed against federal law enforcement employees for violating the Fourth Amendment. Following *Bivens*, the Supreme Court has explicitly recognized only two other claims: *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing Eighth Amendment claim based on failure to address serious medical condition); *Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a Fifth Amendment claim based on sex discrimination). The recognition of implied claims against federal officials based on *Bivens* was a slow-moving vehicle. The Supreme Court repeatedly rejected attempts to expand *Bivens* into other alleged constitutional violations. *Hernandez v. Mesa*, ___ U.S. ___, 140 S. Ct. 735, 743 (2020). But in *Ziglar v. Abbasi*, ___ U.S. ___, 137 S. Ct. 1843 (2017), the Supreme Court not only slammed on the brakes, but also put the vehicle in neutral while apparently thinking about throwing it into reverse. And just last year, the Supreme Court reaffirmed its thinking on *Bivens* claims. *Hernandez v. Mesa*, ___ U.S. ___, 140 S. Ct. at 750. Caution is the watchword. *Id.* at 739.

In *Abbasi*, the Supreme Court created a two-step test to determine if a *Bivens* claim exists beyond the three limited contexts in which it has found a claim to exist. First, the court must determine whether the claim is an extension of one of the three—and only three—recognized claims so that the claim arises in a new context. *Abbasi*, 137 S. Ct. at 1857-58. Second, if the claim arises in a new context, then the court must determine if special factors exist that counsel hesitation to grant the extension. *Abbasi*, 137 S. Ct. at 1857-58.

Consequently, although some courts, including the Seventh Circuit, had previously expanded *Bivens* to recognize claims of other constitutional violations, such as a federal prisoner's claim for retaliation based on the First Amendment, *see Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), those cases are no longer controlling.

1

A2

Instead, federal courts must look anew as to whether claims beyond the precise holdings of *Bivens*, *Carlson*, and *Davis* exist. *Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020); *Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018).

In this case, Roy Sargeant, a federal prisoner housed at Thomson AUSP, alleges a First Amendment retaliation claim against Aracelie Barfield. Essentially, Sargeant claims that after he filed a complaint against another Thomson prison official under the Prison Rape Elimination Act for insulting his sexual preferences, Barfield retaliated against him by, among other things, assigning him to live in housing with violent inmates.

Following the Seventh Circuit's direction, the Court recruited counsel to represent Sargeant to respond to Barfield's motion to dismiss. *Smadi v. True*, 783 F. App'x 633 (7th Cir. 2019). The Court recruited a highly regarded and respected local attorney, Roberta Holzwarth. The Court profoundly thanks Ms. Holzwarth for her efforts in this case. Her heroic attempts to make a silk purse out of a sow's ear were admirable and impressive, but ultimately unavailing.

The issue presented is straight-forward: Do federal inmates have a *Bivens* claim under the First Amendment for retaliation after *Abbasi*?

The unanimous and resounding answer is "No!"

The Seventh Circuit has yet to address the issue. *Haas v. Noordeloos*, 792 F. App'x 405, 406 (7th Cir. 2020). It has, however, assumed a claim existed to affirm a dismissal on other grounds. *See, e.g., White v. True*, 833 F. App'x 15, 18 (7th Cir. 2020) (assuming *Bivens* claims existed but affirming dismissal); *White v. Sloop*, 772 F. App'x 334, 335 (7th Cir. 2019) (same). But every circuit court to address the issue has found that federal inmates have no First Amendment retaliation claim under *Bivens* after *Abbasi*. *Butler v. Porter*, ___ F.3d___, 2021 U.S. App. LEXIS 16462, at *6 (5th Cir. 2021); *Watkins v. Three Admin. Remedy Coordinators of the Bureau of Prisons*, ___ F.3d ___ 2012 U.S. App. LEXIS 15455, at *5-6 (5th Cir. 2021); *Earle v. Shreves*, 990 F.3d 774, 776 (4th Cir. 2021); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 525 (6th Cir. 2020); *Bistrian v. Levi*, 912 F.3d 79, 96 (3d Cir. 2018); *see also Johnson v. Burden*, 781 F. App'x 833, 836 (11th Cir. 2019) (holding that First Amendment retaliation claims are an extension of *Bivens*). Each district court in the Seventh Circuit to address the issue has found likewise. *Decker v. Bradley*, No. 2:19-cv-00616, 2021 U.S. Dist. LEXIS 74296, at * 6 (S.D. Ind. Apr. 18, 2021); *Robinson v. Morris*, Case No. 18-cv-164, 2019 U.S. Dist. LEXIS 220234, at *13 (S.D. Ill. Sep. 23, 2019); *Silva v. Ward*, 16-cv-185, 2019 U.S. Dist. LEXIS 165211, at *25 (W.D. Wisc. Sept. 26, 2019); *Atkinson v. Broe*, 15-cv-386, 2019 U.S. Dist. LEXIS 7396, at *18 (W.D. Wisc. Jan. 16, 2019); *Early v. Shepherd*, No. 2:16-cv-00085, 2018 U.S. Dist. LEXIS 161664, at *41 (S.D. Ind. Sept. 21, 2018) ("For these reasons, Mr. Early's First Amendment retaliation claims are foreclosed by *Ziglar v.*

