In the
UNITED STATES COURT OF APPEALS
for the Seventh Circuit

No. 21-2287

ROY SARGEANT,

Plaintiff-Appellant,

v.

ARACELIE BARFIELD,

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 19 C 50187, Iain D. Johnston, *Judge.*

## BRIEF OF APPELLEE BARFIELD

JOHN R. LAUSCH, Jr.
United States Attorney
for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

LISA R. MUNCH
Assistant United States Attorney
(815) 987-4281

# Table of Contents

Table of Authorities ................................................................... ii

Jurisdictional Statement ............................................................ 1

Issues Presented for Review...................................................... 1

Statement of the Case ............................................................... 2

Summary of the Argument........................................................ 3

Argument ................................................................................. 4

I.   Sargeant's Eighth Amendment Argument Was Waived ................... 4

II.  Congressional Limitations on Prisoner Litigation .......................... 5

III. Implying a *Bivens* Remedy in New Contexts Like This Is Disfavored ............ 8

    A.   A *Bivens* Remedy for Non-Medical Eighth Amendment Claims Has Not Been Recognized by the Supreme Court. ...................................... 11

    B.   Special Factors Counsel Hesitation in Expanding *Bivens* to Sargeant's Claim. ................................................................... 14

        1.   Fundamental Separation-of-Powers Concerns Counsel Hesitation...................................................... 15

        2.   Alternative Remedial Mechanisms are Available.................... 18

        3.   Additional Concerns Provide Reasons to Hesitate.................... 21

Conclusion................................................................................ 24

Certificate of Service

# Table of Authorities

## Cases

*Anderson v. United States*, 2021 U.S. Dist. LEXIS 207094 (N.D. Tex. October 26, 2021) ...........................................................................18

*Arar v. Ashcroft*, 585 F. 3d 559 (2d Cir. 2009) ............................................18,22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................8

*Ballard v. Dutton*, No. 21 C 1248, 2022 U.S. Dist. LEXIS 203430 (N.D. N.Y. November 8, 2022) ....................................................................10

*Bell v. Wolfish*, 441 U.S. 520 (1979)......................................................17,21,22

*Bistrian v. Levi*, 912 F.3d 79 (3rd Cir. 2018) ....................................11,14,17,22

*Bivens v. Blaike*, No. 21 C 783, 2022 WL 2158984 (D. Colo. June 15, 2022) ..19

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ..... 1,2,3,4,7,8,9,10,11,12,13,14,15,16,17,18,19,20,21,22,23

*Blake v. Bradley*, No. 20 C 5856, 2022 U.S. Dist. LEXIS 52017 (N.D. Ill. Mar. 23, 2022)..........................................................................18

*Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021).............................................13,14

*Bruscino v. Carlson*, 854 F.2d 162 (7th Cir. 1988) .........................................20

*Calix v. Pope*, No. 19C6685, 2022 U.S. Dist. LEXIS 176238 (E.D.N.Y. September 28, 2022) ..................................................................10,17

*Carlson v. Green*, 446 U.S. 14 (1980) ....................................7,9,10,11,13,14,24

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004)........................12

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)......................................19,20

*Crocker v. Coleman*, 2022 U.S. Dist. LEXIS 18031 (M.D. Fla. January 6, 2022) .......................................................................................18

*Dale v. Poston*, 548 F.3d 563 (7th Cir. 2008) ..................................................12

*Davis v. Passman*, 442 U.S. 228 (1979) ...........................................7,9,10,11,13

*Doe v. Hagenbeck*, 870 F.3d 36 (2nd Cir. 2017) ..............................................11

*Egbert v. Boule*, 142 S. Ct. 1793 (2022) ............................. 7,8,11,12,13,14,15,17,18,19,21,22,23,24

*Farmer v. Brennan*, 511 U.S. 825 (1994) ....................................................11,12

*Fednav International Ltd. v. Continental Ins. Co.,* 624 F.3d 834 (7th Cir. 2010) ......................................................................................4,5

*Gonzalez v. Hasty*, 269 F. Supp. 3d 45 (E.D.N.Y. 2017)..................................13

*Goree v. Serio*, 735 F. App'x 894 (7th Cir. 2018)..............................19

*Gonzalez v. Hasty*, 755 F. App'x 67 (2d Cir. 2018) ...........................13

*Greater New Orleans Broad. Ass'n, Inc. v. United States*,
527 U.S. 173 (1999)..............................................................................23

*Greene v. United States of American, et al.*, No. 21-5398 (6th Cir. 2022)........10

*Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020) ...................................5

*Hernández v. Mesa*, 140 S. Ct. 735 (2020) ...................................7,9,11,14,15,16

*Hoffman v. Preston*, 28 F.4th 1059, *withdrawn* in 2022 U.S. App.
LEXIS 28228 (9th Cir. 2022)........................................................13,14

*Idaho v. Cour d'Alene Tribe of Idaho*, 521 U.S. 261 (1997)...........................23

*In re Stegall*, 865 F.2d 140 (7th Cir. 1989) ......................................12

*Johnson v. Santiago, No. 20 C 6345, 2022 U.S. Dist. LEXIS 152274*
(E.D. N.Y. August 24, 2022) ...............................................................12

*Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119 (1977) ......................21

*Liggins v. O'Sullivan*, No. 19 C 50303, 2022 U.S. Dist. LEXIS 45582
(N.D. Ill. March 15, 2022).....................................................7,8,14,16,17

*Looper v. Federal Bureau of Prisons, et al.*, No. 19 C 377, 2022 WL 4287686
(E.D. Tex. June 22, 2022) ....................................................................10

*Lopez v. Monterey County*, 525 U.S. 266 (1999)..................................12

*Mack v. Yost*, 968 F.3d 311 (3rd Cir. 2020).........................................7

*Markovic v. Milwaukee Secure Det. Facility*, No. 19 C 675, 2019 WL 6729198
(E.D. Wis. December 11, 2019)...............................................................22

*Mays v. Federal Bureau of Prisons, et al.*, No. 22 C 167, 22 WL 16817623
(E.D. Ark. November 8, 2022) ..............................................................10

