# In the United States Court of Appeals for the Seventh Circuit

---

ROY SARGEANT (Federal Prisoner No. #11709-171),

*Plaintiff-Appellant,*

v.

ARACELIE BARFIELD,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Illinois
No. 3:19-cv-50187 (Hon. Iain D. Johnston)

---

## REPLY BRIEF OF PLAINTIFF-APPELLANT

---

Andrew R. Hirschel
Jacob P. Saracino
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000

Andrew T. Tutt
R. Stanton Jones
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

*Counsel for Roy Sargeant*

December 28, 2022

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

REPLY ........................................................................................................................ 1

ARGUMENT .............................................................................................................. 6

A.  Mr. Sargeant's Eighth Amendment Claim Was Either Dismissed or Construed Away At the Screening Stage and Thus Was Not Waived ............................... 6

B.  Mr. Sargeant's Complaint States a *Carlson* Claim ......................................... 7

    1.  As a Matter of First Principles, Mr. Sargeant's Claim Arises in the *Carlson* Context ................................................................................. 8

    2.  Supreme Court Precedent Confirms that Mr. Sargeant's Claim Arises in the *Carlson* Context ..................................................................... 11

    3.  This Court's Precedent Further Establishes that Mr. Sargeant's Claim Arises in the *Carlson* Context ...................................................... 14

    4.  Persuasive Precedent from Other Circuits Removes Any Doubt that Mr. Sargeant's Claim Arises in the *Carlson* Context ....................................... 17

C.  Even if This Court Finds that Mr. Sargeant's Claim Arises in a New Context, this Case Warrants a Modest Extension of the *Bivens* Remedy ................................... 19

CONCLUSION ......................................................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................................... 23

CERTIFICATE OF FILING AND SERVICE ..................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Legion v. American Humanist Association,*
139 S. Ct. 2067 (2019)................................................................................................16, 17

*Bagola v. Kindt,*
131 F.3d 632 (7th Cir. 1997) ................................................................................14, 15, 16

*Bistrian v. Levi,*
912 F.3d 79 (3d Cir. 2018) ................................................................3, 8, 12, 17, 18, 19, 21

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
403 U.S. 388 (1971)................1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 22

*Bosse v. Oklahoma,*
137 S. Ct. 1 (2016) ......................................................................................................14

*Caldwell v. Warden, FCI Talladega,*
748 F.3d 1090 (11th Cir. 2014) .......................................................................................18

*Carlson v. Green,*
446 U.S. 14 (1980).................1, 2, 3, 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21

*Censke v. United States,*
947 F.3d 488 (7th Cir. 2020) ..........................................................................................13

*Cesal v. Moats,*
851 F.3d 714 (7th Cir. 2017) .............................................................................................6

*Corr. Servs. Corp. v. Malesko,*
534 U.S. 61 (2001).................................................................................2, 7, 8, 12, 13, 15

*Dale v. Poston,*
548 F.3d 563 (7th Cir. 2008) ..................................................................2, 4, 5, 14, 15, 16, 18

*Edwards v. Vannoy,*
141 S. Ct. 1547 (2021)..................................................................................................20

*Egbert v. Boule,*
142 S. Ct. 1793 (2022).........................................1, 3, 5, 8, 9, 12, 13, 14, 16, 17, 19, 20, 21, 22

*Farmer v. Brennan,*
511 U.S. 825 (1994)....................................................2, 7, 10, 11, 12, 13, 14, 16, 18, 19, 20

*Gillespie v. Civiletti,*
629 F.2d 637 (9th Cir. 1980) ........................................................1, 18

*Gonzalez v. Hasty,*
269 F. Supp. 3d 45 (E.D.N.Y 2017) ........................................................10

*Gonzalez v. Hasty,*
755 F. App'x 67 (2d Cir. 2018) ........................................................10

*Greene v. United States of America, et al.,*
No. 21-5398, 2022 WL 13638916 (6th Cir. Sept. 13, 2022) ........................................................10

*Hernández v. Mesa,*
140 S. Ct. 735 (2020) ........................................3, 5, 8, 9, 12, 13, 14, 16, 17, 19

*Herron v. Meyer,*
820 F.3d 860 (7th Cir. 2016) ........................................2, 5, 8, 14, 15, 16

*Hicks v. Ferreyra,*
965 F.3d 302 (4th Cir. 2020) ........................................................1

*Hoffman v. Preston,*
26 F.4th 1059 (9th Cir. 2022) ........................................................5, 20, 21

*Hoffman v. Preston,*
No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022) ........................................................21

*Jacobs v. Alam,*
915 F.3d 1028 (6th Cir. 2019) ........................................................16

*Kurowski v. Krajewski,*
848 F.2d 767 (7th Cir. 1988) ........................................................6

*Marcure v. Lynn,*
992 F.3d 625 (7th Cir. 2021) ........................................................7

*McCarthy v. Madigan,*
503 U.S. 140 (1992) ........................................................2, 12

*Minneci v. Pollard,*
565 U.S. 118 (2012) ........................................................12

*Owens v. Baldwin,*
822 F. App'x 490 (7th Cir. 2020) ........................................................6

*Pasquanito v. United States,*
544 U.S. 349 (2005) ........................................................17

*Penobscot Indian Nation v. Key Bank of Me.*,
 112 F.3d 538 (1st Cir. 1997) ...................................................4, 7

*Price v. City of Chicago*,
 915 F.3d 1107 (7th Cir. 2020) .......................................................14

*Schwarz v. Meinberg*,
 761 F. App'x 732 (9th Cir. 2019) ..................................................10

*Schweiker v. Chilicky*,
 487 U.S. 412 (1988) ..................................................................13, 15

*Smith v. United States*,
 561 F.3d 1090 (10th Cir. 2009) .....................................................18

