# In the United States Court of Appeals for the Seventh Circuit

---

ROY SARGEANT (Federal Prisoner No. #11709-171),

*Plaintiff-Appellant,*

v.

ARACELIE BARFIELD,

*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Illinois
No. 3:19-cv-50187 (Hon. Iain D. Johnston)

---

## PETITION FOR REHEARING EN BANC

---

Andrew T. Tutt
R. Stanton Jones
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000

Andrew R. Hirschel
Jacob P. Saracino
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-8000
Andrew.Hirschel@arnoldporter.com

*Counsel for Roy Sargeant*

February 12, 2024

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Roy Patrick Sargeant

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy (district court proceedings)

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Andrew T. Tutt    Date: 2/12/2024

Attorney's Printed Name: Andrew T. Tutt

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: Arnold & Porter Kaye Scholer LLP

601 Massachusetts Ave., NW    Washington, DC 20001-3743

Phone Number: (202) 942-5000    Fax Number: (202) 942-5999

E-Mail Address: andrew.tutt@arnoldporter.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

　　Roy Patrick Sargeant

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

　　Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy (district court proceedings)

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　　N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　　N/A

Attorney's Signature: /s/ R. Stanton Jones　　　　Date: 2/12/2024

Attorney's Printed Name:　Robert Stanton Jones

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** ☐　**No** ☑

Address:　Arnold & Porter Kaye Scholer LLP

　　601 Massachusetts Ave., NW    Washington, DC 20001-3743

Phone Number:　(202) 942-5000　　　　Fax Number:　(202) 942-5999

E-Mail Address: stanton.jones@arnoldporter.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>21-2287</u>

Short Caption: <u>Sargeant v. Barfield</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

   <u>Roy Patrick Sargeant</u>

   _____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

   <u>Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy</u>

(3)    If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

       <u>N/A</u>

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       <u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   <u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   <u>N/A</u>

Attorney's Signature: <u>/s/ Andrew R. Hirschel</u>      Date: <u>2/12/2024</u>

Attorney's Printed Name: <u>Andrew R. Hirschel</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: <u>Arnold & Porter Kaye Scholer LLP</u>

   <u>250 West 55th Street New York, NY 10019-9710</u>

Phone Number: <u>(212) 836-8000</u>      Fax Number: <u>(212) 836-8689</u>

E-Mail Address: <u>andrew.hirschel@arnoldporter.com</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Roy Patrick Sargeant

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Arnold & Porter Kaye Scholer LLP; Holmstrom & Kennedy

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Jacob Saracino    Date: 2/12/2024

Attorney's Printed Name: Jacob Saracino

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Arnold & Porter Kaye Scholer LLP

    250 West 55th Street New York, NY 10019-9710

Phone Number: (212) 836-8000    Fax Number: (212) 836-8689

E-Mail Address: jacob.saracino@arnoldporter.com

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................i

TABLE OF AUTHORITIES...........................................................................................ii

RULE 35 STATEMENT ..................................................................................................1

INTRODUCTION ............................................................................................................2

STATEMENT ...................................................................................................................2

    1.   Legal Background ...........................................................................................2

    2.   Factual and Procedural Background.............................................................5

REASONS FOR GRANTING THE PETITION .....................................................7

A.   The Panel Majority's Decision Conflicts with Supreme Court and Circuit Precedent on a Question of Exceptional Importance .........................................7

    1.   The Panel Dismantled Decades of Precedent in this Circuit....................7

    2.   The Panel Narrowed The Test for an Existing "*Bivens* Context"............9

B.   The Practical Consequences of this Case For Prisoners In this Circuit Require the Full Court's Intervention ..............................................................................12

CONCLUSION ...............................................................................................................14

CERTIFICATE OF COMPLIANCE ....................................................................... 15

CERTIFICATE OF FILING AND SERVICE ...................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

**<u>Cases</u>**

*Agostini v. Felton,*
    521 U.S. 203 (1997) ................................................................................. 11

*Bistrian v. Levi,*
    912 F.3d 79 (3d Cir. 2018) ............................................................. 4, 10, 13