*Abbasi*, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017).").  District courts across the country agree.  *Pinson v. United States DOJ*, No.: 12-1872, 2021 U.S. Dist. LEXIS 41262, at *21 (D.D.C. Jan. 8, 2021) ("The Court therefore agrees with nearly every other court to have addressed the issue and hold that prisoners cannot bring First Amendment retaliation cases under *Bivens*."); *Oneil v. Rodriguez*, 18-CV-3287, 2020 U.S. Dist. LEXIS 181275, at *11 (E.D.N.Y. Sept. 30, 2020).  Indeed, it is possible to collect cases collecting cases for this holding.  *Bistrian*, 912 F.3d at 96 (citing *Akande v. Philips*, No. 1:17-cv-01243 EAW, 2018 U.S. Dist. LEXIS 118212 (W.D.N.Y. July 11, 2018) (collecting cases)); *Decker*, 2021 U.S. Dist. LEXIS 74296, at * 6 n.2 (collecting cases).

The courts uniformly find—correctly—that recognizing a First Amendment retaliation claim would be an extension of *Bivens* into a new context.  *See, e.g., Butler*, 2021 U.S. App. LEXIS 16462, at *6; *Watkins*, 2012 U.S. App. LEXIS 15455, at *5-6; *Earle*, 990 F.3d at 776; *Callahan*, 965 F.3d at 525; *Bistrian v. Levi*, 912 F.3d at 96; *Johnson*, 781 F. App'x at 836.  The unbroken line of cases then proceeds to find that special factors counsel against recognizing a First Amendment retaliation claim under *Bivens*.  Specifically, the courts correctly identify the following special factors weighing against the disfavored extension of *Bivens*, including, but not limited to, the following:

- The existence of alternative remedies, including the Bureau of Prisons' Administrative Remedy Program. *Earle*, 990 F.3d at 780; *Callahan*, 965 F.3d at 524.

- Respect for separation of powers between the Executive Branch, which operates the Bureau of Prisons, and the Judiciary.  *Earle*, 990 F.3d at 780-81; *Callahan*, 965 F.3d at 524.

- The ease with which retaliation claims can be manufactured, including claims that the retaliation involved a discretionary decision, which would not only embroil the judiciary in the operation of the prison but also impose additional financial burdens on both branches of government.  *Earle*, 990 F.3d at 780-81; *Callahan*, 965 F.3d at 532-33; *Bistrian*, 912 F.3d at 96.

- The incongruity that federal employees have no First Amendment retaliation claims under *Bivens* but that federal prisoners would.  *Callahan*, 965 F.3d at 523.

- That Congress has chosen not to provide a claim when it knows how to do so when it thinks it is appropriate, which is evidenced by Congressional silence in the Prisoner Litigation Reform Act and Congressional action in the Religious Freedom Restoration Reform Act.  *Butler*, 2021 U.S. App. LEXIS 16462, at *10-11.

As most attorneys practicing before this Court know, the Court is not shy about standing alone on a metaphorical legal island if it believes the legal analysis mandates that result. *See, e.g., DR Distribs., LLC v. 21 Century Smoking Inc.*, No. 12 CV 50324, 2021 U.S. Dist. LEXIS 9513, at *251 n.54 (N.D. Ill. Jan. 19, 2021) (noting that Court appears alone in its belief that attorneys' fees are not recoverable under Rule 37(e)).[1] So, it is unsurprising that the Court has not just blindly relied on this avalanche of legal authority. The Court has independently analyzed the issue and has reached the same result. But the Court sees no benefit by elaborating further on its analysis. Doing so would merely be a reiteration of the cornucopia of other decisions. The Court's insight would add nothing to this jurisprudence.

Once again, the Court thanks Ms. Holzwarth for her professionalism and commitment to providing *pro bono* legal services to those in need.

Barfield's motion to dismiss, Dkt. 53, is granted. The case is dismissed.[2]

Entered: June 17, 2021

By: _____
Iain D. Johnston
U.S. District Judge

---

[1] Indeed, as the Supreme Court recognized just this week, sometimes even when all the Circuit Courts agree, they can still be wrong in the eyes of the Supreme Court. *See Greer v. United States*, 2021 U.S. LEXIS 3118, at 15-17 (June 14, 2021) (noting that its decision in *Rehaif* was contrary to all existing circuit court decisions).
[2] Judge Durkin previously dismissed all other defendants during screening. Dkt. 29.

4

A5

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Roy Sargeant (#11709-171), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 19 C 50187 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| A. Barfield, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court shall defer setting a briefing schedule on Defendant's motion to dismiss [53] at this time. On its own motion, the Court requests that Roberta L. Holzwarth, Holmstrom & Kennedy, 800 North Church Street, Rockford, IL 61103, rholzwarth@hkrockford.com, represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D. Ill.).[1] The Clerk of Court is directed to send a copy of this order to Plaintiff, attorney Holzwarth, the Systems Department of the Northern District of Illinois, and the PACER Service Center at pacer@psc.uscourts.gov. By August 7, 2020, recruited counsel shall file an appearance for Plaintiff. Recruited counsel shall file a written status report on or before August 25, 2020, advising how much time she will need to familiarize herself with this case and prepare a response to the motion to dismiss. The July 30, 2020 motion hearing date is stricken, and no appearance is necessary. Plaintiff's duplicative motions for "Resolution in Stopping Transfer" [51] [52] are stricken without prejudice to Plaintiff raising his request in a separate action. Plaintiff's recent letters [48] [49], which quarrel with defense counsel's efforts to collaborate in preparation of a joint status report, describe no wrongful conduct and do not require any relief.