*Ricci v. Salzman,* 976 F.3d 768 (7th Cir. 2020)...................................4

*Schwarz v. Meinberg*, 761 F. App'x 732 (9th Cir. 2019)...................................13

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) .....................................16

*Texas v. Cobb*, 532 U.S. 162 (2001) ................................................12

*United States v. Glaser, 14 F.3d 1213 (7th Cir. 1994)*....................................11

*United States v. L.A. Trucker Lines, Inc.*, 344 U.S. 33 (1952)..........................12

*Vanderklok v. United States*, 868 F.3d 189 (3rd Cir. 2017) ...........................23

*W. Radio Servs. v. U.S. Forest Servs.*, 578 F.3d 1116 (9th Cir. 2009) .............19

*Walker v. Groot*, 867 F.3d 499 (7th Cir. 2017) ....................................5

*Webster v. Fall*, 266 U.S. 507 (1925) ...............................................12

*White v. Sloop*, 772 F. App'x 334 (7th Cir. 2019) ...............................................12

*Wilkie v. Robbins*, 551 U.S. 537 (2007) ........................................................22,23

*Williams v. Dieball,* 724 F.3d 957 (7th Cir. 2013) ...............................................4

*Winstead v. Matevousian*, 2018 U.S. Dist. LEXIS 73484 (E.D.N.Y. 2017)......13

*Wolff v. McDonnell*, 418 U.S. 539 (1974) ........................................................21

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ..3,5,6,8,10,11,12,14,16,18,19,20,21,22

## Statutes

5 U.S.C. § 702...............................................................................................19

5 U.S.C. § 706...............................................................................................19

5 U.S.C. § 7543.............................................................................................20

18 U.S.C. § 242...........................................................................................7,20

18 U.S.C. § 3663(a)(1)(A)..............................................................................20

18 U.S.C. § 4042(a).........................................................................................6

28 U.S.C. § 1291.............................................................................................1

28 U.S.C. § 1346...........................................................................................18

28 U.S.C. § 1915A(a).......................................................................................2

28 U.S.C. § 1915(e)(2).....................................................................................2

28 U.S.C. § 2679...........................................................................................18

28 U.S.C. § 2680(h).......................................................................................18

34 U.S.C. § 30302...........................................................................................5

34 U.S.C. §§ 30307(a)(1)-(3)...........................................................................6

42 U.S.C. § 1983.............................................................................................5

## Rules

Fed. R. App. P. 4(a)(1)(B)(iv) .........................................................................1

## Regulations

5 C.F.R. § 752.403.........................................................................................20

28 C.F.R. § 0.29c.............................................................................................7

28 C.F.R. §§ 522.20-.21...................................................................................6

28 C.F.R. § 524................................................................................................6

28 C.F.R. §§ 524.10-.18...................................................................................6

28 C.F.R. §§ 524.10-11 ........................................................................6

28 C.F.R. § 540 .................................................................................6

28 C.F.R. § 541 .................................................................................6

28 C.F.R. § 551.07 .............................................................................6

## Legislative Materials

Senate Judiciary Committee Letter to AG and Deputy AG
(February 22, 2022) .........................................................................20

## Other Authorities

Program Statement 1210.21 *Boards of Inquiry and Inquiry Teams* ................7

Program Statement 1210.24 *Internal Affairs, Office of* .....................................7

Program Statement 1330.18 *Administrative Remedy Program* ......................6

Program Statement 5217.02 *Special Management Units* ................................6

Program Statement 5290.15 *Intake Screening* .................................................6

Program Statement 5322.13 *Inmate Classification and Program Review* ........6

## Jurisdictional Statement

Appellant's jurisdictional statement is not complete and correct. Accordingly, appellee provides the following jurisdictional statement pursuant to Circuit Rule 28(b).

Plaintiff-appellant Roy Sargeant was an inmate at USP Thomson, in Thomson, Illinois who sued BOP official Aracelie Barfield under *Bivens v. Six Unknown Names Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (Harlan, J., concurring). Although this appeal turns on whether Sargeant's complaint stated a *Bivens* claims, district courts do have jurisdiction over *Bivens* claims under 28 U.S.C. § 1331. *Id.*

The district court granted the defendant's motion to dismiss in a memorandum and opinion (R. 72)[1] and entered a separate final judgment (R. 73) on the same day thereby resolving all claims. R. 72. No post-judgment motions were filed. Sargeant filed a notice of appeal on July 13, 2021, within the 60 days allowed by Fed. R. App. P. 4(a)(1)(B)(iv). R. 74, 75. This court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final decision.

## Issues Presented for Review

1.    Whether appellant waived his sole argument on appeal (concerning the viability of Eighth Amendment failure-to-protect claims) by raising that argument for the first time on appeal.

2.    Whether, even if the argument was not waived below, the Supreme Court would recognize a new Eighth Amendment failure-to-protect *Bivens* claim.

---

[1]    "R." references are to numbered items in the Record on Appeal, which correspond to the district court's docket.

## Statement of the Case

Roy Sargeant was a prisoner at USP Thomson who alleged in his amended complaint that, after filing grievances against prison staff Arecelie Barfield (and others at the prison) retaliated against him in violation of the First Amendment: "I am subjected to retaliation. Not for my own behavior, but the behavior of other[s] for filing PREA [Prison Rape Elimination Act claims]. In order to silent my reporting." R. 23, 30 at p. 11. The alleged retaliation included comments on his sexual preferences and placing him in cells with others not similarly classified and his "having to battle with inmates" "leading to argument and some fights." R. 30, p. 9. Despite his complaint of fights, Sargeant did not allege any resulting medical injury or that he required medical care. Upon screening of his amended complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the district court allowed Sargeant to proceed on his First Amendment retaliation claim only against Aracelie Barfield noting that Sargeant "pleaded no other viable claims." R. 29 at 4. *See also* R. 30.