*U.S. v. Kendrick*,
 647 F.3d 732 (7th Cir. 2011) .........................................................17

*United States v. Bonner*,
 522 F.3d 804 (7th Cir. 2008) .........................................................17

*United States v. Carolene Prods. Co.*,
 304 U.S. 144 (1938) ......................................................................20

*United States v. Thayer*,
 40 F.4th 797 (7th Cir. 2022) ...........................................................3

*United States v. Wolfe*,
 701 F.3d 1206 (7th Cir. 2012) .......................................................17

*Walker v. Abbott Lab'ys*,
 340 F.3d 471 (7th Cir. 2003) ......................................................4, 7

*Washington Alliance of Tech Workers v. U.S. Dep't of Homeland Sec.*,
 892 F.3d 332 (D.C. Cir. 2018) .........................................................7

*Wilson v. Cook County*,
 937 F.3d 1028 (7th Cir. 2019) .......................................................16

*Wilson v. Seiter*,
 501 U.S. 294 (1991) ..........................................................10, 11, 19

*Woodring v. Jackson County, Indiana*,
 986 F.3d 979 (7th Cir. 2021) ....................................................16, 17

*Ziglar v. Abbasi*,
 137 S. Ct. 1843 (2017)................1, 3, 5, 8, 9, 10, 11, 12, 13, 14, 16, 17, 18, 19, 20

**Statutes**

28 U.S.C. § 1915A ...................................................................................4, 6

28 U.S.C. § 2679(b)(2)(A) ...........................................................................21

34 U.S.C. § 30302 .........................................................................................21

42 U.S.C. § 1983 ...........................................................................................21

**REPLY**

The Supreme Court has instructed that *Bivens* actions are available in those "contexts" in which *Bivens* claims have previously been recognized. This case is fundamentally about whether Mr. Sargeant's claim presents a "a new *Bivens* context—i.e., is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022) (cleaned up) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017)). Ms. Barfield does not disagree: if this case arises in an existing *Bivens* context—that is, if this case presents a straightforward failure-to-protect claim under *Carlson v. Green*, 446 U.S. 14 (1980)—Ms. Barfield does not dispute that Mr. Sargeant's complaint states a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and should not have been dismissed.

First principles and overwhelming precedent dictate a finding that this case presents an existing "*Bivens* context." This case checks every box for a *Carlson* claim. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (listing relevant considerations). Same constitutional right as *Carlson*? Check. Same rank of officers involved as *Carlson*? Check. Same specificity of wrongful conduct as *Carlson*? Check. Same level of judicial guidance about the contours of the right as *Carlson*? Check. Same legal mandate to protect prisoners from serious harm as *Carlson*? Check. *See* Br. 18-20; *see also Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). "[A]long every dimension the Supreme Court has identified as relevant to the inquiry, this case appears to represent not an extension" of *Carlson* "so much as a replay." *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020).

The Supreme Court's *Farmer* and *Malesko* cases cement that conclusion. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73 (2001). If *Farmer* was an extension—rather than an application—of *Carlson*, one imagines at least *one* of the justices in the case would have mentioned it. That the (unanimous) Court addressed the Eighth Amendment failure-to-protect claim in *Farmer* without remarking that failure-to-protect claims constitute frowned-upon extensions of *Carlson* is powerful evidence that failure-to-protect claims are simply *Carlson* claims. *Cf. Farmer*, 511 U.S. at 860–61 (Thomas, J., concurring in the judgment) (disagreeing with the Court's predicate that the Eighth Amendment applies to conditions-of-confinement claims). Indeed, in *Malesko*, the Court pointed to *Farmer* as establishing the appropriate "'deliberate indifference' standard of Eighth Amendment liability" for a complaint "raising a *Bivens* claim." 534 U.S. at 73. In fact, in *Malesko*, every Justice recognized that *Farmer* reflected an established *Bivens* claim. *See id.* at 76 (Stevens, J., dissenting) ("We have never … qualified our holding that Eighth Amendment violations are actionable under *Bivens*.") (citing *Farmer v. Brennan*, 511 U.S. 825 (1994); *McCarthy v. Madigan*, 503 U.S. 140 (1992)).

This Court's precedent aligns with that interpretation. The Supreme Court instructed lower courts not to extend *Bivens* to "new context[s]" more than two decades ago in *Malesko*, explaining that "[s]ince *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants." 534 U.S. 61, 68 (2001); *see also id.* at 70. Notwithstanding *Malesko*'s instructions not to extend *Bivens* to new contexts, this Court had no difficulty concluding in *Herron v. Meyer*, 820 F.3d 860, 862 (7th Cir. 2016) and *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) that the nonmedical

prisoner failure-to-protect claims in those cases were cognizable *Bivens* claims. The reason is simple: they both arose in the *existing* context of *Carlson*. Certainly there is no basis to regard those precedents—precedents that *bind the panel*—as having been overruled or undermined by implication in *Abassi*, *Hernández v. Mesa*, 140 S. Ct. 735 (2020), or *Egbert*. Especially given that none of those cases remotely addressed the scope of the *Carlson* context.

Finally, this Court must account for the Third Circuit's square holding in *Bistrian v. Levi*, 912 F.3d 79, 88–94 (3d Cir. 2018)—issued after the Supreme Court decided *Abbasi*—that prisoner failure-to-protect claims just like this one are straightforward *Carlson* claims. Nothing has changed since *Abbasi*. *See Egbert*, 142 S. Ct. at 1809 (explaining *Abbasi* provides "the 'analytic framework'" for analyzing *Bivens* claims). Neither *Hernández* nor *Egbert*—both of which involved the distinct "border-security context," *Egbert*, 142 S. Ct. at 1804 (citing and quoting *Hernández*, 140 S. Ct. at 747)—undermine *Bistrian*'s conclusion. Ms. Barfield ignores the fact that ruling against Mr. Sargeant here would open "a direct circuit split" with the Third Circuit, something this Court typically hesitates to do. *United States v. Thayer*, 40 F.4th 797, 807 (7th Cir. 2022).