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
    403 U.S. 388 (1971) ........................................................................ 2, 3, 14

*Bosse v. Oklahoma,*
    137 S. Ct. 1 (2016) (per curiam) ............................................................ 11

*Carlson v. Green,*
    446 U.S. 14 (1980) ......................................................................... 1, 3, 12

*Corr. Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ..................................................................... 4, 11, 13

*Davis v. Passman,*
    442 U.S. 228 (1979) ................................................................................. 3

*Egbert v. Boule,*
    596 U.S. 482 (2022) ..................................................................... *passim*

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ....................................................................... 1, 3, 4

*Hernandez v. Mesa,*
    582 U.S. 548 (2017) ............................................................................... 11

*Herron v. Meyer,*
    820 F.3d 860 (7th Cir. 2016) (Easterbrook, J.) ............................... 8, 13

*Minneci v. Pollard,*
    565 U.S. 118 (2012) ........................................................................ 4, 11

*Sargeant v. Barfield,*
    87 F.4th 358 (7th Cir. 2023) ......................................................... *passim*

*Wilkie v. Robbins,*
    551 U.S. 537 (2007) ............................................................................... 11

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017) ......................................................................................... *passim*

## RULE 35 STATEMENT

This case presents a question of exceptional importance. The Supreme Court permits *Bivens* suits against federal officials so long as they arise in one of the "contexts" in which the Supreme Court has previously permitted such suits. *Egbert v. Boule*, 596 U.S. 482, 492 (2022). The Supreme Court has called these contexts "*Bivens* context[s]." *Id.* If a case arises in an existing *Bivens* context, the suit may proceed.

This Court has allowed prisoners to vindicate their Eighth Amendment right against deliberate indifference by prison officials under *Bivens* "for decades." *Sargeant v. Barfield*, 87 F.4th 358, 370 (7th Cir. 2023) (Hamilton, J., dissenting). In *Farmer v. Brennan*, the Supreme Court *itself* signaled that a prison official's deliberate indifference to a serious risk of inmate-on-inmate violence falls within an existing *Bivens* context—the context established in *Carlson v. Green*, 446 U.S. 14 (1980)—citing *Carlson* as the basis for the *Bivens* claim in the case. 511 U.S. 825, 830 (1994).

But in an unsupportable departure from that settled law, the panel majority, over a dissent by Judge Hamilton, held that these archetypal *Bivens* claims arise in a "new context," leaving federal prisoners with no judicial remedy for the most serious forms of abuse. *Sargeant*, 87 F.4th at 368. In so doing, the majority took a step the Supreme Court has not, holding that the *Carlson* context is so narrow as to be limited "strictly to [its] facts." *Id.* at 371 (Hamilton, J., dissenting). The Court should grant rehearing *en banc*, vacate the panel decision, and hold that a suit for an Eighth Amendment violation arising from a low-level prison official's deliberate indifference to a substantial risk that a prisoner will be attacked by other inmates arises in the existing *Carlson* context.

**INTRODUCTION**

A divided panel in this case eliminated a cause of action that for decades has protected federal prisoners from cruel and unusual punishment by federal prison officials in this and other circuits. The majority upended this Court's longstanding precedent, fundamentally misapplied the Supreme Court's governing framework, placed this Circuit into a square and acknowledged conflict with the Third Circuit, and transformed how *Bivens* claims in this Circuit will be analyzed going forward.

This case cries out for *en banc* review. Whether the Supreme Court has effectively overturned this Court's decades-old position on the availability of *Bivens* relief for federal prisoners victimized by violence instigated by low-level prison officials should be determined *en banc*.

**STATEMENT**

1.   <u>Legal Background</u>

This case stems from *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized that individuals could bring suits for damages against federal officials who violated their clearly established rights under the Fourth Amendment. *Id.* at 389. There, agents of the Federal Bureau of Narcotics violated the Fourth Amendment by entering the plaintiff's apartment without a warrant, arresting him for alleged narcotics violations, conducting an illegal search, and subjecting him to a visual strip search. *Id.* No criminal case was brought, making the exclusionary rule unavailable. *Id.* at 410 (Harlan, J., concurring). The Court held that the plaintiff could pursue a damages remedy for these egregious constitutional violations because there were "no special factors counseling hesitation" against recognizing such a

remedy.  *Id.* at 396 (majority opinion).  That decision continued a long tradition "of United States courts providing damages remedies against federal officers who violated the legal rights of civilians."  87 F.4th at 374 (Hamilton, J., dissenting).