## STATEMENT

Federal prisoner Roy Sargeant brought this action *pro se* pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). On March 4, 2020, Plaintiff was allowed to proceed on a First Amendment claim of retaliation against Defendant Barfield. Dkt. 29. On July 22, 2020, Defendant moved to dismiss the claim pursuant to *Ziglar v. Abbasi*, 137 S. Ct.

---

[1] Recruited counsel falls within the class of users listed in the Electronic Public Access fee schedule adopted by the Judicial Conference of the United States. Counsel therefore shall be exempt from the payment of fees for access via PACER to the electronic case files maintained in this court for the above-captioned case only. Fees are exempt only for the above-captioned case and the cases identified in the preceding sentence. Counsel shall not be exempt from fees incurred by other uses of the PACER system. The exemption is valid immediately and for the duration of counsel's participation in this matter. The exemption may be revoked at the discretion of the court at any time. Counsel shall contact the PACER Service Center at 1-800-676-6856 or at pacer@psc.uscourts.gov to create a separate PACER account to be used for the above-captioned case only and to make any necessary arrangements for the waiver.

1843 (2017), arguing that Plaintiff has no *Bivens* remedy for his First Amendment retaliation claim. Dkts. 53, 54.

Given the complexity of the issues presented in this motion and the Seventh Circuit's recent related guidance in *Smadi v. True*, 783 F. App'x 633, 634 (7th Cir. 2019), the Court requests that Roberta L. Holzwarth, Holmstrom & Kennedy, 800 North Church Street, Rockford, IL 61103, rholzwarth@hkrockford.com, represent Plaintiff in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D. Ill.). *See Smadi*, 783 F. App'x at 634 (reversing dismissal of *pro se* prisoner's First Amendment *Bivens* claims under *Ziglar* at screening and remanding for adversarial "counseled briefing" on the *Ziglar* issue). Counsel is encouraged to visit the Court's Pro Bono web page at http://www.ilnd.uscourts.gov/Pages.aspx?page=ProBono (case sensitive) for various resources related to pro bono representation.

Plaintiff is strongly advised that recruiting counsel for an unrepresented individual is a privilege. Plaintiff must listen carefully to counsel's advice and be mindful, as any paying client would be, of counsel's workload, time, and effort. Plaintiff also must conduct himself appropriately during all his interactions and communications with counsel. If the Court allows counsel to withdraw, there is no guarantee the Court will recruit substitute counsel.

Finally, Plaintiff's two motions for "Resolution in Stopping Transfer" (which are duplicative aside from one being addressed to this Court and the other to Judge Thomas M. Durkin), Dkts. 52, 53, are stricken without prejudice to Plaintiff seeking the requested relief in a separate action. The claim in this lawsuit concerns events that occurred when Plaintiff was incarcerated at Thomson U.S. Penitentiary. Since the inception of this lawsuit, Plaintiff was transferred to Coleman U.S. Penitentiary, and in these motions he details allegations of retaliation against Coleman prison staff and asks the Court to prevent any efforts by Coleman staff to transfer him back to Thomson. Except in very limited circumstances not applicable here, an injunctive order like the one Plaintiff requests cannot issue against a non-party. *See* Fed. R. Civ. P. 65(d) (a preliminary injunction binds only the parties of a suit, the parties' agents, employees, attorneys, and any persons acting in concert with the parties); *Maddox v. Wexford Health Sources, Inc.,* 528 F. App'x 669, 672 (7th Cir. 2013) ("an injunction, like any 'enforcement action,' may be entered only against a litigant, that is, a party that has been served and is under the jurisdiction of the district court."). No officials at Coleman are a party to this suit, and in fact Plaintiff's claims with respect to his treatment at Coleman are wholly unrelated to this lawsuit. *See George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007). Thus, Plaintiff has no chance of ultimately raising and succeeding in this lawsuit on any potential claims described in the motions. *See Yt, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir. 2001) (to obtain a preliminary injunction, a party must show, among other things, a "likelihood of success on the merits"). If Plaintiff seeks relief against Coleman officials, he must file a separate lawsuit. *See George,* 507 F.3d at 607 (unrelated claims against different defendants belong in separate lawsuits). *The Court will not consider these allegations in this lawsuit.* His motions are therefore stricken without prejudice to Plaintiff seeking the requested relief in a separate action regarding his claims about Coleman. The Court offers no opinion as to the potential merit of such an action, but does advise Plaintiff that courts usually do not interfere with the day-to-day operation of prisons, including security, inmate classification, or inmate housing decisions. *See United States v. Shaw,* 824 F.3d 624, 629 (7th Cir. 2016); *King v. McCarty,*

781 F.3d 889, 899 (7th Cir. 2015); *Gevas v. McLaughlin*, 798 F.3d 475, 485 (7th Cir. 2015); *Bell v. Wolfish*, 441 U.S. 520, 546.