Subsequently, Barfield filed a motion to dismiss the retaliation claim on grounds that *Bivens* had not been extended, nor should it be extended, to First Amendment retaliation claims. R. 54 at 4-5. In response, through appointed counsel, Sargeant argued only that "the viability of his First Amendment retaliation claim be reviewed on its own terms, against a backdrop or understanding that federal prisoners should not be left without a *Bivens* remedy when retaliation is used to deter them from seeking other remedies." R. 67 at 15. No mention was made in Sargeant's response to a possible *Eighth Amendment* claim. R. 67. Sargeant did not seek leave to amend his complaint to add an Eighth Amendment claim. The district court

granted the motion to dismiss, holding that federal inmates do not have a *Bivens* claim under the First Amendment for retaliation following the decision in *Ziglar v. Abbasi*, 137 U.S. 1843 (2017), and the "cornucopia of other courts" recognizing that "a First Amendment retaliation claim would be an extension of *Bivens* in a new context" and that "special factors weighed against a disfavored extension." *Id.* 3-4. This appeal followed.

## Summary of the Argument

First, Sargeant's only argument on appeal is that an *Eighth Amendment* failure-to-protect *Bivens* claim has already been recognized by the Supreme Court or that a "modest extension" of *Bivens* to such claims is warranted. But aside from being wrong, there is a more fundamental defect with that argument: it was waived because it is being raised *for the first time* on appeal.

Second, the kind of claim that Sargeant advocates was simply not among the three that the Supreme Court has recognized, and this court should heed the Supreme Court's guidance that it is almost always Congress rather than the courts that should extend *Bivens* beyond the currently recognized claims. Sargeant alleged that defendant Barfield retaliated against him for filing grievances by placing him in cells with other inmates, which led to arguments and fights in violation of the First Amendment. R. 30, p. 9. Conceding that his *First Amendment* claims are not cognizable *Bivens* actions, Sargeant now claims that his housing assignments were a violation of the *Eighth Amendment*. R. 20, p. 9. But the Supreme Court has made it clear in a series of recent cases that expanding the judicially created *Bivens* remedy to cover previously unrecognized claims (like Sargeant's) is disfavored. To the

threshold question of whether a *Bivens* remedy even exists, the answer is no. Also, there are several reasons to pause before creating a new and freestanding damages remedy against individual BOP employees arising from actions that, as alleged here, implicate efforts to maintain safety, security, and order in a high-security prison.

**Argument**

## I.     Sargeant's Eighth Amendment Argument Was Waived.

Sargeant's sole argument on appeal (that he has a valid Eighth Amendment failure-to-protect claim) is waived because he did not raise it below. *See Ricci v. Salzman*, 976 F.3d 768, 770 (7th Cir. 2020 ("Ricci's first argument can be dealt with fairly quickly because he never made it in the district court."). Barfield filed a motion to dismiss the case on grounds that *Bivens* did not encompass First Amendment retaliation claims. R. 54 at 4-5. In response, through appointed counsel, Sargeant argued only that "the viability of his First Amendment retaliation claim be reviewed on its own terms, against a backdrop or understanding that federal prisoners should not be left without a *Bivens* remedy when retaliation is used to deter them from seeking other remedies." R. 67 at 15. Not one mention was made in Sargeant's response to a possible *Eighth Amendment* claim. The district court granted the motion to dismiss, holding that federal inmates do not have a *Bivens* claim under the First Amendment for retaliation, and not surprisingly, did not address potential Eighth Amendment claims, which were not raised below, and which should not be considered on appeal.

"A 'party may not raise an issue for the first time on appeal.' *Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013), quoting *Fednav International Ltd. v.*

4

*Continental Ins. Co.*, 624 F.3d 834, 841 (7th Cir. 2010). Such failure to object ordinarily constitutes waiver, *id.*, and waiver normally precludes appellate review." *Walker v. Groot*, 867 F.3d 799, 802 (7th Cir. 2017). This rule is not absolute; exceptions might be made "in exceptional circumstances" and when a "miscarriage of justice will occur if plain error review is not applied." *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020). These are not exceptional circumstances, and there is no error, much less "plain error" in the district court's thoughtful analysis. Accordingly, the judgment should be affirmed on waiver grounds alone.

## II.     Congressional Limitations on Prisoner Litigation.

Turning to the question of whether the Supreme Court would recognize an Eighth Amendment failure-to-protect claim, the answer is no. For starters, Congressional acts demonstrate persistent limitations on prisoner litigation. In 1871, Congress passed 42 U.S.C. § 1983, authorizing a damages remedy against state officers for alleged constitutional violations. Over the next 150 years, Congress amended that statute twice, Pub. L. No. 104-317, § 309, 110 Stat. 3847, 3853 (1996); Pub. L. No. 96-170, 93 Stat. 1284 (1979), but has never expanded its scope to encompass federal actors. *Abbasi*, 137 S. Ct. at 1854. This has not been due to oversight or inadvertence. Congress has also legislated extensively around prisoners' rights and, despite frequent attention to the context, has repeatedly wielded its policymaking authority to curtail inmate lawsuits. Notably, in 2003 with the Prison Rape Elimination Act, policymakers focused on the appropriate means to "protect the *Eighth Amendment* rights of . . . prisoners" and to "increase the accountability of prison officials." 34 U.S.C. § 30302 (emphasis added). Again, Congress did not

address these issues by creating a private damages remedy against federal prison staff. Instead, Congress opted to authorize the Attorney General to issue regulations to prevent, investigate, and punish rape in prisons. 34 U.S.C. § 30307(a)(1)-(3). Over a 40-year history of legislative activity, Congress repeatedly considered "the matter of prisoner abuse" and "the proper way to remedy those wrongs," but at each turn declined to "provide for a standalone damages remedy against federal jailers." *Abbasi*, 137 S. Ct. at 1865. (Here, Sargeant claims that his Eighth Amendment rights were violated when he was intentionally housed with dangerous inmates in response to his Prison Rape Elimination Act complaints. R. 30 at 11.)