Unable to get around the Supreme Court's "new context" framework, the Supreme Court's precedents, this Court's precedents, or the necessary circuit split with *Bistrian*, Ms. Barfield shifts gears, arguing that Mr. Sargeant's *Carlson* claim was waived. Ans. Br. 3. In the alternative, Ms. Barfield argues that the Court should decline to "extend" *Carlson* to the "new context," his claim presents. *Id.* at 8. Those arguments fail.

As an initial matter, Ms. Barfield's waiver argument misses the mark. Whether the district court dismissed Mr. Sargeant's Eighth Amendment claim or construed his complaint not to contain the claim at § 1915A screening, *see* Br. A9–A13 (screening order), that decision was an interlocutory order that was not immediately appealable because one of Mr. Sargeant's claims survived. Instead, the later dismissal of Mr. Sargeant's sole remaining claim gave Mr. Sargeant his first practical opportunity to appeal the screening error. Mr. Sargeant had no obligation to move for reconsideration of the § 1915A screening order to preserve his Eighth Amendment claim for this Court's review. *See Walker v. Abbott Lab'ys*, 340 F.3d 471, 475 (7th Cir. 2003) ("There is simply no rule or case law that requires litigants to move for reconsideration of an interlocutory ruling in order to avoid waiving a challenge to that ruling on appeal of a final decision."); *see also Penobscot Indian Nation v. Key Bank of Me.*, 112 F.3d 538, 563 (1st Cir. 1997) (similar).

Ms. Barfield's remaining argument, that the Court should decline to "extend" *Carlson* here, founders because *Carlson already encompasses* Mr. Sargeant's claim. No extension is necessary: this species of *Bivens* claim has been around for over forty years. Ms. Barfield does not offer any countervailing analysis other than a flat assertion that Mr. Sargeant's case is distinct from *Carlson* because it does not involve medical care and Mr. Sargeant did not die. Ans. Br. 9–10. Those are distinctions between *Carlson* and this case, but they are not *meaningful* distinctions. It was clear long before *Carlson*, and has been clear since, that a prison guard's decision to subject a prisoner to violence by other prisoners is just as deadly as withholding critical lifesaving medical care. This case presents no more of a new context than corrections officers standing by during an inmate's assault, as in *Dale*,

548 F.3d at 569, or deliberately transferring a prisoner to a cell that a guard knew was likely to cause the prisoner injury, as in *Herron*, 820 F.3d at 861–62.

The rest (and majority) of Ms. Barfield's brief chases a ghost—devoted to explaining why extending *Bivens* to new contexts is generally inadvisable and contrary to the Supreme Court's recent guidance in *Abbasi*, *Hernández*, and *Egbert*. Ans. Br. 15–24. Ms. Barfield also tries to build a fortress out of the Ninth Circuit's recent decision to reverse itself in *Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022) and hold that no extension of *Bivens* was warranted in that case. But Ms. Barfield overlooks key features of Mr. Sargeant's case that would qualify it as a rare example warranting an infinitesimal *Bivens* extension. *First*, that if it is an extension *at all* it would constitute the nearest miss imaginable. *Second*, that the nature of the claim here warrants a *Bivens* remedy for the same reason the remedy was warranted in *Carlson* and *Bivens*—it provides deterrence against and a remedy for specific, direct, otherwise irremediable harm by otherwise unaccountable federal agents. *Third*, that the democracy deficit prisoners face places them in a special category of individuals whose constitutional rights warrant special protection from the courts.

Fundamentally, however, Mr. Sargeant need only show that his claim arises in the same context as *Carlson*. As first principles, Supreme Court precedent, this Court's precedent, and persuasive precedent from the Third Circuit all show, it does. The Court should reverse.

## ARGUMENT

### A. Mr. Sargeant's Eighth Amendment Claim Was Either Dismissed or Construed Away At the Screening Stage and Thus Was Not Waived.

Mr. Sargeant's Eighth Amendment claim was not waived. In carrying out its screening function under 28 U.S.C. § 1915A, the district court either dismissed or construed away Mr. Sargeant's Eighth Amendment claim, at which point only a First Amendment retaliation claim was allowed to proceed. *See* Br. 3, 3 n.1. The district court appointed counsel to argue against dismissal of that claim. Br. A6–A8. Counsel was unsuccessful and the sole remaining claim was dismissed, giving rise to the final judgment from which Mr. Sargeant appeals.

Mr. Sargeant's Eighth Amendment claim is therefore fully preserved: this appeal is Mr. Sargeant's first opportunity since filing his complaint to defend his Eighth Amendment claim. Dismissals pursuant to § 1915A are quintessentially interlocutory when they do not dismiss all claims. *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (reviewing prisoner's argument that district court improperly "pared down his *pro se* complaint to two counts" at screening stage, including by recognizing First Amendment claim but not Eighth Amendment claim, after court granted summary judgment on surviving counts); *see also Owens v. Baldwin*, 822 F. App'x 490, 492 (7th Cir. 2020) (same). Because one of Mr. Sargeant's claims survived screening, the screening dismissal of his Eighth Amendment claim was not a final judgment, and Mr. Sargeant was free to appeal it "at the end of the case." *Kurowski v. Krajewski*, 848 F.2d 767, 772 (7th Cir. 1988) (holding that "only final judgments need be appealed" and explaining that "interlocutory decisions, even those producing interlocutory 'judgments'" may be "stored up and raised at the end of the case").

Mr. Sargeant was not required to take any action in the district court to preserve his Eighth Amendment claim for appeal. *See Walker*, 340 F.3d at 475; *Penobscot Indian Nation*, 112 F.3d at 563.