In the following decade, the Court twice extended the *Bivens* cause of action—first, to permit a former congressional staffer's Fifth Amendment sex-discrimination claim, *Davis v. Passman*, 442 U.S. 228 (1979); and second, to permit a federal prisoner's Eighth Amendment deliberate indifference claim, *Carlson v. Green*, 446 U.S. 14 (1980).  In *Carlson*, an inmate alleged that federal prison officials were deliberately indifferent to a substantial risk that he would suffer serious harm when they failed to provide him adequate medical care.  *See* 446 U.S. at 16-23 & 16 n.1.  In *Ziglar v. Abbasi*, which limited the extension of *Bivens* to new contexts, the Supreme Court made clear that *Carlson* remains good law and that *Bivens* claims arising in the same context as *Carlson* remain viable. 582 U.S. 120, 131-34 (2017).

Fourteen years after *Carlson*, the Supreme Court again allowed an inmate to proceed with a *Bivens* claim—this one complaining that prison officials had been deliberately indifferent to a substantial risk of serious harm when they placed the plaintiff, a transgender inmate, in the general population with inmates officials knew were likely to assault her.  *Farmer*, 511 U.S. at 831.  The Court's opinion in *Farmer* concerned the substantive standard for an Eighth Amendment deliberate indifference claim, not whether *Bivens* relief was available.  But that was because it treated the application of *Carlson* as a matter of settled law, citing it as the basis for the claim.  *See id.* at 830.  Not one Justice across the four opinions filed (or the federal government) even hinted that the inmate might

lack a cause of action under *Bivens*.  After clarifying the legal standard for "deliberate indifference," the Supreme Court remanded the case for the inmate to proceed under *Carlson*.  *Id*. at 832, 849.

As other courts have observed, both *Farmer*'s reasoning and result confirm that an inmate's claim that prison officials were deliberately indifferent to a substantial risk of serious harm is cognizable under *Bivens*, regardless of whether the harm stems from a medical condition or violence by other inmates.  S*ee Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018).

The Supreme Court has repeatedly acknowledged that *Farmer* recognized a *Bivens* claim.  In *Minneci v. Pollard*, the Court cited *Farmer* as an example of a "*Bivens* action[]" when comparing federal remedies for prison officials' deliberate indifference to those available under state law.  565 U.S. 118, 129-30 (2012).  In *Correctional Services Corp. v. Malesko*, the Court pointed to *Farmer* as establishing the appropriate "'deliberate indifference' standard of Eighth Amendment liability" for a complaint "raising a *Bivens* claim."  534 U.S. 61, 73 (2001).  The dissenting opinion in *Malesko* also agreed that *Farmer* exemplified an established *Bivens* claim.  *See id*. at 76 (Stevens, J., dissenting) ("We have never . . . qualified our holding that Eighth Amendment violations are actionable under *Bivens*." (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Since its early *Bivens* cases, "the Court has not implied additional causes of action under the Constitution."  *Egbert*, 596 U.S. at 491.  The Supreme Court's recent opinions in *Egbert* and *Ziglar* have said bluntly that "recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'"  *Id*. (quoting *Ziglar*, 582 U.S. at 135).  Nonetheless, the Court

has noted that *Bivens* actions are permitted in the three "contexts" in which the Court has already recognized the remedy. *Ziglar*, 582 U.S. at 130-34. Outside of those contexts, "[i]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong," courts are instructed to hesitate to expand the *Bivens* remedy. *Id.* at 137; *accord Egbert*, 596 U.S. at 492 (explaining courts should not expand the remedy if "there is any reason to think that Congress might be better equipped to create a damages remedy").