Date: July 24, 2020                    By:

Lisa A. Jensen
United States Magistrate Judge

A8

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Roy Sargeant (#11709-171),    )
    )
    Plaintiff,    )
    )    Case No. 19 C 50187
    v.    )
    )    Judge Thomas M. Durkin
John Doe,    )
    )
    Defendant.    )

### ORDER

Plaintiff may proceed on his amended complaint as explained below.  The Court on its own motion dismisses Defendants Cruze, Cook-Jenkins, Mr. Barfield, Hinkler, and Hudson on initial review pursuant to 28 U.S.C. § 1915A.   The Court directs the Clerk to: (1) file the amended complaint [23]; (2) terminate Defendants Cruze, Cook-Jenkins, Mr. Barfield, Hinkler, and Hudson as party defendants; (3) issue summons for service of the amended complaint [23] on Defendant Ms. Barfield by the U.S. Marshals Service; and (4) send Plaintiff a magistrate judge consent form, filing instructions, and a copy of this order.  The Court appoints the U.S. Marshals Service to serve Defendant Ms. Barfield and directs the U.S. Marshal to use the USM-285 service form already completed and returned by Plaintiff [24].   The Marshal also is directed to: (1) deliver a copy of the summons and the amended complaint to the United States Attorney for the Northern District of Illinois, and (2) send a copy of the summons and the amended complaint by registered or certified mail to the Attorney General of the United States at Washington, D.C.  *See* Fed. R. Civ. P. 4(i). Plaintiff's letters [22] [26] are stricken because they are impermissible attempts to amend the complaint in piecemeal fashion.  The Court denies Plaintiff's motion for attorney representation [13] without prejudice, as it does not show he has made reasonable attempts to obtain counsel on his own.  *See Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc)).   If Plaintiff wants the Court to consider recruitment of counsel on his behalf, Plaintiff must first demonstrate that he has made such an attempt.

### STATEMENT

Plaintiff Roy Sargeant, a federal prisoner at the Thomson U.S. Penitentiary, brings this *pro se* civil rights action pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).  Plaintiff claims among other things that Defendants, prison officials, violated Plaintiff's First Amendment rights by retaliating against him for his grievances. Currently before the Court is Plaintiff's amended complaint for initial review under 28 U.S.C. § 1915A.

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court is required to screen *pro se* prisoners' complaints and dismiss the complaint, or any claims therein, if the Court determines

A9

that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.    *See Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).    Courts screen prisoner litigation claims in the same manner as ordinary motions to dismiss under Fed. R. Civ. P. 12(b)(6).    *See Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).    A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.    *See Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).    Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).    The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests."    *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted).    Under the federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."    *Twombly,* 550 U.S. at 555.    Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570).    "In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true."    *Alam v. Miller Brewing Co.,* 709 F.3d 662, 665-66 (7th Cir. 2013). Courts also construe *pro se* complaints liberally.    *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam).

Plaintiff alleges the following facts, assumed true for purposes of the Court's initial review: Plaintiff asked Ms. Cruze in April 2019 about why delivery of books he had ordered in March was delayed.  (Dkt. 23, pg. 5.)  She "verbalize[d] negative insults to my sexual preferences, needs, and wants" and told Plaintiff that the books were a security risk.  (*Id.*)  He did receive the books later in April.  (*Id.*)  According to Plaintiff, Ms. Cruze stopped delivery of a second book order that arrived at the prison on June 14, 2019, although Ms. Cruze denied having these books.  (*Id.*) Plaintiff eventually received those books in August, but in the meantime he reported her conduct as intimidation and in retaliation for Plaintiff "correcting her about [his] sexual preferences".  (*Id.*) He also, on July 19, 2019, filed a PREA report about Ms. Cruze's "sexual harassment".  (*Id.*)

That same day, Ms. Barfield (Plaintiff's case manager) and Ms. Cook-Jenkins (the unit manager) did rounds and gave Plaintiff a copy of the response being prepared to his PREA report. (*Id.*, pg. 6.)  The response was signed by Ms. Cruze, which according to Plaintiff is a violation of policy.  (*Id.*)  When Plaintiff pointed this out to Ms. Barfield, she "angrily" started "parading around" telling other officers that Plaintiff had filed a PREA over books.  (*Id.*, pg. 7.)  So Plaintiff then filed a "bias complaint" against Ms. Barfield accusing her of misconduct.  (*Id.*)  According to Plaintiff, in retaliation for filing his PREA report, Ms. Barfield filed reports about Plaintiff, falsely accusing him of insolence and belligerency, which resulted in setting him back 60-days in the completion of his rehabilitation program.  (*Id.*) She has continued to retaliate against him by assigning him to live with inmates known to be particularly violent, and with whom Plaintiff should not be housed because they are "active" inmates and he is a "programming" inmate.  (*Id.*, pg. 9-10.)

Mr. Barfield, who is Ms. Barfield's husband and the lead investigator of his PREA report,

told Plaintiff to "shut [his] mouth" and that he was "in a losing battle". (*Id.*) Mr. Hinkler, who was an associate warden at the prison and the PREA coordinator, questioned Plaintiff about the sexual harassment complaint and in doing so asked Plaintiff if he knew what "malingering" meant. (*Id.*, pg. 8.) According to Plaintiff, this question reflected a "stereotyping" of inmates. (*Id.*)

Mr. Hudson, the former warden of the prison, who according to Plaintiff "vanished", "carried an disenfranchise attitude watching his members disrespect inmates". (*Id.*) He told Plaintiff that he would never learn about the outcome of his PREA report. (*Id.*, pg. 9.)