While Congress has placed clear limits on prisoner litigation, it simultaneously has shown a preference that courts "continue the tradition of giving due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with its consideration of costs and limited resources." S. Rep. No. 103-111, at 1900 (1993), 1993 U.S.C.C.A.N. 1892, 1898. Congress has since 1948 entrusted management of federal prisons to the Attorney General and the BOP. *See* 18 U.S.C. § 4042(a). In turn, the BOP has set up a host of policies and regulations governing, among other things, intake screening (28 C.F.R. §§ 522.20-.21, Program Statement 5290.15); inmate classification and program review (28 C.F.R. §§ 524.10-11, 551.07, Program Statement 5322.13); and housing designations (for instance in the special management unit where Sargent was housed) (28 C.F.R. §§ 524, 540, and 541, Program Statement 5217.02). There is also a multi-tiered administrative remedy program, *see* 28 C.F.R. §§ 542.10-.18, Program Statement 1330.18, through which

6

"inmates can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring." *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020). Staff are subject to investigation and discipline for their misconduct, see 28 C.F.R. § 0.29c, Program Statements 1210.21, 1210.24, and those investigations can lead to criminal prosecution, *see* 18 U.S.C. § 242.

Fifty years ago, in *Bivens*, the Supreme Court implied a damages remedy against narcotics agents for an alleged warrantless search and arrest inside a home. 403 U.S. 388. In the next nine years, the Court extended that remedy only twice, first to gender discrimination allegations against a congressman, *Davis v. Passman*, 442 U.S. 228 (1979), and next involving an alleged Eighth Amendment violation against prison officials for failing to provide critical life-saving medical care that resulted in death, *Carlson v. Green*, 446 U.S. 14 (1980). The Court then "changed course," and in twelve separate cases over forty-plus years, "consistently rebuffed requests" to extend *Bivens* to any new context or category of defendants. *Hernández v. Mesa*, 140 S. Ct. 735, 741-43 (2020) (collecting cases); *accord Egbert*, 142 S. Ct. at 1799; *see Liggins v. O'Sullivan*, No. 19 C 50303, 2022 U.S. Dist. LEXIS 45582 (N.D. Ill. March 15, 2022), at *4 (noting Supreme Court has "abandoned" the "wisdom in judicially created causes of action . . . as an extrajudicial, legislative act.").

As this history makes plain, "the rationale of *Bivens* has not survived the years." *Id.* at *3. "[T]he heady days in which [courts] assumed common-law powers to create causes of action" are "long past." *Egbert*, 142 S. Ct. at 1802 (quotations omitted). Now, the "watchword is caution." *Hernández*, 140 S. Ct. at 742. That caution stems from respect for separation-of-powers principles, which are "central" to

7

the question of whether to imply a *Bivens* remedy. *Id*. at 743; see *Egbert*, 142 S. Ct. at 1806 n. 3 (explaining that "recognizing a *Bivens* cause of action is an extraordinary act that places great stress on the separation of powers." (quotation omitted)). To answer that question, the Supreme Court generally engages in a two-part test, but at times, these "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803.

## III. Implying a *Bivens* Remedy in New Contexts Like This Is Disfavored.

Sargeant's alleged *Bivens* claim arises in a new context, and implying a *Bivens* remedy in new contexts is disfavored. A claim presents a new context if it "is different in a meaningful way from" the three Supreme Court decisions approving *Bivens* actions in the past. *Abbasi*, 137 S. Ct. at 1859. "The first step" in the analysis "is not an onerous one," *Liggins*, 2022 U.S. Dist. LEXIS 45582, at *3, and here it is readily satisfied. Simply put, Sargeant now challenges his housing assignments and who is assigned to the cell with him. Such allegations "bear little resemblance to the three *Bivens* claims the Court has approved in the past." *Abbasi,* at 1860. As multiple courts around the country have found, the various iterations of Sargeant's claim— even when framed as an Eighth Amendment failure-to-protect (which it is not)—arise in a new context. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (teaching that "labels and conclusions" should be disregarded in evaluating motions to dismiss). So too here.

Sargeant's housing claim against Barfield arises in a new *Bivens* context because it is "different in a meaningful way from [the three] previous *Bivens* cases

decided by [the Supreme] Court." *Abbasi*, at 1859. *Bivens*, *Davis*, and *Carlson* "represent the only instances in which the Court has approved an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. And of these cases, only one—*Carlson*—arose in the context of an Eighth Amendment claim. Yet the mere fact that a plaintiff invokes the same constitutional amendment under which the Supreme Court has previously authorized a *Bivens* remedy is not, and cannot be, dispositive as to the new-context inquiry. *Id*. at 1864 ("even a modest extension [of *Bivens*] is still an extension."). *See also Hernández*, 140 S. Ct. at 743 ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

More to the point, *Carlson* involved claims pertaining to deliberate indifference to an inmate's *medical* needs. *Carlson*, 446 U.S. at 16 n. 1. By contrast, Sargeant's claim challenges the exercise of correctional judgment in the context of housing assignments. Questions regarding where to safely house inmates present issues which do not dictate a specific, mandated course of action. None of the three approved *Bivens* actions address in any way BOP housing assignments. Sargeant's amended complaint generalizes his housing assignment touching on custody level, classification, and active inmates versus non-active protected custody. R. 30, p. 9. He further alleged "having to battle with inmates" "leading to argument and some fights." *Id*. While Sargeant identifies his cellmate as having a different custody level, and that the cellmate "has been in numerous fights since his arrival," Sargeant's allegations contrast significantly with those in *Carlson*, the latter involving a lack of critical lifesaving medical treatment, and the predictably severe and lethal outcome.

9

Sargeant's claims are remarkably different—not involving any medical care, serious bodily injury requiring emergency care or death.