Ms. Barfield's contrary suggestion, that Mr. Sargeant should have opposed Ms. Barfield's "motion to dismiss the case on grounds that *Bivens* did not encompass First Amendment retaliation claims," by moving the goalposts and arguing that the case in fact involved an Eighth Amendment claim, Ans. Br. 4, makes no sense. Especially when the district court appointed counsel specifically to argue the First Amendment claim. Br. A6–A7. Mr. Sargeant can hardly be faulted for not seeking to relitigate an issue the district court had already conclusively decided against him. In any event, as Ms. Barfield concedes, courts of appeal have discretion to permit litigants to raise new issues for the first time on appeal. Ans. Br. 5. This would be a paradigm case for the exercise of that discretion. This Court and other courts have held that a complaint that states a claim cannot be dismissed merely on the basis of non-opposition. *See, e.g.*, *Marcure v. Lynn*, 992 F.3d 625, 630–31 (7th Cir. 2021); *Washington Alliance of Tech Workers*, 892 F.3d 332, 345 (D.C. Cir. 2018) (similar).

## B. Mr. Sargeant's Complaint States a *Carlson* Claim.

Ms. Barfield does not dispute that if this case arises in the same "*Bivens* context" as *Carlson*, Mr. Sargeant stated an Eighth Amendment claim. It clearly does. *First*, straightforward application of the test for whether a context is "meaningfully different" from an existing context shows this case arises in the same context as *Carlson*. *Second*, the Supreme Court's cases, including *Farmer*, *Malesko*, and *Carlson* itself, show that indeed

the Court would consider Mr. Sargeant's claims to arise in the *Carlson* context. *Third*, this Court's previous *Carlson* cases, especially *Herron*, which post-date the "new context" analysis announced in *Malesko*, are indistinguishable from this case, and *Abbasi*, *Hernández*, and *Egbert* did not undermine them. *Fourth*, ruling that this case presents a new *Bivens* context would open a direct conflict with *Bistrian*, which this Court should hesitate to do—both because *Bistrian* is persuasive and because this Court typically seeks to avoid opening unnecessary circuit conflicts.

When the Supreme Court said three times—in *Abbasi*, *Hernández*, and *Egbert*— that claims in existing *Bivens* contexts may still be brought, it meant exactly that. It would not have retained claims in existing contexts unless those claims are preserved. At bottom, unless the Court determines that the Supreme Court's extreme caution in *extending* the *Bivens* remedy somehow substitutes for careful legal analysis of the test the Court has set forth for existing contexts, and the decades of precedent the Supreme Court and this Court have built up defining the parameters of those contexts, Mr. Sargeant's complaint should not have been dismissed.

### 1. As a Matter of First Principles, Mr. Sargeant's Claim Arises in the *Carlson* Context.

In *Abbasi*, the Supreme Court emphasized that for a new context to be found, the case must be "different in a *meaningful* way from previous *Bivens* cases decided by [the Supreme Court]." 137 S.Ct. at 1859 (emphasis added). The Supreme Court set forth a non-exhaustive list of factors that favored a finding of a new context for the petitioners' claims, *id*. at 1859–60, and Mr. Sargeant explained in his opening brief why not one of those factors applies here. Br. 18–20. Consequently, Mr. Sargeant's claim arises in the same context as

*Carlson*, stating a viable Eighth Amendment claim against a prison official who exhibited deliberate indifference to a significant risk that Mr. Sargeant would suffer grievous harm.

The Supreme Court's application of the *Abbasi* factors in the follow-on cases, *Hernández* and *Egbert*, confirms the correctness of Mr. Sargeant's analysis. In *Hernández*, the Supreme Court considered a Fourth Amendment claim brought by parents of a Mexican national who was shot by a United States Border Patrol officer while standing on the Mexican side of the border. 140 S.Ct. at 739. The Supreme Court found a new context because "petitioners' cross-border shooting claims," unlike the three previously-recognized *Bivens* contexts, created a significant risk "of disruptive intrusion by the judiciary into the functioning of other branches." *Id.* at 744. It reasoned that the cross-border nature of the claim had a "potential effect on foreign relations," was "by definition an international incident," and involved "the conduct of agents at the border [that] unquestionably has national security implications," including "the risk of undermining border security." *Id.* at 746–47. In *Egbert v. Boule*, the Court held that the fact that the defendant-petitioner was a Border Patrol officer was dispositive because it raised the same issues of national security. 142 S.Ct. at 1806 ("As in *Hernández*, then, we ask here whether a court is competent to authorize a damages action not just against [petitioner] but against Border Patrol agents generally. The answer, plainly, is no.").

In response to this analysis, Ms. Barfield offers just one clear argument for why this case arises in a new context, asserting that *Carlson* claims are limited to "medical" claims with a "severe and lethal" outcome. Ans. Br. 11–13. In support of her argument that Mr. Sargeant's claim presents a new context, Ms. Barfield offers only a handful of district court

opinions from outside this Circuit and unpublished orders by the Sixth and Ninth Circuits

that declare, without analysis, that nonmedical needs claims present new *Bivens* contexts.

*Id.* at 10–13 (citing, *inter alia*, *Greene v. United States of America, et al.*, No. 21-5398, 2022

WL 13638916 (6th Cir. Sept. 13, 2022) and *Schwarz v. Meinberg*, 761 F. App'x 732, 733 (9th

Cir. 2019)).[1] But no legal analysis supports Ms. Barfield's argument. The Supreme Court

has never said that *Carlson* claims are limited to *medical* claims, and this Court's cases

*certainly* have not read *Carlson* as so limited. Ms. Barfield also does not address the nine

district court cases identified in Mr. Sargeant's opening brief—all decided *after Abassi*—

that found that failure-to-protect claims are actionable under *Carlson* and *Farmer*. Br. 21

n.4.