Thus, the Supreme Court's *Bivens* cases now require courts to make two threshold determinations. First, "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (cleaned up). Second, "if a claim arises in a new context," whether "there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Id.* (cleaned up).

### 2.   Factual and Procedural Background

At all relevant times, Petitioner Roy Sargeant was a federal prisoner at USP Thomson in Thomson, Illinois. This case arises from retaliatory acts taken against him by Barfield, Sargeant's case manager, who was responsible for evaluating his progress in prison. *Sargeant*, 87 F.4th at 360. In retaliation for filing a grievance against Barfield, Barfield "repeatedly" put Sargeant in cells with prisoners that she knew were violent and likely to attack him. *Id.* at 361. And so they did. Sargeant was ultimately transferred to another prison. *Id.*

Sargeant filed a *pro se* complaint in federal court against Barfield seeking damages. *Id.* The district court eventually dismissed his complaint for failure to state a claim and Sargeant appealed, arguing that his complaint stated an Eighth Amendment claim for deliberate indifference under *Carlson.  Id.*

After briefing and oral argument, a divided panel held that whatever the merits of Sargeant's claim, no *Bivens* remedy is available for deliberate indifference claims brought by a federal inmate unless those claims relate to inadequate medical care.  In reaching that conclusion, the panel majority reasoned that the Supreme Court's decision in *Farmer* was irrelevant because it "never held—just assumed—that a *Bivens* remedy was available to the plaintiff."  *Id.* at 365.  Sargeant's case arose in a "new context" from *Carlson*, in the panel's view, because it did not involve an "inadequate-medical-care claim" and would "invariably implicate housing policies[.]"  *Id.* at 366-67.  Turning to the second step of the *Bivens* inquiry, the panel concluded that "special factors" counseled hesitation here because the existence of the "Bureau of Prisons' internal grievance process" provides a "rational reason" to believe that Congress "might not want to authorize a damages remedy" for federal prisoners in Sargeant's circumstances.  *Id.* at 367-68.

Judge Hamilton dissented, explaining that the majority's holding "has the practical effect of limiting *Bivens*, *Carlson*, and *Davis* strictly to their facts, thereby implicitly overruling *Farmer v. Brennan*" and circuit precedent.  *Id.* at 371 (Hamilton, J. dissenting).  Rather than faithfully applying existing precedent, the panel majority sought to "anticipate [the] result" the Supreme Court might reach in a future case.  *Id.*  Instead, in light of "the long history of *Bivens*, its antecedents, and its progeny, including *Farmer*, as well as fifty

years of congressional acceptance of *Bivens*, and the principle that [courts] should follow Supreme Court precedents the Court itself has not overruled," Sargeant's allegations state a claim for relief under *Carlson*. *Id.* Because Sargeant's case "threatens no further 'intrusion' than the Supreme Court has long accepted" in "routine" cases "brought by federal, state, and local prisoners," Judge Hamilton concluded, it "does not present a new context." *Id.* at 372-73.

## REASONS FOR GRANTING THE PETITION

### A. The Panel Majority's Decision Conflicts with Supreme Court and Circuit Precedent on a Question of Exceptional Importance

The panel majority's decision to narrow the *Carlson* context to the vanishing point, and thereby bar the vast majority of federal inmate claims, upends this Court's longstanding precedents, flouts the Supreme Court's own guidance on this question, and puts the law in this Circuit in direct conflict with the Third Circuit. The Supreme Court's decision in *Farmer* should have been conclusive in this case. But even if *Farmer* left some doubt, the fact that the Supreme Court has carefully and repeatedly declined to limit *Bivens*, *Davis*, and *Carlson* "to their facts" shows that doing so impermissibly narrows the scope of the *Carlson* context. The Supreme Court has certainly never held, as the majority did, that a challenge to a low-level, federal prison official's deliberate decision to expose a prisoner to a serious risk of harm from other prisoners arises in a different context from *Carlson*. The majority in this case should not have preemptively held that it would.