Plaintiff has named as Defendants Ms. Cruze, Ms. Barfield, Ms. Cook-Jenkins, Mr. Barfield, Mr. Hinkler, and Mr. Hudson.

Accepting Plaintiff's factual allegations as true and construing them liberally, the Court will allow Plaintiff to proceed for now past the screening stage on a First Amendment retaliation claim against Ms. Barfield. "Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive." *Merritte v. Ingram*, No. 11-CV-0871-SCW, 2015 WL 5693643, at *3 (S.D. Ill. Sept. 29, 2015) (citing *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000)). To establish a claim of retaliation in violation of the First Amendment, the plaintiff must allege: (1) he engaged in activity protected by the First Amendment (such as filing a grievance); (2) he suffered a deprivation that would likely chill future First Amendment activity; and (3) the protected activity was at the very least a "motivating factor" in the Defendants' decision to take the allegedly retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citations omitted); *see also DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"). Here, the amended complaint identifies the retaliatory action (a false report of insolence that resulted in Plaintiff being set back 60-days "in the program") and asserts constitutionally protected activity that allegedly spurred the retaliation (the filing of a PREA report). To ultimately succeed, *i.e.,* prove retaliatory animus, it is almost always insufficient to point solely to a temporal proximity between the allegedly adverse action and the protected conduct, which is all Plaintiff appears to rely upon here, *see Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 221 (7th Cir. 2015) ("We have repeatedly held that 'temporal proximity' or suspicious timing alone is rarely sufficient to overcome a motion for summary judgment.") (citations omitted), but Plaintiff's allegations suffice at the screening stage to raise a merely plausible inference. Plaintiff's retaliation claim against Ms. Barfield therefore survives initial review, and Ms. Barfield must respond to the amended complaint.

Importantly, the Court has presupposed – *for screening purposes only* – that a First Amendment retaliation claim is cognizable under *Bivens.* As an inmate at a federal institution, Plaintiff's retaliation claim against individual officers arises under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff is advised that in 2017, the Supreme Court held that courts should exercise "caution" when determining if previously-unrecognized implicit constitutional causes of action exist under *Bivens. See Ziglar v. Abbasi*, — U.S. —, 137 S. Ct. 1843, 1854-58 (2017) (noting that "an implied damages remedy under the Constitution itself" exists for Fourth Amendment search claims, Fifth Amendment Due Process Clause gender discrimination claims, and Eighth Amendment medical care claims). Numerous

courts have concluded that after *Ziglar*, *Bivens* does not provide a vehicle to litigate First Amendment claims. *See*, *e.g.*, *White v. True*, No. 19-CV-0418-JPG, 2019 WL 3074528, at *2 (S.D. Ill. July 15, 2019) (holding that prisoner could not bring a First Amendment claim against federal officials under *Bivens* in light of *Ziglar*); *Early v. Shepherd*, No. 2:16-cv-00085-JMS-MJD, 2018 WL 4539230, *13-16 (S.D. Ind. Sept. 21, 2018) (same). Without deciding the issue, the Seventh Circuit, however, recently opined that this determination is not well-suited for a Section 1915A review and should instead await an adversarial presentation. *See Smadi v. True*, 783 F. App'x 633, 634 (7th Cir. 2019) (reversing dismissal of *pro se* prisoner's First Amendment *Bivens* claims at screening and remanding for adversarial briefing on the *Ziglar* issue). In keeping, this Court will likewise not decide at this stage whether Plaintiff's retaliation claim is cognizable in light of *Ziglar*. But nothing in this order precludes any legal argument that Defendant may advance, through a motion to dismiss or otherwise, in response to Plaintiff's allegations.

Plaintiff pleads no other viable claims, and all other Defendants and any other intended claims are dismissed.

As to Ms. Cruze, the allegations do not support an inference of retaliation. "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) (quoting *Benson v. Cadey*, 761 F.2d 335, 342 (7th Cir. 1985)). "Rather, the prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988) (citing *Murphy*, 833 F.3d at 108–09). Plaintiff's "correcting" Ms. Cruze about his sexuality following the first alleged book-shipment withholding is, without more, too speculative to suggest that the later withholding, which occurred in a fashion otherwise essentially identical to the first, became retaliatory. *See Famous v. Pollard*, 449 Fed. App'x 515, 517-18 (7th Cir. 2011) ("Famous does not explain why the district court should have concluded that this conduct was retaliatory when it had apparently occurred both before and after he filed his complaint."). The chronology of events alleged by Plaintiff does not plausibly support an inference of retaliation given that Plaintiff was experiencing delays *before* he confronted Ms. Cruze. Additionally, Plaintiff's suggestion that Ms. Cruze made a disparaging remark about his sexuality does not infer a constitutional violation because "fleeting" verbal harassment by correctional officials, while clearly undesirable, is not actionable. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015); *see also Scruggs v. Miller*, No. 3:16-CV-050 JD, 2016 WL 495603, at *3 (N.D. Ind. Feb. 8, 2016). Defendant Cruze is dismissed.

The allegations also do not support an inference of retaliation by either Mr. Barfield or Mr. Hinkler. It would "trivialize the First Amendment to hold that harassment for exercising the right to free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise." *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). Here, the complained-of conduct by these two Defendants—*i.e.,* Mr. Barfield's unacted-upon verbal threats and Mr. Hinkler's question regarding "malingering"—are not the type of deprivations likely to deter First Amendment activity and, in fact, they did not deter Plaintiff. Both Defendants Mr. Barfield and Hinkler are dismissed.