The context here is new.  See *Abbasi*, 137 S. Ct. at 1864 ("[E]ven a modest extension [of *Carlson*] is still an extension."); *see also Ballard v. Dutton*, No. 21 C 1248, 2022 U.S. Dist. LEXIS 203430, *15 (N.D.N.Y. November 8, 2022) (citing *Calix v. Pope*, (citation omitted) "non-medical" *Bivens* claims, like the failure-to-protect claim "implicate. . . not the duty to provide 'adequate medical care,' but the duty to 'take reasonable measures to guaranty the safety of. . . inmates.'"  In other words, there are meaningful differences between medical indifference claims and failure-to-protect claims.); *Looper v. Federal Bureau of Prisons*, *et al.*, No. 19 C 377, 2022 WL 4287686, at *5 (E.D. Tex. June 22, 2022) (The Supreme Court has never held that *Bivens* extends to Eighth Amendment Failure to protect or failure to intervene claims.); *Greene v. United States of America, et al.*, No. 21-5398, *6 (6th Cir. 2022) (Greene's Eighth Amendment claims against federal corrections officers and officials for. . . failure to protect arise in "a new context" and involve a "new category of defendants," "and therefore are presumptively non-cognizable." (citations omitted)); *Mays v. Federal Bureau of Prisons, et al.*, No. 22 C 167, 2022 WL 16817623, at *5 (E.D. Ark. November 8, 2022) (The Court underscores that failure to protect. . . claims differ significantly in their factual underpinnings and elements from a deliberate indifference to serious medical needs claims.). Not only is such a claim meaningfully different from the denial of medical care (*Carlson*), it also bears no resemblance to the in-home law-enforcement raid in *Bivens* or the employment discrimination claims in *Davis*.  This, alone, is enough to mark a new context.  *Abbasi*, 137 S. Ct. at 1864.

### A.    A *Bivens* Remedy for Non-Medical Eighth Amendment Claims Has Not Been Recognized by the Supreme Court.

Sargeant argues this court should follow the Third Circuit's decision in *Bistrian v. Levi*, 912 F.3d 79, 90-92 (3d Cir. 2018) wherein that court held that a Fifth Amendment failure-to-protect claim stemming from inmate-on-inmate violence is not a new context considering *Farmer v. Brennan*, 511 U.S. 825, 832-49 (1994). *Bistrian*—an outlier— is not binding precedent in the Seventh Circuit. *United States v. Glaser*, 14 F.3d 1213, 1216 (7th Cir. 1994), but in any event, this court should not adopt the holding in *Bistrian* and construe *Farmer* as a "fourth" recognized *Bivens* claim, as if the Supreme Court just overlooked *Farmer* when it was explained in *Abbassi*, *Hernández*, and *Egbert* that it had inferred *Bivens* claims in *three* previous cases (not *four*). In recent cases, the Supreme Court has not addressed or even cited to *Farmer*. *Abbasi*, 137 S. Ct. at 1855 ("These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the constitution itself."); *Hernández*, 140 S. Ct. at 741 ("The Court subsequently extended *Bivens* to cover two additional constitutional claims [in *Davis* and *Carlson*]. . ."); *Egbert*, 142 S. Ct. at 1802 (Since [*Bivens*, *Davis*, and *Carlson*], the Court has not implied additional causes of action under the Constitution."); see also *Doe v. Hagenbeck*, 870 F.3d 36, 43 & n 4 (2d Cir. 2017) ("[T]he Supreme Court has extended [*Bivens*'] reach only twice," in *Davis* and *Carlson*). The Third Circuit in *Bistrian* even acknowledged that "the *Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim." *Bistrian*, 912 F.3d at 90-91. ("It *may* be that the Court simply viewed the failure-to-protect claim as not distinct from the

11

Eighth Amendment deliberate indifference claim in the medical context.") (emphasis added); *see also Johnson v. Santiago*, No. 20 C 6345, 2022 U.S. Dist. LEXIS 152274, *9 (E.D.N.Y. August 24, 2022) ("*Farmer* did not address the question of whether a *Bivens* remedy should be implied under the Constitution. Instead, *Farmer* merely "define[d] the term 'deliberate indifference'" for purposes of an Eighth Amendment claim.") (citations omitted).  Courts should not be assuming lack of direction in the wake of the Supreme Court's clear pronouncement in *Abbasi* that *Bivens* actions are disfavored.  *See Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *Lopez v. Monterey County*, 525 U.S. 266, 281 (1999) ("[T]his Court is not bound by its prior assumptions."); *United States v. L.A. Trucker Lines, Inc.*, 344 U.S. 33, 38 (1952) (explaining that an issue not "raised in briefs or argument nor discussed in the opinion of the Court" cannot be "binding precedent on th[e] point"); *In re Stegall*, 865 F.2d 140, 142 (7th Cir. 1989) ("A point of law merely assumed in an opinion, not discussed, is not authoritative.").

Similarly, *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008), involving a failure-to-protect claim, does not alter this court's new-context analysis because it was decided before *Abbasi* and *Egbert*.  *White v. Sloop*, 772 F. App'x 334, 335 (7th Cir. 2019) ("But, since *Abbasi*, the *Bivens* framework has narrowed substantially to limit

lawsuits against federal agents; this court's 'past pronouncements are thus not controlling.'"). Given the Supreme Court's repeated pronouncements that *Bivens*, *Davis*, and *Carlson* represent the only three recognized *Bivens* contexts, a *Bivens* remedy for Eighth Amendment *non-medical* claims—such as for inmate housing or even failure-to-protect claims—has not been recognized by the Supreme Court. *See Schwarz v. Meinberg*, 761 F. App'x. 732, 733 (9th Cir. 2019) (affirming dismissal of inmate's claims that BOP officials violated the Fifth and Eighth Amendments by subjecting him to unsanitary cell conditions, denying him access to the courts, and ignoring his request for placement in a camp facility); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 63-66 (E.D.N.Y. 2017), *aff'd* 755 F. App'x 67 (2d Cir. 2018) (no *Bivens* remedy in the context of SHU placement); *Winstead v. Matevousian*, 2018 U.S. Dist. LEXIS 73484, *6-7 (E.D. Cal. May 1, 2018) (refusing to extend *Bivens* to plaintiff's *non-medical* conditions of confinement claims where an officer allegedly solicited an inmate to assault the plaintiff) (emphasis added).