　　The Supreme Court has never so much as suggested, as Ms. Barfield now contends,

that a prison official's deliberate indifference to the risk that an inmate will be physically

attacked by fellow inmates is "meaningful[ly]" different from deliberate indifference to an

inmate's medical needs. In fact, the Supreme Court has said precisely the opposite: "we

see no significant distinction between claims alleging inadequate medical care and those

alleging 'conditions of confinement.'" *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). As the

---

[1]　　Ms. Barfield also cites *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 63-66 (E.D.N.Y 2017),
which rejected an inmate's Eighth Amendment claims based on the denial of dental hygiene
products and provision of laceless shoes, because "the deprivations, if one can even call them
that" were "vastly less serious" than the facts of *Carlson*. *Id.* at 64. The court declared that
the plaintiff's claims were "not objectively serious enough to raise an Eighth Amendment
violation." *Id.* at 65. The Second Circuit affirmed the district court's grant of summary
judgment, not because the *Carlson* context is restricted to medical needs cases, as Ms.
Barfield implies, but because the plaintiff failed to furnish evidence that prison officials
acted with "deliberate indifference to [his] health or safety." 755 F. App'x 67, 71-72 (2d Cir.
2018) (quotation omitted). Because Mr. Sargeant alleges conduct at least as serious as the
conduct at issue in *Carlson*, *Gonzalez* is inapposite.

Court explained, "the medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and *the protection he is afforded against other inmates.*" *Id.* (emphasis added). Under the Supreme Court's test for new contexts, any differences between Mr. Sargeant's claim and *Carlson* are "so trivial that they [do] not suffice to create a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1865. As such, Mr. Sargeant's claim arises squarely in a familiar context.

### 2. Supreme Court Precedent Confirms that Mr. Sargeant's Claim Arises in the *Carlson* Context.

The Supreme Court's treatment of Eighth Amendment *Bivens* claims confirms that this case arises in a familiar context. Starting with *Carlson*, the Supreme Court has never required a *Carlson* claim to involve deliberate indifference to medical needs. The face of the *Carlson* opinion itself suggests that the Court had no intention of limiting its import to medical-needs cases: the opinion refers only to "a violation of the Eighth Amendment's proscription against cruel and unusual punishment," 446 U.S. at 17, confining the medical-needs details to a footnote, *see id.* at 16 n.1. Fourteen years after *Carlson*, in *Farmer*, the Supreme Court clarified that the Eighth Amendment claim identified in *Carlson* extends to prison officials' failure to protect an inmate from known risks of substantial harm ("failure to protect" claims). 511 U.S. 825 (1994). There, the Supreme Court considered a federal prisoner's allegations that prison officials displayed deliberate indifference to the prisoner's safety by failing to protect the prisoner from a brutal attack by other inmates. *Id.* at 830. The Supreme Court vacated a grant of summary judgment for the prison officials, delineated the proper (and current) test for deliberate indifference, and remanded

the case for further proceedings. *Id.* at 851. The allegations in *Farmer* are on all fours with

the allegations here: Mr. Sargeant charges that Ms. Barfield knew of the risks that

historically violent cellmates would attack Mr. Sargeant, and that Ms. Barfield deliberately

ignored them. If this Court recognizes that *Farmer* delineated the scope of the *Carlson*

context, then Ms. Barfield's only argument that Mr. Sargeant's claim arises in a new

context—because it does not involve his "medical needs"—fails.

Ms. Barfield argues that this Court should ignore *Farmer* because the Supreme

Court did not explicitly reference it in *Abbasi*, *Hernández*, or *Egbert*, and because "the

*Farmer* Court did not explicitly state that it was recognizing a *Bivens* claim." Ans. Br. 11.[2]

But the Supreme Court has repeatedly ratified *Farmer*'s application in the *Bivens* context.

*See Minneci v. Pollard*, 565 U.S. 118, 130 (2012) (citing *Farmer* as establishing what "a

prisoner must typically show" when pursing "*Bivens* actions" under the Eighth

Amendment); *Malesko*, 534 U.S. at 73 (identifying *Farmer* as establishing the appropriate

"'deliberate indifference' standard of Eighth Amendment liability" for a complaint "raising

a *Bivens* claim" ); *see also id.* at 76 (Stevens, J., dissenting) ("We have never … qualified

our holding that Eighth Amendment violations are actionable under *Bivens*." (citing

*Farmer*, 511 U.S. at 825; *McCarthy v. Madigan*, 503 U.S. 140 (1992)). Thus, *Abbasi*,

---

[2]    Ms. Barfield includes a string-cite of cases for the proposition that *Farmer* is not
precedent for the scope of *Carlson* because *Farmer* was not explicitly a case about the scope
of the *Bivens* remedy. Ans. Br. 12. But that is beside the point. No one is arguing that
*Farmer* was explicitly about the scope of *Bivens*. Rather, the argument is that *Farmer* is
strong evidence of the scope of *Carlson* and what it means for claims to arise in a "*Bivens*
context." That *Farmer* involved an Eighth Amendment *Bivens* claim resulting from a
prison official's failure "to protect prisoners from violence at the hands of other prisoners,"
and *not one* Justice on the unanimous Court even mentioned that it presented a new *Bivens*
context, is strong evidence that it did not. *See Bistrian*, 912 F.3d at 90-91.