### 1. The Panel Dismantled Decades of Precedent in this Circuit

As an initial matter, there can be no doubt that the panel majority's decision upends decades of settled law in this Circuit. As Judge Hamilton explained, "Eighth Amendment

claims like that asserted by plaintiff Sargeant—for deliberately putting a prisoner in danger of violence from other prisoners—have long been recognized by the Supreme Court, this Circuit, and other courts as entirely suitable for a *Bivens* claim." *Sargeant*, 87 F.4th at 369 (Hamilton, J., dissenting). Indeed, "[s]uch failure-to-protect claims have been recognized by this court and others for decades," *id.* at 370 (collecting nearly a dozen exemplary cases), including cases involving cell assignments, *see e.g.*, *Herron v. Meyer*, 820 F.3d 860, 862-63 (7th Cir. 2016) (Easterbrook, J.) (vacating dismissal of Eighth Amendment *Bivens* claim based on allegations that prison guard moved disabled prisoner "to a cell where he was likely to suffer an injury" as "on-the-spot punishment" for "fil[ing] too many grievances"). Courts in those cases, like the Supreme Court in *Farmer*, treated the availability of such a claim as beyond debate, scarcely considering the possibility that *Bivens* relief might not be available.

Those cases sensibly construed the scope of the relevant *Bivens* contexts in line with the Supreme Court's guidance. As Judge Easterbrook explained in *Herron*, the guard there, knowing it would violate the Constitution "to clobber an inmate with a truncheon in order to penalize a request to correct prison records," was no less liable under *Bivens* just because he "decided to achieve the same effect by moving Herron to a cell where he was likely to suffer an injury." 820 F.3d at 862–63. The clear import of *Herron*, as in *Farmer*, is that it does not matter for purposes of a *Carlson* claim whether a prison official is using inadequate medical care or a dangerous cell assignment as her "truncheon"—they are the same claim.

<u>The Panel Narrowed The Test for an Existing "*Bivens* Context"</u>

The panel majority's decision also flouts the Supreme Court's own guidance on how to understand the scope of a *Bivens* context. As Judge Hamilton explained, simply marching through the factors the Supreme Court set forth in *Ziglar* for determining whether a context is new reveals that this case falls squarely within the existing *Carlson* context. *Sargeant*, 87 F.4th at 372. The rank of the defendant is the same as *Carlson* and *Farmer*. *Id*. The constitutional right is the same. *Id*. The actions challenged are of the same specificity. *Id*. The judicial guidance is extensive. *Id*. The legal mandate is the same. *Id*. The risk of "intrusion" on the Executive Branch is the same.[1] *Id*.

Aside from the majority's misapplication of the governing test, the majority impermissibly (and incorrectly) anticipated future Supreme Court action under the assumption that the Court intends to further narrow the *Bivens* remedy. In the process, the majority ignored this Circuit's precedents and the guidance the Supreme Court has given, both in general and on this precise issue.

The Supreme Court already spoke to the precise question of the scope of *Carlson* in *Farmer*. As Judge Hamilton explained: "*Farmer v. Brennan* is squarely on point here" and "[i]t is evident . . . that at least eight Justices in *Farmer* had no doubt that, with sufficient proof of deliberate indifference, *Bivens* applies to a failure to protect a prisoner."

---

[1] The majority disagreed (only) with the last of these, *see* 87 F.4th at 367, but gave no explanation of how, in light of *Farmer* and this Circuit's precedent, this claim presented a heightened degree of intrusion. The majority also held that the PLRA cuts off the remedy here, *see id*. at 368-68, but if the panel is right about that, it would mean *all Carlson* claims are eliminated, which contravenes the Supreme Court's repeated holdings that *Carlson* claims remain available. *See Egbert*, 596 U.S. at 492.