Ms. Cook-Jenkins is dismissed because the only allegation directed against her is that she accompanied Ms. Barfield on unit rounds the day he argued with Ms. Barfield regarding the PREA

response.    To the extent that Plaintiff is attempting to bring a claim against Ms. Barfield and Ms. Cook-Jenkins for the alleged mishandling of the PREA report, such a claim fails.    Prison grievance procedures are not mandated by the First Amendment and do not by themselves create interests protected by the Due Process Clause. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Thus, "the alleged mishandling of . . . grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens*, 635 F.3d at 953.    Moreover, "the Supreme Court does not recognize" intended due process claims regarding prison procedures like Plaintiff's "as cognizable under *Bivens*." *Goree v. Serio*, 735 Fed. App'x 894, 895 (7th Cir. 2018) (discussing *Ziglar v. Abbasi*). Ms. Cook-Jenkins is dismissed.

And finally, Warden Hudson is dismissed because it appears that he is sued because of his prior supervisory role at the prison, but there is no *respondeat superior* (*i.e.*, supervisory) liability under § 1983 (and by extension, *Bivens*).    *See Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Warden Hudson is dismissed.

The Court directs the Clerk of Court to issue summons for service of the amended complaint on Defendant Ms. Barfield.    (A USM-285 form has already been returned by Plaintiff. *See* Dkt. 24.)    The U.S. Marshals Service is appointed to serve Defendant.    The Court instructs the U.S. Marshals Service to make all reasonable efforts to serve Defendant.    With respect to any former employee who can no longer be found at the work address provided by Plaintiff, correctional officials must furnish the U.S. Marshals Service with the Defendant's last-known address.    Address information will not be maintained in the Court file and will not be otherwise disclosed by the U.S. Marshal, except as necessary to serve Defendant.    The U.S. Marshals Service is authorized to send a request for waiver of service to Defendant in the manner prescribed by Federal Rule of Civil Procedure 4(d) before attempting personal service.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent.    In addition, Plaintiff must send an exact copy of any document he files in this Court to Defendant or to defense counsel if an attorney has entered an appearance on behalf of Defendant.    Every document submitted by Plaintiff must include a certificate of service stating to whom exact copies were sent and the date of mailing.    The Court may strike without considering any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions.

Date:   3/4/2020                              /s/   Thomas M. Durkin

5

A13

Case: 3:19-cv-50187 Document #: 23 Filed: 11/08/19 Page 1 of 12 PageID #:135

Case: 21-2287     Document: 20     Filed: 09/20/2022     Pages: 73

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

# FILED

**NOV 08 2019**

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

*Roy Sargeant*

_____

_____

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

vs.

Case No: _____

(To be supplied by the Clerk of this Court)

*Ms. N Cruze, SCSS*

*Ms. A Barfield, EPO*

*Ms. V. Cook-Jenkins*

*MR. Barfield EPO active SIA*

*Assoc Warden: MR Hinkler*

*Warden: MR Hudson of AUSP. Thomson IL. Bureau of Prison*

(Enter above the full name of ALL
defendants in this action. <u>Do not</u>
use "et al.")

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

_____          COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983
U.S. Code (state, county, or municipal defendants)

_____          COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE
28 SECTION 1331 U.S. Code (federal defendants)

_____          OTHER (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

A14

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I.  **Plaintiff(s):**

A.  Name: Roy Sargeant

B.  List all aliases: Sarge, Cee,

C.  Prisoner identification number: 11709 - 171

D.  Place of present confinement: ADMINISTRATIVE UNITED STATES PENITENTIARY THomson

E.  Address: P.O. Box 1001 THomson, IL 61285.

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**

(In A below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in B and C.)

A.  Defendant: Ms. N. Cruze

Title: S.C. SS  R&D intake

Place of Employment: A U.S. Penitentiary THomson IL 61285    Federal Bureau of Prison

B.  Defendant: Ms. A. Barfield

Title: E.P.O Case manager

Place of Employment: A USP, THOMSON IL 61285    Federal Bureau of Prison

C.  Defendant: MR Barfield. EPO

Title: EPO. ACTIUE SIA

Place of Employment: A.U.S. Penitentiary, THomson, IL 61285    Federal Bureau of Prison

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

1 of 2

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

A15

(2)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I.     **Plaintiff(s):**

A.     Name: Roy Sargeant

B.     List all aliases: Sarge, Cee

C.     Prisoner identification number: 11709-171

D.     Place of present confinement: ADMinistrative United States Penitentiary

E.     Address: P.O Box 1001 Thomson, IL 61285.

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II.    **Defendant(s):**

(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A.     Defendant: Ms. V. Cook-Jenkins

Title: Unit Manager

Place of Employment: AUSPenitentiary Thomson IL 61285    FEDERAL Bureau Of Prison

B.     Defendant: Associate Warden, PREA Coordinator MR Hinkler.

Title: Associate Warden / PREA Coordinator.