Sargeant further relies upon the Ninth Circuit's decision in *Hoffman v. Preston*, 28 F.4th 1059 (9th Cir. 2022) initially decided on February 28, 2022, with Sargeant citing to the court's discussion in favor of *modestly* expanding *Bivens* in an alleged failure-to-protect claim under the Eighth Amendment. In the decision, the Ninth Circuit cited to its own decision in *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021), where they also found that special factors did not counsel against another "modest extension" of a *Bivens* remedy under the Fourth Amendment. However, the Supreme Court granted *certiorari* in *Boule v. Egbert*, and on June 8, 2022, the Court reversed the Ninth Circuit's judgment. *Egbert*, 142 S. Ct. 1793, 1809 ("In short, as

we explained in *Ziglar*, a plaintiff cannot justify a *Bivens* extension (even a modest one) based on 'parallel circumstances' with *Bivens*, *Passman*, or *Carlson*. . . .″). Following reversal of the Ninth Circuit's judgment in *Boule*, the Ninth Circuit withdrew its decision in *Hoffman*, 28 F.4th 1059, (the now-withdrawn decision on which Sargeant relies), deciding *against* the modest *Bivens* expansion and no longer supporting such an expansion in the setting of an Eighth Amendment failure-to-protect claim. 2022 U.S. App. LEXIS 28228 (9th Cir. October 11, 2022). (The Ninth Circuit's reversal of course in *Hoffman* was made after Sargeant's brief in this case was filed.) Thus, Sargeant is left to rely on a non-precedential pre-*Abbasi* and pre-*Egbert* outlier, namely *Bistrian*, for their untenable position that this Court should extend *Bivens* to a new context.

## B.    Special Factors Counsel Hesitation in Expanding *Bivens* to Sargeant's Claim.

Where, as here, a plaintiff seeks to extend *Bivens*, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Egbert*, 142 S. Ct. at 1803 (quotations omitted). "The correct answer most often will be Congress." *Hernández*, 140 S. Ct. at 750 (quotations omitted); *accord Liggins*, 2022 WL 787947, at *4. Modern Supreme Court precedent recognizes that the decision to create a damages remedy against federal officials in their individual capacities is, at bottom, "a legislative endeavor." *Egbert*, 142 S. Ct. at 1802. It is a matter of policy balancing—involving the weighing of "a number of economic and governmental concerns"—and so it is best "committed to those who write the laws rather than those who interpret them." *Abbasi*, 137 S. Ct. at 1856-57

(quotation omitted).  Because "Congress is far more capable than the Judiciary to weigh such policy considerations,"—and "the Judiciary's authority to do so at all is, at best, uncertain"—the Supreme Court demands "utmost deference to Congress' preeminent authority in this area." *Egbert*, 142 S. Ct. at 1803.  As a result, courts should refrain from extending *Bivens* "if there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id*. (quotations omitted).  Here, there are several such "reason[s] to pause." *Hernández*, 140 S. Ct. at 743-44.

### 1. Fundamental Separation-of-Powers Concerns Counsel Hesitation.

At the outset, there are "sound reasons to think Congress might doubt" the need for an individual damages remedy against BOP staff arising from deciding housing assignments.  *Id*. at 743.  Any such remedy risks "interfering with the authority" of the Executive Branch in the sensitive setting of maintaining safety, security, and discipline in federal prisons.  *Id*.  These reasons counsels against extending *Bivens*.

**Deference to Congress.**  *Bivens* extensions are "inappropriate" if there is any "possibility" that Congress's "failure to provide a damages remedy might be more than mere oversight, and that congressional silence might be more than inadvertent." *Abbasi*, 137 S. Ct. at 1862 (quotations omitted).  Such is the case here.  As discussed above, *supra* pp. 2-3, Congress's attention to and extensive policymaking in the realm of inmates' rights and prison administration—and with respect to federal officer liability more broadly—has been "frequent and intense." *Id*. at 1862.  Yet notably

missing from that decades-long "pattern of congressional action" is the remedy against federal prison officials Sargeant asks this Court to imply. *Hernández*, 140 S. Ct. at 749. This suggests "that congressional inaction has not been inadvertent," which, in turn, requires "appropriate judicial deference[.]" *Schweiker v. Chilicky*, 487 U.S. at 412, 423 (1988). It is also "telling," *Abbasi*, 137 S. Ct. 1862, that "[p]olitical will, not drafting ability, is the roadblock" that has stood in the way of Congress codifying a *Bivens*-type remedy, *Liggins*, 2022 WL 787947, at \*5 n. 2. That the Legislative Branch has repeatedly tried, but failed, to enact a statutory *Bivens* remedy, supra p. 5, "does not compel [courts] to step into [Congress's] shoes." *Hernández*, 140 S. Ct. at 750.

This Court recently recognized that the same history of "congressional action" counseled against extending *Bivens* to another USP Thomson inmate's claims of non-medical mistreatment, and the same conclusion applies here. *See Liggins*, 2022 U.S. Dist. LEXIS 45582, at \*5. Since *Liggins*, Congressional interest "directed to the conditions of confinement" at USP Thomson has only heightened.[2] The fact that "at Congress' behest, the Department of Justice's Office of the Inspector General" has opened an investigation into those conditions, itself counsels hesitation. *Abbasi*, 137 S. Ct. at 1862.

**Deference to the Executive Branch.** A separate (but related) reason to hesitate is that Sargeant's allegations "clearly invoke" the sensitive setting of

---

[2]    *See* Press Release of Sen. Durbin (June 9, 2022), available at, https://www.durbin.senate.gov/newsroom/ press-releases/durbin-duckworthbustos-announce-inspector-general-investigation-into-inmate-deaths-allegations-of-abuses-atusp-thomson.