*Hernández*, and *Egbert*'s silence on *Farmer* signals the exact opposite of Ms. Barfield's interpretation—*Farmer* remains undisturbed. *See Censke v. United States*, 947 F.3d 488, 492 (7th Cir. 2020) ("[T]he Court has explained that it does not overrule itself silently."). Moreover, the "recent cases" omitted *Farmer* from their lists of cases in which *Bivens* was *expanded* to *new* contexts, *see Hernández*, 140 S. Ct. at 741; *Farmer* merely applied *Carlson*. Because the claims in *Carlson*, *Farmer*, and in this case all involve a prison official who "knows of and disregards an excessive risk to inmate health or safety," *Farmer*, 511 U.S. at 837, *Carlson* and *Farmer* control here and mandate a finding for Mr. Sargeant.

As a last gasp, Ms. Barfield appears to argue that the Supreme Court's recent decisions in *Abbasi*, *Hernández*, and *Egbert* should be read to indicate that lower courts should construe existing *Bivens* contexts as narrowly as possible. *See* Ans. Br. 12 (arguing "[c]ourts should not be assuming lack of direction in the wake of the Supreme Court's clear pronouncement in *Abbasi* that *Bivens* actions are disfavored."). But actions in existing contexts are not disfavored; *Abbasi* stated only that "*expanding* the *Bivens* remedy is … disfavored." *Abbasi*, 137 S. Ct. at 1857 (emphasis added). Moreover, expanding the *Bivens* remedy has been disfavored for decades. *See Abbasi*, 137 S. Ct. at 1857 (quoting *Malesko*, 534 U.S. at 68) (noting that the Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants,'"); *see also Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) ("Our more recent decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts.").

At no point in *Abbasi*, *Hernández*, or *Egbert* did the Supreme Court indicate that *Carlson* and *Farmer* should be narrowly construed. On the contrary, the Supreme Court's

recent cases *embraced* the viability of claims arising in familiar contexts by continuing to honor a "two-step inquiry." *Hernández*, 140 S. Ct. 735. "We regard a context as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by this Court.'" *Id.* (quoting *Abbasi*, 137 S. Ct. at 1859). Even if this Court were to determine that *Abbasi*, *Hernández*, or *Egbert* has "deeply unsettled" *Carlson* and *Farmer* (they have not), *Carlson* and *Farmer* "remain binding" until they have been explicitly overruled by the Supreme Court. *Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2020); *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam) ("[Supreme Court] decisions remain binding precedent … regardless of whether subsequent cases have raised doubts about their continuing vitality."). As *Carlson* and *Farmer* have not been explicitly overruled, under binding precedent, Mr. Sargeant's claim should not have been dismissed.

> **3.    This Court's Precedent Further Establishes that Mr. Sargeant's Claim Arises in the *Carlson* Context.**

This Court, too, has recognized that claims of deliberate indifference like Mr. Sargeant's are cognizable under *Carlson* for at least twenty-five years. In *Bagola v. Kindt*, 131 F.3d 632, 633–34 (7th Cir. 1997), this Court recognized a federal inmate's right to sue under *Carlson* for prison factory officials' deliberate indifference to the inmate's safety while working with and near dangerous machinery. Eleven years later, in *Dale v. Poston*, the court recognized a federal inmate's right to a *Bivens* remedy under *Farmer* for prison officials' failure to protect him *from an attack by another inmate*. 548 F.3d 563, 564 (7th Cir. 2008). Recently, in *Herron v. Meyer*, a panel of this Court, in an opinion by Judge Easterbrook, held that a federal prisoner's Eighth Amendment *Bivens* claim was viable after a guard deliberately "transferr[ed] him to a cell that the guard knew was likely to

cause him injury," because the guard "disliked the fact that [the plaintiff] … had filed grievances and had refused to share a cell with an inmate who he thought endangered him." 820 F.3d 860, 861–62 (7th Cir. 2016). In holding that these allegations supported a *Bivens* remedy, Judge Easterbrook explained that a remedy was appropriate outside of the "medical-care principle" where a prison official seeking to discipline an inmate, but "knowing that a blow was out of the question, decided to achieve the same effect by moving [the prisoner] to a cell where he was likely to suffer an injury." *Id.* at 862–63. *Bagola, Dale,* and *Herron* remain good law in this Circuit and support recognition of Mr. Sargeant's Eighth Amendment claim that he, too, was deliberately moved "to a cell where he was likely to suffer an injury." *Herron,* 820 F.3d at 863.

*Herron* and *Dale* are especially significant because they were decided after *Malesko.* The Supreme Court has focused on whether *Bivens* claims arise in a new context for more than three decades. Just eight years after *Carlson,* in *Schweiker v. Chilicky,* the Supreme Court explained that its "decisions have responded cautiously to suggestions that *Bivens* remedies be extended into new contexts." 487 U.S. 412, 421 (1988). And in *Malesko,* the Supreme Court moved the "new context" to the forefront, explaining that "[s]ince *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants," 534 U.S. at 68, and that "[t]he caution toward extending *Bivens* remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an extension here," *id.* at 74. *Herron* and *Dale,* which recognized nonmedical Eighth Amendment *Bivens* claims, were decided after the Supreme Court made clear in *Malesko* that extending *Bivens* into new contexts is disfavored.

Ms. Barfield tries to brush off this Court's precedents by claiming that, after *Abbasi*, they are "not controlling." Ans. Br. 12–13 (citing *White v. Sloop*, 772 F. App'x 334, 335 (7th Cir. 2019)). Ms. Barfield makes no mention of *Herron* or *Bagola* and dismisses *Dale* solely "because it was decided before *Abbasi* and *Egbert*." *Id.* at 12. But the case on which Ms. Barfield relies, *White*, was an unpublished decision explaining that this Circuit's previous decisions extending *Bivens* to *First Amendment* claims—never recognized by the Supreme Court—were no longer controlling. *White*, 772 F. App'x at 335. *White* has no bearing on whether this Court's earlier decisions construing the scope of *Carlson* and *Farmer* still control after *Abbasi*, *Hernández*, and *Egbert*.