*Id.* at 371. "The majority's theory turns *Farmer*, with hindsight, into a misguided waste of everyone's time." *Id.*

The Third Circuit agrees. *See id.* at 369 (citing, *inter alia*, *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021); and *Bistrian* 912 F.3d at 90-91). As the Third Circuit held in *Bistrian*, a case like this one in all material respects, "an inmate's claim that prison officials violated his . . . rights by failing to protect him against a known risk of substantial harm does not present a new *Bivens* context" because it fits within *Carlson*. 923 F.3d at 90. In *Bistrian*, inmates discovered that the plaintiff was cooperating with prison officials. *Id.* at 84. Despite their knowledge that other inmates had threatened the plaintiff, prison officials placed him in the recreation yard where he was brutally beaten by other inmates, suffering "severe physical and psychological injuries." The Third Circuit held that "prisoner-on-prisoner violence is not a new context for *Bivens* claims, and no special factors counsel against allowing a failure-to-protect cause of action." *Id.* at 88. The Third Circuit specifically acknowledged that *Farmer* shows that the *Carlson* context is broad enough to encompass such claims. *See id.* at 90.

The majority took the wrong lesson from the Supreme Court's precedents: even as it has pared back *Bivens* over the past two decades, the Court has been adamant that it does not intend to render the existing *Bivens* contexts meaninglessly narrow. Over and over again, the Supreme Court has been absolutely clear: existing *Bivens* contexts reach further than the strict fact patterns of *Bivens*, *Davis*, and *Carlson*. Indeed, for decades individual justices have written separately to advocate that *Bivens* claims should be limited to the "precise circumstances" of previous cases, but that view has never commanded

anything close to a majority of the Court. *Minneci*, 565 U.S. at 131-32 (Scalia, J., concurring) ("I would limit *Bivens* and its two follow-on cases . . . to the precise circumstances that they involved."); *see, e.g.*, *Wilkie v. Robbins*, 551 U.S. 537, 568 (2007) (Thomas, J., concurring) (same); *Malesko*, 534 U.S. at 75 (Scalia, J., concurring) (same); *see also Hernandez v. Mesa*, 582 U.S. 548, 555 (2017) (Thomas, J., dissenting) (same); *Ziglar*, 137 S. Ct. 1843, 1870 (Thomas, J., concurring in part and concurring in the judgment) (same).

And in *Egbert*, the Supreme Court's most recent *Bivens* decision, the Court not only maintained the two-step framework it set forth in *Ziglar*, but even left the door open for future *Bivens* extensions. *Egbert*, 596 U.S. at 492-93; *see id.* at 494-501 (considering whether to extend *Bivens* to the plaintiff's First and Fourth Amendment claims and declining to do so). Yet, as Judge Hamilton explained, the majority in this case did what the Court itself has resolutely and repeatedly declined to do: "limit[] *Bivens, Carlson*, and *Davis* strictly to their facts." *Sargeant*, 87 F.4ᵗʰ at 371 (Hamilton, J., dissenting).

At bottom, as Judge Hamilton explained, the majority "[saw] some writing on the wall" and "anticipate[d]" that the Supreme Court would hold that Sargeant's case is not a permissible *Bivens* claim. *Id.* at 369. But it is not this Court's "job to anticipate" the Supreme Court's next moves. *Id.* at 371. In fact, it is impermissible for this Court to do so: "[Supreme Court] decisions remain binding precedent … regardless of whether subsequent cases have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam); *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (similar).

**B.** **The Practical Consequences of this Case For Prisoners In this Circuit Require the Full Court's Intervention**

This case warrants the expenditure of time and resources involved in *en banc* review because of the far-reaching consequences of the majority's decision. The stakes of the panel majority's ruling for thousands of federal prisoners in this Circuit could not be higher. If it stands, untold numbers of federal prisoners will lose access not only to a legal remedy for clearly unconstitutional conduct that occurs all too often—and which has "routine[ly]" been made available by courts in this Circuit, *see Sargeant*, 87 F.4th at 372 (Hamilton, J., dissenting)—but also to its potentially powerful deterrent effects. As Judge Hamilton wrote, "[b]eyond the specifics of Sargeant's case, the practical stakes of the Supreme Court's dismantling of *Bivens* are high." *Id.* at 373. Although *Bivens* may not be "the only deterrent against abuse of power and authority by federal agents," it is the only one "outside the control of the executive branch, which is comprised of the very officials that *Bivens* is designed to check." *Id.*; *see also Carlson*, 446 U.S. at 25 ("A federal official contemplating unconstitutional conduct similarly must be prepared to face the prospect of a *Bivens* action").