Place of Employment: AUS Penitentiary, Thomson, IL, 61285    FEDERAL Bureau of Prison

C.     Defendant: MR Hudson

Title: WARden:

Place of Employment: AUS. Penitentiary Thomson IL 61285    FEDERAL BUREAU OF Prison

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2 of 2                                              Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(3)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**III.** **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A.   Name of case and docket number: _____ N/A _____

B.   Approximate date of filing lawsuit: _____ N/A _____

C.   List all plaintiffs (if you had co-plaintiffs), including any aliases: _Roy Sargeant SARGE, CEE,_____

D.   List all defendants: _____

E.   Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): _____ N/A _____

F.   Name of judge to whom case was assigned: _____ N/A _____

G.   Basic claim made:_____ N/A _____

H.   Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): _____ N/A _____

I.   Approximate date of disposition: _____ N/A _____

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

A17

(4)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**IV.    Statement of Claim:**

State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.**  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph.  (Use as much space as you need.  Attach extra sheets if necessary.)

The Sexual Harrasment "PREA" non compliance to proper BoP Standards. Ms. N. Cruze verbalize negative insults, to my sexual preferences needs, and wants. When I had stopped her in April For a inquires about the delqying of books ordered in March. Ms Cruze also stated my books were a risk to security and sovereignty nature, and I would not be getting my books, ultimately rejecting One of the Five books ordered. 26 days after it arrival in March 22, 2019 at 1059am Fri. I did not recieve these book until April 18, 2019. 2 of the 4 books, went into my property, for they were hard backs. Two book I recieved in my room. Ms N. Cruze never apologize for her behavior.

MS. CRUZE Then again, stop my second order in June 14, 2019, 10:53 AM. again without any formal reasonning as to BO.Policy. I had to write the supplier to Track USPS again, For this time my books were 48 days, delayed. before I had recieved Them Aug. 2, 2019. Althe while These books were in R.D custody on June 14, 2019. All the while, Ms Cruze denied having my books. Thus, causing me to report her behavior toward all conduct and reasonning, for the behavior as to intimadation, retuliation, For correcting her about my sexually preferences. I Had to Filed it in a grievence of. PREA Sexual Harrasement Who Staff, Ms. Barfield I had first notified in a written complaint. That Ms Barfield tired to

4                                                    Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



A18

( 2 )

Completely ignored my compliant written. When my intents
were very clear of the ongoing sexual harrasment filed.
Ms Barfield then made statements That I was only filing
beacuse of my books. Which was one of the reasonning. And
to show how Staff and I got to this point in the incident.
Of disrespect, unprofessionalizm, and Misconduct by staff.
The on going act of retaliation and Intimidation that had
developed by Ms. Cruze and known, unknown Staff members.
continuing to degenerating. My June. 14, 2019 delivered order
was the second incident accuring with Ms Cruze. I did not
recieved those books until Aug 2 2019. Ms Cruze, husband
is "SIS" as she has stated who she most likely reffered my
books to its Lenghty delay.

        Ms A Barfield Case Manager / Ms V Cook-Jenkins
Unit Manager .)

        On 07.19.2019 Both Unit Manager V. Cook-Jenkan, an
Case manager Ms. A. Barfield were making unit rounds. Ms
A Barfield handed me my compliant response. While reading
The responsce I happened to notice that. The sexual
harrasement grievence was total signed by Ms Cruze.
Which is again a violation of PREA. and sexual harrasement
policy and is Forbiden. Which I then explained this to
both Officer. Ms Barfield realization to I was not going
to allow Ms N Cruze behavior to go undiscovered.

( 6 )
                        A19

(3)

MS Barfield alone started to parading around angryly
Telling other officers passing That I was Filing PREA.
due to my books, consequently I then had to filed a bias
compliant on Ms Barfield remedy #991255 R1 For Misconduct
also see Remedy #987234-R1 Remedy #986641-R1. She
Ms Barfield even made deformation statement in a report:
See: Individual re-entry Program Review: Sequence #01376270
date 08.24.2019. Which clealy shows Insolence 312 violation
oF B.O.P policy oF Inarate. Yet, I was never issued a
infraction, hence I was set back in the program 60 days
Which was part oF retaliation, and intimidation for filing
PREA. Ms Cook-Jenkin stood an watch never gave any
input on saying. Maybe I should stop filing.
    These very complaint are currently in The Final stages
oF exhaustion (Central OFFice oF APPeals). Ms Barfield
blantley abused her authority to retaliate with intimidation
I was demoted 60 set back, for these very causes.

        Ms BarField EPO Active SIA.
MR Barfeld the husband oF Ms Barfeld was aware oF his
Wife. Misconduct and didn't do anything. but to threaten me
to stop my grievence, and shut my mouth. Stating That I was
a loser, and I was in a Losing battle talking to his wife.
Which MR Barfield was also the leading investigator oF MY PREA
Sexual harrasment. He also made a report to all incident.

(7)                              A20

(4)

MR Hinkler Assorate warden and PREA
Coordinator.

MR Hinkler came to my door room, and asked me question about
the sexual hraasement. As I was explaining the occurance. he stopped
my answering to ask me did I know the meaning of (malingering)
I gave my best answer to my unknown thoughts. Which MR.
Hinkler stated I thought so. So I got my dictionary afterward only
to find out the word meant (pretending). This is part of the
Stereotyping inmates encounter here with staff. SO I did also
filed on this discrimination to race. He MR Hinkler stated I will
be punished for this behavior while walking away from my door
Yet I had done nothing wrong in reporting sexual harrasment
PREA. not knowing a word doesn't mean sexual harrasement
wasnot committed By: Ms. N. Cruze. I would be glad to take
a pobygrahp to prove my sincerely.