maintaining "safety and security" in federal prisons, an area in which "the Supreme Court has repeatedly emphasized the need for deference to prison administrators." *Id.* at *4. That deference is especially "wide-ranging" as to the "execution of policies and practices that," in the judgment of prison officials, "are needed to preserve internal order and discipline and to maintain institutional security," *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Not only has the court recognized the need for such deference to prison officials as a general matter, as discussed, Congress specifically charged the Executive Branch with broad discretion to run federal prisons and, in response, BOP established detailed policies aimed at maintaining institutional safety, security, and order in its facilities. *See supra* pp. 2-3. Pursuant to those policies, "prison officials have—and indeed must have—the authority to determine," how to respond to ensure prison safety, security, and order. *Bistrian*, 912 F.3d at 94). Sargeant's claims, which seek to challenge those determinations by way of after-the-fact damages remedies, implicate "the realm of the prison's safety and security procedures. . . ." *Liggins*, 2022 U.S. Dist. LEXIS 45582, at *10. Because these matters have long been committed to the Executive Branch, separation-of-powers concerns counsel a policy of judicial restraint. *Liggins*, 2022 U.S. Dist. LEXIS 45582, at *4 (collecting cases). *See Calix,* 2022 U.S. Dist. LEXIS 176238, at *11 (quoting *Egbert*, 142 S. Ct. at 1802) ("First, prison housing placements and inmate separations involve complicated, policy-laden tradeoffs about housing resources, as well as difficult predictions of future risk[,]" and "a court is ill-placed to 'predict the systemwide consequences of recognizing a cause of action under *Bivens* against the officials who make these decisions.").

17

### 2.     Alternative Remedial Mechanisms are Available.

In addition to these separation-of-powers considerations, a *Bivens* remedy is unavailable as here because "Congress already has provided, or has authorized the Executive to provide, more than one "alternative remedial structure." *Egbert*, 142 S. Ct. at 1804 (quotation omitted).

**The Federal Tort Claims Act (FTCA).** One such remedial structure is the FTCA, through which Congress created a monetary damages remedy for alleged torts committed by federal employees in the scope of employment. *See* 28 U.S.C. §§ 2679, 1346. And although the FTCA has several exceptions that preserve sovereign immunity for certain types of claims, Congress specifically amended that statute three years after *Bivens* was decided to allow for claims "of assault, battery, false imprisonment," and other torts arising out of the "acts or omissions of investigative or law enforcement officers of the United States Government." 28 U.S.C. § 2680(h). The bar for what "counsels hesitation" is "remarkably low," *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009), and "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Ziglar*, 137 S. Ct. at 1865. The presence of that scheme is enough to "independently foreclose a *Bivens* action here." *Id*.; *see Blake v. Bradley*, No. 20 C 5856, 2022 U.S. Dist. LEXIS 52017, at *5 (N.D. Ill. Mar. 23, 2022); *Crocker v. Coleman*, 2022 U.S. Dist. LEXIS 18031, at *10-11 (M.D. Fla. January 6, 2022); *Anderson v. United States*, 2021 U.S. Dist. LEXIS 207094, at *28 (N.D. Tex. October 26, 2021).

**BOP Administrative Remedy Program.** Still another reason why *Bivens* relief is unavailable is because Sargeant "could, among other options, file grievances

though [BOP's] Administrative Remedy Program." *Egbert*, 142 S. Ct. at 1806 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). Indeed, Sargeant submitted documentation of this scheme (his grievances) as exhibits to his complaint. R. 23, 23-1 through 23-6, 26, 26-1, 30. That those grievances were unsuccessful, or could not offer the prospect for monetary relief, does not justify creating a new *Bivens* remedy. *See Egbert*, 142 S. Ct. at 1808. Just the opposite. The presence of a deliberately crafted, multi-step remedial program can, by itself, offer reason to pause. *See id.*; *Malesko*, 534 U.S. at 73-74 (rejecting *Bivens* extension in part because plaintiff could have lodged "grievances filed through the BOP's Administrative Remedy Program"); *Goree v. Serio*, 735 F. App'x 894, 895 (7th Cir. 2018) (declining *Bivens* remedy when inmate "had available to him, and indeed pursued, administrative remedies through [BOP] to seek relief based on the same conduct underlying this suit."); *see also Bivens v. Blaike*, No. 21 C 783, 2022 WL 2158984, at *3 (D. Colo. June 15, 2022) (finding, post-*Egbert*, BOP Administrative Remedy Program alone precluded *Bivens* remedy).

**Other "forms of judicial relief."** In addition to the alternatives above, inmates challenging the conditions of confinement might also pursue claims for equitable relief. *See Abbasi*, 137 S. Ct. at 1865 (recognizing official-capacity suit for "injunction requiring the warden to bring [the] prison into compliance" as potential alternative); *Malesko*, 534 U.S. at 73-74 (declining *Bivens* extension where inmate could have filed "suits in federal court for injunctive relief"). Relatedly, any inmate may challenge BOP policies—such as those pertaining to housing assignments—through an Administrative Procedure Act action in federal court. *See* 5 U.S.C. §§ 702, 706; *see also W. Radio Servs. v. U.S. Forest Servs.*, 578 F.3d 1116, 1123 (9th Cir. 2009)

19

(explaining potential for review under "the APA leaves no room for *Bivens*" claims based on agency action or inaction). *See Abbasi*, 137 S. Ct. at 1863 (considering "other alternative forms of judicial relief" as alternative to *Bivens*).

To the extent that Sargeant may contend his allegations describe routine practices at USP Thomson, equitable relief offers not only the more appropriate remedy, but arguably "a faster and more direct route to relief than a suit for money damages." *Abbasi*, 137 S. Ct. at 1863; *see Malesko*, 534 U.S. at 74 (noting "injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally."); *cf. Bruscino v. Carlson*, 854 F.2d 162 (7th Cir. 1988) (addressing by way of official-capacity suit for injunctive relief allegations of unconstitutional conditions of confinement at federal prison).

**Additional safeguards to address the issues at stake.** Beyond these alternatives, additional avenues are in place—including congressional oversight, (Senate Judiciary Committee Letter to AG and Deputy AG (February 22, 2022)),[3] criminal prosecution, 18 U.S.C. § 242 (a successful prosecution under 18 U.S.C. § 242 can result in an order of restitution for the victim, *see* 18 U.S.C. § 3663(a)(1)(A)), investigations by BOP's Office of Internal Affairs or DOJ's Office of the Inspector General, and adverse employment actions, 5 U.S.C. § 7543; 5 C.F.R. § 752.403—to ensure "that absent a *Bivens* remedy," there are methods of "deterrence to prevent officers from violating the Constitution." *Abbasi*, 137 S. Ct. at 1863. That Congress and the Executive have already created multiple, overlapping safeguards "sufficient

---

[3] Available at https://www.grassley.senate.gov/imo/media/doc/senators_to_justice_dept.misconductwithinthebureauofprisons.pdf; *see also infra* n. 13.

to secure an adequate level of deterrence" for BOP personnel engaged in alleged unconstitutional conduct counsels against "second-guess[ing] that calibration by superimposing a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1807.