Here, they clearly control. Just as this Court must abide by the precedent of the Supreme Court unless it has been explicitly overturned, it must also "give considerable weight to [its] prior decisions unless and until they have been overruled or undermined by the decisions of a higher court." *Wilson v. Cook County*, 937 F.3d 1028, 1035 (7th Cir. 2019) ("We have stated repeatedly, and recently, that, absent a compelling reason, we will not overturn circuit precedent. (internal quotation marks and citations omitted)); *see also Jacobs v. Alam*, 915 F.3d 1028, 1036 (6th Cir. 2019) (unless existing "Sixth Circuit precedents [are] inconsistent with [*Abbasi*] and *Hernández*, we too must follow them.").

Ms. Barfield has offered this Court no reason, much less a compelling reason, to abandon its clear precedent on the scope of available *Carlson* claims. The "compelling reason" standard for avoiding prior Circuit precedent is high. For example, in *Woodring v. Jackson County, Indiana*, the Court found that the Supreme Court's rejection of the "*Lemon* Test" in the context of a war memorial in *American Legion v. American Humanist*

*Association*, 139 S. Ct. 2067 (2019), undermined the Seventh Circuit's reliance on *Lemon* in the nativity scene context only because six Supreme Court Justices had expressly and directly refuted the specific holding at issue.  986 F.3d 979, 993 (7th Cir. 2021).  In contrast, even strong arguments against Circuit precedent fail to justify departing from it.  *See, e.g., U.S. v. Kendrick*, 647 F.3d 732, 734 (7th Cir. 2011).

The Court's analysis in *United States v. Wolfe* is illustrative.  701 F.3d 1206 (7th Cir. 2012).  To prevail on his claim, the criminal defendant in *Wolfe* had to demonstrate that "this Circuit's well-established precedent that restitution is not a criminal penalty" had been overturned or undermined.  *Id.* at 1217.  The Court acknowledged that its position left it "in the minority" of circuit courts, and that "the trend is against us."  *Id.*  It also observed that the Supreme Court had "referred to restitution as a 'criminal punishment'" in *Pasquanito v. United States*, 544 U.S. 349, 365 (2005).  *Wolfe*, 701 F.3d at 1217.  Nevertheless, the Court held that "trends" were insufficient to "undermine" its well-established precedent.  *Id.* at 1218; *see also United States v. Bonner*, 522 F.3d 804, 807 (7th Cir. 2008) (similar).  *Abbasi, Hernández,* and *Egbert* have not undermined this Court's established precedent regarding the scope of deliberate indifference claims under *Carlson*. This Court should apply that precedent.

### 4. Persuasive Precedent from Other Circuits Removes Any Doubt that Mr. Sargeant's Claim Arises in the *Carlson* Context.

The "trend" in the circuits here favors Mr. Sargeant.  This Court's precedent is in accord with four other circuits that have squarely addressed the issue and found *Carlson* to extend to a prison official's deliberate indifference to a risk of substantial harm, well beyond those pertaining only to indifference to medical needs.  There is of course *Bistrian*,

which held that "an inmate's claim that prison officials violated his Fifth Amendment rights by failing to protect him against a known risk of substantial harms does not present a new *Bivens* context." 912 F.3d at 90. But the Ninth, Tenth, and Eleventh Circuits have also found that the *Carlson* context includes failure-to-protect claims. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099–1102 (11th Cir. 2014) (allowing a *Bivens* claim based on allegations that federal prison officials failed to protect an inmate from attack by another inmate to proceed past summary judgment); *Smith v. United States*, 561 F.3d 1090, 1104–06 (10th Cir. 2009) (holding that an inmate stated a claim under *Bivens* based on allegations that federal prison officials failed to protect the inmate from a known risk presented by exposure to asbestos during a work assignment); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[t]he Supreme Court's application of the guidelines [set forth in *Bivens*] to the circumstances in *Carlson* appears to be equally appropriate in the present case [involving a failure-to-protect].").

Among these opinions, *Bistrian* is the most notable because it was decided *after* the Supreme Court clarified the test for extensions of the *Bivens* remedy in *Abbasi*. Like *Dale*, *Bistrian* recognized a federal inmate's cause of action against prison officials who failed to protect him from other inmates who had discovered that he was cooperating with the officials. 912 F.3d at 84. In recognizing the plaintiff's claim, the Third Circuit did not "construe *Farmer* as a 'fourth' recognized *Bivens* claim … overlooked by the Supreme Court," as Ms. Barfield claims, *see* Ans. Br. 11, but reasoned that the Supreme Court "viewed the failure-to-protect claim as *not distinct* from the Eighth Amendment deliberate indifference claim in the medical context," *Bistrian*, 912 F.3d at 91 (emphasis added).

Thus, the *Bistrian* court concluded that it was "clear ... that the Supreme Court has, pursuant to *Bivens*, recognized a failure-to-protect claim under the Eighth Amendment." *Id.* The same is true here: Mr. Sargeant's claim is a *Carlson/Farmer* claim arising in a well-established *Bivens* context. Ms. Barfield does not dispute that Mr. Sargeant's complaint stated a claim if the Court agrees.

Ms. Barfield tries to avoid the clear import of *Bistrian* by arguing it is "a non-precedential pre-*Abbasi* and pre-*Egbert* outlier," Ans. Br. 14, and claiming that *Bistrian* incorrectly "construe[d] *Farmer* as a 'fourth' recognized *Bivens* claim, as if the Supreme Court just overlooked *Farmer* when it was explained in *Abbassi*, *Hernández*, and *Egbert* that it had inferred *Bivens* claims in *three* previous cases (not *four*)," *Id.* at 11. Ms. Barfield does not address the many decisions of the other circuits, in addition to *Bistrian*, that favor Mr. Sargeant's claim, even though they were cited in the opening brief. Br. 22. Ms. Barfield also incorrectly identifies *Bistrian* as a pre-*Abbasi* decision, ignoring the fact that the Third Circuit grappled with *Abbasi*'s mandate throughout the opinion. *See* 912 F.3d 79. And Ms. Barfield misconstrues *Bistrian*. *Bistrian* did not hold that *Farmer* was a fourth established *Bivens* context, but rather determined, after serious consideration, that *Farmer* was an application of *Carlson*. *Id.* at 90–91.