Judge Hamilton's warning carries particular weight in the context of deliberate indifference to the safety of federal prisoners, who are not only politically powerless, unpopular, and routinely subjected to horrific abuse, but are sometimes subjected to that abuse, as in Sargeant's case, as a direct consequence of their use of internal grievance processes. The majority saw *Egbert* as signaling that such grievance processes supply "a rational reason why Congress might not want to authorize a damages remedy" to prisoners subjected to attack by fellow inmates. *Sargeant*, 87 F. 4th at 368. But it is irrational to

conclude that the existence of a process whose exercise not only fails to prevent the constitutional rights violations, but directly leads to them, signals Congress's possible opposition to a damages remedy, particularly when Congress has debated and passed legislation affecting prisoners' rights and remedies without addressing the availability of *Bivens* relief. *See id.* at 373 (Hamilton, J., dissenting) (congressional silence in the PLRA about the availability of *Bivens* remedies does not support a finding that Congress opposed such remedies (citing *Bistrian*, 912 F.3d at 92-93)). Without this remedy, federal prison officials will face *no* consequence for "clobber[ing]" inmates with whatever instrument they choose, *Herron*, 820 F.3d at 862—so long as that instrument is something other than inadequate medical care.

Further, the Supreme Court's recent cases reaffirm that deterrence lies at the very heart of *Bivens*. *See Egbert*, 596 U.S. at 498 ("*Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers'" (quoting *Malesko*, 534 U.S. at 71)); *Ziglar*, 582 U.S. at 146 ("There is therefore a balance to be struck . . . between deterring constitutional violations and freeing high officials to make the lawful decisions necessary to protect the Nation in times of great peril"). Eliminating the powerful deterrent effects of *Carlson* and *Farmer* on low-level prison officials doling out personalized punishment through deliberate indifference to substantial risks of inmate violence is no mere intellectual exercise; it threatens the very essence of *Bivens*, whose roots, Judge Hamilton explained, trace to "the early years of our Republic." *Sargeant*, 87 F.4th at 375 (Hamilton, J., dissenting).

The panel's decision abdicates the Court's most essential responsibility: to safeguard the constitutional rights of the most vulnerable. "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Id.* at 373-374 (quoting *Bivens*, 403 U.S. at 397). Absent *en banc* review, federal prisoners who are subjected to deliberate indifference by low-level prison officials will become almost uniquely unable to remedy the unconstitutional conduct that too often defines the conditions of their confinement. "As [*Egbert*, *Hernandez*, and *Ziglar*] are applied by the majority here and by some other circuits, a federal agent who violates the Constitution to carry out the policies of the federal executive branch now has little to fear in terms of direct accountability." *Id.* at 374.

## CONCLUSION

The Court should grant rehearing *en banc*.

Dated: February 12, 2024                    Respectfully submitted,

                                            /s/ Andrew R. Hirschel
Andrew T. Tutt                              Andrew R. Hirschel
R. Stanton Jones                            Jacob P. Saracino
ARNOLD & PORTER KAYE SCHOLER LLP            ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., N.W.                250 West 55th Street
Washington, DC 20001                        New York, NY 10019
(202) 942-5000                              (212) 836-8000
                                            Andrew.Hirschel@arnoldporter.com

                                            *Counsel for Petitioner Roy Sargeant*

**CERTIFICATE OF COMPLIANCE**

The foregoing petition complies with the type-volume limitation of Federal Rules of Appellate Procedure 32(c)(2) and 35(b)(2)(A).  The brief contains 3,864 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).  This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 365 (2016) in Century Expanded BT 12-point font.

/s/ *Andrew R. Hirschel*
Andrew R. Hirschel

## CERTIFICATE OF FILING AND SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on February 12, 2024, I electronically filed the foregoing petition via ECF, and service was accomplished on counsel of record by that means.


/s/ *Andrew R. Hirschel*
Andrew R. Hirschel