MR Warden Hudson

MR Hudson carried an disenfranchise attitude watching his
memebers continued to disrespecting inmates even after I had
made several attempts to informed him with grievance. MR Hudson
also stated that I would not be recieveng my books on July 2a 2019
by this time it was my third endeavor to a resolution about my
books. Until the Courts Contacted MR Hudson about my letter
they had recieved. I never seen the Me Hudson again nor
MR Hinkler the both vanished the complex. Also when I
had asked about the PREA MR Hudson stated before vanishing

A21

(8)

(5)

I will never know about its progression, or outsome which isn't
B.O.P standard. Yet it was written on my Individual Reentry
Program review that the case was of no matter and was resolved.
Which was not the case it was totally Mis haddle by all
Staff memebers involved. and invented cover up, and
continue intimidation and retaliation an harrassement afterwards.

    I didn't recieved any treatment or aftercare. I have
request on all grievences, to be reinterviewed by OIA and
SIA. to further the investigation. I was denied told my
grievence's were untimely

    I am still expeniencing retaliation from staff. Ms Barfield
is my case manager still knowning my custody level and
classification I am repeatly placed in cell rooms to
share rooms with Active inmates knowly my custody is
Non active protected custody subsequently having to
battle with inmates about my stay in prison leading to arugument
and some Fights. I am currently living in F-1 room 106 with
an active Inmate by the name of Lastname Collins. Who is
not my custody level and I a known active inmate. He is not
programming and has been in numerous fights since his arrival
at Thomson AUSP. Ms Barfield and. SIS. all know this is not
right Thus subject me to this conduction. This is what has
happenned before with Inmate Mintee who is still a problem for
AUSP Thomson. This inmate attacked me while in handcuff as I
have Filed with the court

A22

(9)

(5)

Ms Barfields claims I quote "( During my daily rounds inmate Sargeant is belligerent, hostile and very disrespectful)". End So very untrue.... For her statement is very personal and shows bias against me is of her personal opinion, and retaliation deliberately. Which was not an object or subject of evalvation, but of predotory bias.

July 9. 2019 She did not observered such negative behavior, nor has she ever will. Moreover if she had believed this to be true. Why have she not written such an incident report: Insolence is a big factor here at thomson USP inmates are given shots for such display of aggresion 312 violation charges as a Case Manager She is obviously aware. of reporting belligerents, hostile, and very disrespectful inmates. She did not reported none of this for this never happened or will happen That is false information reporting.

Its is only after my PREAComplaint on July 16. 2019 that She Ms Barfield did not handled it propely; does she invented this odd new, characteristic of My person. (is opinion without merits.) I am requesting to the Courts in helping my case be directed to Offices of Internal Affairs OIA For Thomson USP has not and will not do their dutys. "MR Barfield is the husband of Ms Barfield" MR Barfield is EPO who is acting as SIA which is bias. to all inmates. Theirs is no Justice. Reporting PREA is to be said as malingering here at Thomson AUSP Please review my Individualized Reentry Plan Program Review Sequence 01376270. 08.24.2019

{ 1 of 4 pages she keep }  Sincerely Thanks

The signture pased I did not
" signed "

Roy Sargeant 11705-171

A23

(10)

Case: 3:19-cv-50187 Document #: 23 Filed: 11/08/19 Page 11 of 12 PageID #:145
Case: 21-2287    Document: 20    Filed: 09/20/2022    Pages: 73
[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I am subjected to retaliation. Not For my own behavior but, the behavior of other for filing PREH. In order to silent my reporting. I am still having Ms Cruz interfere with my incoming/outgoing mailed correspondance (see Remedy 991256 R1 Aug/July 25. 2019. I personal have evidance to prove Mail tempering Fraud conduct By Ms Cruze and unknown individual I have receipts of certified mail returns going to P.O. box Mail visiting only Quad, City Post marks only to be returned. With out registry compatered Logged-

Dear MR Honorable Durkins I will take a polygraph to all I have stated with proof. That I believed will be losed if my property has to go through AUSP THomson R & D system. Due to Ms CRUZE is scss intake and has thus Far done enought to intimidate or retaliate and cover up such insolence I also ask that I be provided counsel to guide this case.

Sincerely
Roy Sargeant # 11709-171

MR Walker, MR Moesh, are withesses to my complaint They never retaliated to my knowledge.

5                    Revised 9/2007



A24

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**V.     Relief:**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

I am respectfully asking this Court to sue, defendants and their Employers. On my comport for Monetary damage's To the sumsof One Hundred and Sixty million dollors.

**VI.**   The plaintiff demands that the case be tried by a jury.   ☑ YES   ☐ NO

CERTIFICATION

By signing this Complaint, I certify that the facts stated in this Complaint are true to the best of my knowledge, information and belief. I understand that if this certification is not correct, I may be subject to sanctions by the Court.

Signed this _Oct_ day of _23_ , 20 _19_

_____
(Signature of plaintiff or plaintiffs)

Roy Sargeant
(Print name)

11709 - 171
(I.D. Number)

Administrative United States Penitentiary

PO Box 1001
Thomson IL 61285.
(Address)

(2)