### 3.    Additional Concerns Provide Reasons to Hesitate.

There are also several "economic and governmental concerns" as well as practical considerations that counsel against a novel damages remedy for the class of cases that would be implicated by Sargeant's claims here. *Abbasi*, 137 S. Ct. at 1856. The latter are especially acute in the prison context, where "the problems that arise daily "are not susceptible of easy solutions," *Bell*, 441 U.S. at 547, and "prison officials must be permitted to take reasonable steps" in response to housing assignments. *Jones v. N.C. Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 132 (1977).  As the Supreme Court recognizes, prison staff "and inmates co-exist in direct and intimate contact. Tension between them is unremitting.  Frustration, resentment, and despair are commonplace."  *Wolff v. McDonnell*, 418 U.S. 539, 562 (1974).  There is an "ever-present potential for violent confrontation and conflagration." *Jones*, 433 U.S. at 132. Imposing personal damages liability on officers engaged in the difficult but essential task of maintaining order and safety in a high-security prison could chill those officers in performing their duties.  *See Egbert*, 142 S. Ct. at 1807 ("Federal employees faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties." (quotation and alterations omitted)).  Even just the "potential for such consequences" counsels hesitation.  *Id*. at 1805.

21

A separate, but related, concern is the potential that a new damages remedy against prison staff arising from housing assignments could "invite an onslaught" of costly *Bivens* actions. *Wilkie v. Robbins*, 551 U.S. 537, 562 (2007); *see Egbert*, 142 S. Ct. at 1808 (recognizing claims which "are common," and thus "more likely to impose a significant expansion of Government liability, counsels against permitting *Bivens* relief." (quotations omitted)). The sheer volume of that potential class of litigation underscores why, in this context, Congress is best suited "to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1858; *see Bistrian*, 912 F.3d at 95 (declining *Bivens* extension to punitive detention claims because doing so "would likely cause an increase of suits by inmates, increased litigation costs to the government, and burdens on individual prison employees to defend such claims." (quotations and alterations omitted)).

Compounding the notion that "a general *Bivens* cure would be worse than the disease" is the "serious difficulty of devising a workable cause of action," *Wilkie*, 551 U.S. at 561-62, for the category of claims alleged. "In the small number of contexts in which courts have implied a *Bivens* remedy, it has often been easy to identify both the line between constitutional and unconstitutional conduct, and the alternative course which officers should have pursued." *Arar*, 585 F.3d at 580. Not so here. Just as questions regarding the multitude of housing assignments are not amenable to "easy solutions," *Bell*, 441 U.S. at 547, neither do legal claims challenging those decisions turn on clear guidelines. Such claims are inherently fact and context specific; they "are not to be evaluated in a vacuum." *Markovic v. Milwaukee Secure Det. Facility*, No. 19 C 675, 2019 WL 6729198, at *3 (E.D. Wis. December 11, 2019).

Housing assignments, for example, usually hinge on a variety of concerns unique to each case, including, but not limited to, the inmate's immediate conduct, any threat reasonably perceived by staff, and an assessment of the inmate's pattern of behavior over a sufficient duration. These questions invariably present "line-drawing difficulties" not readily susceptible to clear categorical rules. *Wilkie*, 551 U.S. at 557; *cf. Vanderklok v. United States*, 868 F.3d 189, 209 (3rd Cir. 2017) (considering "the inherent uncertainty surrounding the probable cause standard [was] itself a factor counseling hesitation.").

Though framing the issue as failure to protect, in reality Sargeant asks this court to determine the overly broad question of whether an inmates' housing assignment can be challenged as an Eighth Amendment violation under *Bivens*. R. 19, p. 1. However, the "range" of special factors to be considered is "broad" and many of the concerns counseling hesitation here may apply to similar Eighth Amendment claims. *Idaho v. Couer d'Alene Tribe of Idaho*, 521 U.S. 261, 280 (1997); *see Egbert*, 142 S. Ct. at 1806 (remarking on "pitfalls of applying the special-factors analysis at too granular a level."). At the same time, the Supreme Court has long recognized as "an established part of our constitutional jurisprudence that [courts] do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 184 (1999). Applying these principles here, the relevant question need not be framed as whether all Eighth Amendment claims with any allegations of a claim can proceed under *Bivens*. Rather, this court should consider whether "judicial intrusion" into the "given field" at issue

"might be harmful or inappropriate." *Egbert*, 142 S. Ct. at 1805 (quotations omitted).

That given field involves efforts by BOP staff to maintain safety, security, and order.

This is not a case of deadly force, or other conduct that might prevent an inmate from

accessing administrative remedies or other avenues of relief in addition to damages.

*Cf. Carlson*, 446 U.S. at 16 n.1.  No matter how framed, there is at least "any rational

reason"—indeed, there are several—"to think that Congress is better suited to 'weigh

the costs and benefits of allowing a damages remedy to proceed.'" *Egbert*, 142 S. Ct.

at 1805 (original emphasis).

## Conclusion

For the above reasons, this court should affirm the judgment of the district

court.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

 s/ Lisa R. Munch
LISA R. MUNCH
Assistant United States Attorney
327 S. Church Street
Suite 3300
Rockford, Illinois 61101
(815) 987-4281
lisa.munch@usdoj.gov

**Certificate of Service**

I hereby certify that on November 23, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

s/ Lisa R. Munch
LISA R. MUNCH
Assistant United States Attorney
327 S. Church Street
Suite 3300
Rockford, Illinois 61101
(815) 987-4281
lisa.munch@usdoj.gov