### C. Even if This Court Finds that Mr. Sargeant's Claim Arises in a New Context, this Case Warrants a Modest Extension of the *Bivens* Remedy.

For the reasons stated above, this case does not present a new context. But even if this Court finds that it does present a new context, the extension would be exceedingly narrow and entirely warranted, because there is no "significant distinction," *Wilson*, 501 U.S. at 303, between Mr. Sargeant's case and *Carlson*. Moreover, Mr. Sargeant's claim

offers a rare example where the courts, and not Congress, actually are better-suited to weigh the costs and benefits of allowing a damages suit to proceed. *See Egbert*, 142 S. Ct. at 1804. Because prisoners are politically powerless and deeply unpopular, Congress is unlikely to ever create an adequate remedy for Eighth Amendment violations for federal inmates like Mr. Sargeant. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938) (Democracy does not work for "discrete and insular minorities" who lack access to "those political processes ordinarily to be relied upon to protect" them). To the extent a narrow extension of *Carlson* or *Farmer* is necessary to reach the facts alleged here, such an extension would satisfy the narrow test articulated by the Supreme Court.

It bears emphasis that even the Supreme Court's recent decision in *Egbert* did *not* foreclose *Bivens* extensions. The Supreme Court knows how to foreclose a claim when it means to foreclose a claim and speaks clearly when it does so. *See Edwards v. Vannoy*, 141 S. Ct. 1547, 1560 (2021) (holding that there are no further watershed rules of criminal procedure). The Court has not done that. Even in *Egbert*, the Court has recognized that there will be appropriate cases for extensions of the *Bivens* remedy. *See* 142 S.Ct. at 1803. The Court has of course suggested that those cases will be rare, but those that do arise figure to be *exactly* like this one: involving "significant parallels to one of the Court's previous *Bivens* cases"—like *Carlson*—where "the allegations of injury" are "just as compelling as those at issue" in the earlier case. *Abbasi*, 137 S. Ct. at 1864 (remanding plaintiffs' Fifth Amendment claims against the Warden for these reasons).

Ms. Barfield flags that the Ninth Circuit recently withdrew its decision in *Hoffman v. Preston*, 26 F.4th 1059 (9th Cir. 2022), finding that the case did not warrant an extension

of *Bivens* in the wake of *Egbert*. Ans. Br. 14. But the Ninth Circuit's decision is now unpublished (nonprecedential) and provides almost no reasoning in support of its conclusion. *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022). The Ninth Circuit's new decision in *Hoffman* does not explain what specific analysis in its original opinion conflicts with *Egbert*. It is unclear what the Ninth Circuit believed made *Hoffman*'s claim unsuited for a modest extension of the *Bivens* remedy.

Finally, Ms. Barfield argues that a number of special factors would warrant this Court's hesitation before extending *Bivens* to Mr. Sargeant's claim. Ans. Br. 14–23. Ms. Barfield cites to the lack of a statute analogous to 42 U.S.C. § 1983 that would permit direct suit against federal actors, the passage of the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30302, and the Bureau of Prisons' administrative remedy programs. Ans. Br. 5–6. She further relies on the existence of the Federal Tort Claims Act (FTCA), and suggests that Mr. Sargeant seek equitable relief. *Id*. at 15–22. Ms. Barfield ignores that every single *Bivens* claim, including *Bivens* itself, arose after passage of § 1983 and exists in harmony with that statute. And she ignores that when passing the FTCA, Congress "made it crystal clear that [it] views FTCA and *Bivens* as parallel, complementary causes of action." *Carlson*, 466 U.S. at 19–20; *see also Bistrian*, 912 F.3d at 92. The statute's own language states that it is not the exclusive remedy for suits brought against individual federal officers for constitutional violations. 28 U.S.C. § 2679(b)(2)(A); *see also Bistrian*, 912 F.3d at 92. With respect to the existence of the PREA and BOP administrative procedures, administrative grievance processes do not (and cannot) supplant a *Bivens* remedy, especially where, as here, the conduct at issue was intended as retribution for a prisoner's

use of that very process. Further, Mr. Sargeant cannot seek equitable relief for the attacks he suffered, as they are past events, and Mr. Sargeant has since been transferred from Ms. Barfield's custody. Ms. Barfield's attempts to construe immaterial features as special factors in this case misses *Egbert*'s clear signal regarding the core purpose of the special factors analysis—to determine whether Congress or the courts are better suited to recognize a *Bivens* remedy in a particular context. *See Egbert*, 142 S. Ct. at 1804. In this rare case, for the reasons specified above, the answer is the courts.

## CONCLUSION

The judgment below should be reversed.

Dated: December 28, 2022

Respectfully submitted,

/s/ *Andrew Tutt*

Andrew R. Hirschel
Jacob P. Saracino
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000

Andrew T. Tutt
R. Stanton Jones
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
andrew.tutt@arnoldporter.com

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Circuit Rule 32(c). The brief contains 6,487 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 (2016) in Century Expanded BT 12-point font.

/s/ *Andrew Tutt*
Andrew T. Tutt

**CERTIFICATE OF FILING AND SERVICE**

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on December 28, 2022, I electronically filed the foregoing Reply Brief of Appellant via ECF, and service was accomplished on counsel of record by that means.

/s/ *Andrew Tutt*
Andrew T. Tutt