# No. 21-2287

## IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

ROY SARGEANT (Federal Prisoner No. #11709-171),
*Plaintiff-Appellant,*

v.

ARACELIE BARFIELD,
*Defendant-Appellee.*

On Appeal from the U.S. District Court for the Northern District of Illinois
No. 3:19-cv-50187 (Hon. Iain D. Johnston)

### AMICUS BRIEF OF CENTER FOR CONSTITUTIONAL RIGHTS, UPTOWN PEOPLE'S LAW CENTER, BLACK AND PINK MASSACHUSETTS, AND PHOENIX TRANSITION PROGRAM IN SUPPORT OF PLAINTIFF-APPELLANT'S PETITION FOR REHEARING EN BANC

| | | |
|---|---|---|
| Chinyere Ezie<br>The Center for<br>Constitutional Rights<br>666 Broadway, 7th Flr.<br>New York, NY 10012<br>(212) 614-6467<br>cezie@ccrjustice.org | Caitlin J. Sandley<br>The Center for<br>Constitutional Rights<br>P.O. Box 486<br>Birmingham, AL 35201<br>(212) 614-6443<br>csandley@ccrjustice.org | Jon Romberg<br>Seton Hall University<br>School of Law,<br>Center for Social Justice<br>833 McCarter Hwy.<br>Newark, NJ 07102<br>(973) 642-8700<br>jon.romberg@shu.edu |

*counsel for amici curiae*

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Center for Constitutional Rights; Uptown People's Law Center; Black and Pink Massachusetts;

Phoenix Transition Program.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Center for Constitutional Rights, The Seton Hall University School of Law Center for Social Justice, for proposed amici curiae

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and

   N/A

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

   N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: s/ Caitlin J. Sandley    Date: February 20, 2024

Attorney's Printed Name: Caitlin J. Sandley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ✔    No ☐

Address: The Center for Constitutional Rights P.O. Box 486 Birmingham, AL 35201

Phone Number: (212) 614-6443    Fax Number: 212-614-6499

E-Mail Address: csandley@ccrjustice.org

rev. 12/19 AK

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Center for Constitutional Rights; Uptown People's Law Center; Black and Pink Massachusetts; Phoenix Transition Program.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Center for Constitutional Rights, The Seton Hall University School of Law Center for Social Justice, for proposed amici curiae

(3) If the party, amicus or intervenor is a corporation:

  i) Identify all its parent corporations, if any; and

  N/A

  ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

  N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Chinyere Ezie    Date: February 20, 2024

Attorney's Printed Name: Chinyere Ezie

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ✔

Address: 666 Broadway, 7th Floor  New York, NY 10012

Phone Number: (212) 614-6467    Fax Number: (212) 614-6467

E-Mail Address: cezie@ccrjustice.org

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Center for Constitutional Rights; Uptown People's Law Center; Black and Pink Massachusetts; Phoenix Transition Program

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Center for Constitutional Rights, The Seton Hall University School of Law Center for Social Justice, for proposed amici curiae

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
   N/A

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: s/ Jon Romberg    Date: February 20, 2024

Attorney's Printed Name: Jon Romberg

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes ☐  No ✔

Address: 833 McCarter Hwy., Newark, NJ 07102

Phone Number: (973) 642-8700    Fax Number: (973) 642-8384

E-Mail Address: jon.romberg@shu.edu

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTERESTS OF AMICI CURIAE ....................................................................... 1

INTRODUCTION ................................................................................................ 2

ARGUMENT ........................................................................................................ 3

I.  The PLRA Was Enacted with Presumed Application to *Bivens* Failure-to-Protect Claims, Merely Requiring Exhaustion of BOP Grievance Procedures as a Precursor to Suit, Thus Congress Cannot Have Found Exhaustion an Adequate Remedial Scheme ...................................................... 3

II. BOP Housing Policy Is Not a Special Factor Barring Sargeant's Failure-to-Protect *Bivens* Claim Because Neither Housing Policy Nor Separation-of-Powers Concerns Are Meaningfully at Issue ...................................................... 8

CONCLUSION ................................................................................................... 12

CERTIFICATE OF COMPLIANCE .................................................................. 13

CERTIFICATE OF FILING AND SERVICE ................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979) ............................................................. 7

*Carlson v. Green*, 446 U.S. 14 (1980) ........................................................................ 6

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) .................................................... 6

*Egbert v. Boule*, 596 U.S. 482 (2022) ............................................................ 3, 8, 10, 11

*Farmer v. Brennan*, 511 U.S. 825 (1994) ............................................................. 5, 6, 9

*Franklin v. Gwinnett*, 503 U.S. 60 (1992) .................................................................... 7

*Hernandez v. Mesa*, 140 S. Ct. 735 (2020) ..................................................... 7, 10, 11

*McCarthy v. Madigan*, 503 U.S. 140 (1992) ................................................................ 4

*Porter v. Nussle*, 534 U.S. 516 (2002) ............................................................. 3, 4, 5, 6

*Sargeant v. Barfield*, 87 F.4th 358 (7th Cir. 2023) .............................................. *passim*

*Snowden v. Henning*, 72 F.4th 237 (7th Cir. 2023) ..................................................... 9

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ................................................................. 10, 11

**Other Authority**

141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995)
    (statement of Rep. Lobiondo) ............................................................................. 3

142 Cong. Rec. S2298–S2299 (daily ed. Mar. 19, 1996) ............................................. 4

Fed. R. App. P. 35(b) .................................................................................................... 2

Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e ................................... 2, 7

# INTERESTS OF AMICI CURIAE[1]

As explained at more length in the accompanying motion for leave to file this brief, amici the Center for Constitutional Rights and Uptown People's Law Center are legal advocacy organizations dedicated to advancing and defending the constitutional and human rights of marginalized communities, including incarcerated individuals. Amici Black and Pink Massachusetts and Phoenix Transition Program are non-profit organizations that support incarcerated LGBTQ+ people through advocacy, education, and mutual aid.

Drawing upon amici's collective experience advocating for the rights of incarcerated individuals under the Eighth Amendment, in Illinois federal prisons and elsewhere, amici respectfully submit this brief to assist the Court in understanding the ongoing importance of *Bivens* remedies under law and why en banc rehearing in *Sargeant* is crucial.

---

[1] Counsel for amici certify that no person other than amici and their counsel helped draft this brief or contributed any funds to its preparation or submission. Plaintiff-Appellant and Defendant-Appellee have consented to its filing.

## INTRODUCTION

Amici respectfully urge the Court to rehear this case en banc because the underlying legal issue—whether people in federal prisons can be compensated when prison officials unconstitutionally fail to protect them from violence—is of great moment. The courts of appeals are split. The panel was split. And the panel's decision to bar Eighth Amendment *Bivens* suits against individual officers is of great concern to amici, whose clients are frequently Black, Indigenous, and/or transgender people of color disproportionately subject to criminalization, mass incarceration, and violence in prison.

The panel majority found two bases to bar Plaintiff-Appellant Roy Sargeant's failure-to-protect *Bivens* claim. As explained below, both bases are fundamentally mistaken. Rehearing en banc is necessary to ensure consistency with Supreme Court precedent and to prevent the complete prohibition of failure-to-protect *Bivens* claims in the Seventh Circuit, a result that will have devastating consequences for amici's clients. *See* Fed. R. App. P. 35(b). This prohibition simply cannot be reconciled with Supreme Court precedent or with Congress's intent in enacting the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

## ARGUMENT

I. The PLRA Was Enacted with Presumed Application to *Bivens* Failure-to-Protect Claims, Merely Requiring Exhaustion of BOP Grievance Procedures as a Precursor to Suit, Thus Congress Cannot Have Found Exhaustion an Adequate Remedial Scheme.

One of the panel's two bases for barring Sargeant's failure-to-protect *Bivens* claim was its conclusion that, because "the legislative or the executive branch has forged a remedy that 'it finds' adequate to deter misconduct by individual officials"—i.e., "the PLRA and the Bureau of Prisons' grievance program"—we cannot 'second-guess that calibration by superimposing a *Bivens* remedy.'" *Sargeant v. Barfield*, 87 F.4th 358, 367–68 (7th Cir. 2023) (quoting *Egbert v. Boule*, 596 U.S. 482, 498 (2022)).

This conclusion is entirely unjustified. There is not "any reason," even "arguably," *id.* at 366, to believe that Congress might have found the PLRA's exhaustion requirement adequate (or that the executive branch believed BOP exhaustion requirements adequate) to deter officer misconduct. That is because the PLRA's exhaustion requirement is simply a mandatory prerequisite imposed on incarcerated people *before* they can file *Bivens* claims. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Congress enacted the PLRA as a precursor to—but not substitute for—suit, intended to "aid in deterring frivolous claims" while enabling nonfrivolous *Bivens* claims to "proceed." 141 Cong. Rec. H14078, H14105 (daily ed. Dec. 6, 1995) (statement of Rep. Lobiondo); *accord Porter*, 534 U.S. at 524–25. In short, Congress intended the PLRA to deter frivolous inmate claims, *and* Congress intended meritorious *Bivens* claims to proceed and thereby deter officer misconduct.

3

The panel mistakenly concluded that the PLRA should be understood to suggest that Eighth Amendment *Bivens* claims are limited to those asserting deliberate indifference to serious medical needs. *Sargeant*, 87 F.4th at 368. Congress, however, specifically contemplated that *Bivens* claims would also encompass guards' deliberately indifferent failure to protect incarcerated people from violence. Assistant Attorney General Schmidt testified before the Senate, providing the Administration's view concerning the broad scope of the proposed PLRA, stating that "inmates do suffer unconstitutional conditions of confinement, and ultimately must retain access to meaningful redress when such violations occur," explaining that "conditions that have been found to violate the Eighth Amendment" include "excessive violence, whether inflicted by guards or by inmates under the supervision of indifferent guards," i.e., failure-to-protect claims. 142 Cong. Rec. S2298–S2299 (daily ed. Mar. 19, 1996), https://www.congress.gov/congressional-record/volume-142/issue-38/senate-section/article/S2285-2?.

Schmidt's testimony further "recommend[ed] that [the PLRA not only require exhaustion in § 1983 suits, but] also incorporate a rule requiring federal prisoners to exhaust administrative remedies prior to commencing litigation." *Id.* at S2298. Congress plainly considered Schmidt's views on *Bivens* claims because it implemented this recommendation in the PLRA by overruling *McCarthy v. Madigan*, 503 U.S. 140 (1992), extending the exhaustion requirement to *Bivens* actions. *Porter*, 534 U.S. at 524. The PLRA and BOP exhaustion regime therefore cannot even arguably be understood to have been thought adequate to remedy—and thereby

foreclose—failure-to-protect claims that Congress specifically contemplated would be brought, *once exhausted*, under *Bivens*.

The PLRA's text and original public meaning support this conclusion. The Supreme Court has construed the PLRA's language, applicable to both § 1983 and *Bivens* claims, to reach *all* Eighth Amendment prison-conditions claims brought by people in state *and* federal custody. *Porter*, 534 U.S. at 524. *Porter*, construing the PLRA, observed that "Congress described the cases covered by § 1997e(a)'s exhaustion requirement as 'action[s] . . . brought with respect to prison conditions.'" *Id.* at 525. And *Porter* recognized that such prison-conditions actions would encompass failure-to-protect claims, rejecting "the argument that Congress meant [in the PLRA] to bi-sect the universe of prisoner suits." *Id.* at 527.

Instead, *Porter* understood Congress's language in the PLRA defining the scope of prison-conditions claims as refusing to "classify[] suits about prison guards' use of excessive force, one or many times, as anything other than actions 'with respect to prison conditions.'" *Id.* at 528. *Porter* thus specifically construed the scope of the PLRA's language—applicable to *both* § 1983 and *Bivens* claims—to reach prison-conditions claims including failure-to-protect claims against guards. Congress cannot be understood to have intended to use those words to reach failure-to-protect claims under § 1983, as *Porter* held, but to use those same words to bar such claims under *Bivens*.

The original public meaning of the PLRA is parallel. Congress enacted the PLRA less than two years after the Supreme Court's decision in *Farmer v. Brennan*, 511

5

U.S. 825 (1994). *Farmer*, which involved the intentional exposure of a transgender person to violent attacks by other incarcerated people, specifically upheld the petitioner's "*Bivens* complaint" asserting a "deliberately indifferent failure to protect petitioner's safety" in "violation of petitioner's Eighth Amendment rights." 511 U.S. at 830–31; *see also id.* at 834 (setting forth the criteria by which both § 1983 and *Bivens* Eighth Amendment claims would be reviewed, holding broadly that "failure to prevent harm" claims in "prison-conditions cases" require a "state of mind" of "'deliberate indifference' to inmate *health or safety,*" i.e., the contexts at issue in *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer*, respectively) (emphasis added).

The Court "generally 'presume[s] that Congress expects its statutes to be read in conformity with th[e] Court's precedents.'" *Porter*, 534 U.S. at 528 (citation omitted). When *Farmer* was decided (indeed, for years thereafter), the viability of a failure-to-protect *Bivens* claim was so obvious that neither the Court nor the parties so much as mentioned the possibility that failure-to-protect claims might not be viable under *Bivens*. *Cf. Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer . . . ."). Congress enacted the PLRA—amending § 1997e to reach *Bivens* claims for the first time—in the immediate aftermath of *Farmer*; in doing so, Congress must be understood to have presumed the then-unquestioned viability of *Bivens* failure-to-protect claims. And Congress has not since acted to undercut that presumption.

6

This Court need not rely on *Farmer*'s understanding that its failure-to-protect claims presented the same *Bivens* context as *Carlson*, as Judge Hamilton argues convincingly in dissent, *Sargeant*, 87 F.4th at 371–72. Instead, this Court can rely on the compelling bases above to conclude that Congress presumed and thereby validated the viability of *Farmer* failure-to-protect claims when enacting the PLRA. *See Franklin v. Gwinnett*, 503 U.S. 60, 72–73 (1992) (reasoning that congressional amendments to Title IX validated the Court's prior holding in *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979), which had found an implied right of action under Title IX); *accord id.* at 78 (Scalia, J., concurring) (quoting *id.* at 72) (agreeing that the amendments "must be read . . . 'as a validation of *Cannon*'s holding'").

Congress enacted the PLRA fully cognizant of *Farmer*'s precedent, under which *Bivens* failure-to-protect claims, even if not overtly held to be viable, were undoubtedly presumed to be viable. Congress, through the PLRA, expressly limited *Bivens* claims in two specific ways. *See* 42 U.S.C. § 1997e(a) (requiring exhaustion); 42 U.S.C. § 1997e(e) (limiting recovery for "mental or emotional injury"). But as to *Bivens* failure-to-protect claims, the PLRA "simply left *Bivens* where it found it," *Hernandez v. Mesa*, 140 S. Ct. 735, 748 n.9 (2020)—i.e., leaving in place the right to bring Eighth Amendment failure-to-protect claims under *Bivens*.

II. BOP Housing Policy Is Not a Special Factor Barring Sargeant's Failure-to-Protect *Bivens* Claim Because Neither Housing Policy Nor Separation-of-Powers Concerns Are Meaningfully at Issue.

The panel's other basis for not recognizing Sargeant's failure-to-protect *Bivens* claim was that his claim "will invariably implicate housing policies," thus "risk[ing] interfere[nce] with the functioning of another branch." *Sargeant*, 87 F.4th at 367. Sargeant's claim does not, however, meaningfully implicate the propriety of BOP's housing policy. He alleges that a rogue, low-level federal official deliberately violated BOP policy, absent *any* legitimate governmental interest; he does not claim—as in prior special-factors cases—that the official acted unconstitutionally when following a national policy with arguably systemwide ramifications. BOP's housing policy is simply not a "'special factor[]' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 492 (citation omitted).

Sargeant's claim creates no risk of intruding upon executive or legislative power not already considered by the Supreme Court in *Carlson* or by Congress in enacting the PLRA. Sargeant's failure-to-protect claim alleges that Barfield deliberately exposed Sargeant to violence by "'repeatedly' put[ting] Sargeant in cells with prisoners that she knew were violent." *Sargeant*, 87 F.4th at 361. Barfield was not acting, in any sense, under BOP's housing policy, or even in misguided or problematic furtherance of any executive branch policy—she was deliberately contravening that policy.

Resolution of Sargeant's claim thus does not implicate any BOP policy; his claim requires resolving *factually* whether Sargeant is correct that Barfield's challenged

8

conduct had no connection to any BOP objective or policy. As *Farmer* held, "gratuitously allowing the beating . . . of one prisoner by another serves no 'legitimate penological objective'" and thus violates the Eighth Amendment because "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Farmer*, 511 U.S. at 833–34.

The panel concedes that this Court already recognized that *Carlson* "approved of some intrusion into the functioning of federal prisons." *Sargeant*, 87 F.4th at 367 (citing *Snowden v. Henning*, 72 F.4th 237, 246 (7th Cir. 2023)). Whereas *Carlson* was "no more disruptive than what *Bivens* itself already approved," *Snowden*, 72 F.4th at 246, resolution of Sargeant's claim is far *less* disruptive to BOP policy than the intrusion *Carlson* approved. As explained in Section I, above, it is well within the scope of the intrusion on BOP prerogatives that Congress necessarily anticipated in enacting the PLRA.

Resolution of *Bivens* claims of deliberate indifference to serious medical needs, found viable in *Carlson*, necessitates judicial inquiry into the wisdom of prison medical policy and practices, including trade-offs between and judgments about safety, cost, and the government's responsibility to care for the people it imprisons. And medical claims have the potential to implicate institutional housing policies at least as much as failure-to-protect claims. Here, Barfield intentionally exposed Sargeant to violence from other incarcerated people, and she happened to do so by deliberately ignoring BOP housing policy.

9

Sargeant's case is thus readily distinguishable from prior cases in which the Supreme Court declined to recognize a *Bivens* remedy because the suit might implicate a meaningful special factor the Court had not already considered. The Court's recent special-factors cases afford great—and, amici believe, undue—deference to conceivable Congressional desire to immunize executive branch actors who violate the Constitution while arguably acting in furtherance of executive branch policy objectives. *See Egbert*, 596 U.S. at 494 (finding that a Border Patrol agent accused of violating the Fourth Amendment was acting in the interest of national security); *Hernandez*, 140 S. Ct. at 744–45 (recognizing the Executive's decision not to prosecute a Border Patrol agent involved in a cross-border shooting where the agent "did not act inconsistently with [Border Patrol] policy"); *Ziglar v. Abbasi*, 582 U.S. 120, 142–43 (2017) (deferring to the Executive's decision regarding discipline of agents accused of unconstitutional acts in the context of heightened national security concerns).

Here, in fundamental contrast, Barfield's conduct *should have been* pursuant to BOP housing policy, but Sargeant's factual assertion is that Barfield's conduct had no connection to that or any legitimate BOP policy implicating safety, discipline, or resources. This distinguishes Sargeant's claim from precedents in which the Court held that judicial involvement could implicate separation-of-powers concerns by second-guessing an agency's policy.

Moreover, even assuming (incorrectly) that Sargeant's claim tangentially implicated the propriety of BOP housing policy, and even assuming that any arguable

10

intrusion on BOP prerogatives would be meaningfully different than what *Carlson* authorized, such concerns are fundamentally different than those implicated in prior special-factors cases. Those cases involved federal officials acting in the context of assertedly weighty and systemwide *national* policy concerns. *See, e.g.*, *Abbasi*, 582 U.S. at 142–43 (deferring, absent congressional instruction, to the Executive's determinations of matters "essential to national security"); *Hernandez*, 140 S. Ct. at 744–45 (declining to "arbitrate" between the United States and Mexico "because such foreign policy matters are 'so exclusively entrusted to the political branches of government'"); *Egbert*, 596 U.S. at 494 (deferring to judgment that a Border Patrol agent was acting in the interest of national security).

The Court has been hesitant to speculate about possible systemwide implications of *Bivens* actions that challenge the conduct of *federal* officers acting against a backdrop of *national* security or border concerns. But prison failure-to-protect claims, whether under § 1983 or *Bivens*, have regularly proceeded without undermining correctional systems' operations and without implicating the sort of weighty, federal policy concerns that have given the Court pause. This case simply asserts that a single, rogue, low-level official intended to impose harm rather than act pursuant to BOP policy.

The panel asserted, at a high level of abstraction, the existence of separation-of-powers concerns and an unexplained "invariabl[e] implicat[ion of BOP] housing policies." *Sargeant*, 84 F.4th at 367. As explained above, those fears are not meaningfully at issue.

**CONCLUSION**

This Court should grant rehearing en banc because (1) Congress understood that failure-to-protect *Bivens* claims were viable when it enacted the PLRA and has done nothing to limit their viability in the three decades hence, and (2) because no novel special factors are present that counsel against judicial review.

Respectfully submitted,

/s/ *Caitlin J. Sandley*
_____
Caitlin J. Sandley

| | | |
|---|---|---|
| Chinyere Ezie | Caitlin J. Sandley | Jon Romberg |
| The Center for | *counsel of record* | Seton Hall University |
| Constitutional Rights | The Center for | School of Law, |
| 666 Broadway, 7th Flr. | Constitutional Rights | Center for Social |
| New York, NY 10012 | P.O. Box 486 | Justice |
| (212) 614-6467 | Birmingham, AL 35201 | 833 McCarter Hwy. |
| cezie@ccrjustice.org | (212) 614-6443 | Newark, NJ 07102 |
| | csandley@ccrjustice.org | (973) 642-8700 |
| | | jon.romberg@shu.edu |

*counsel for amici curiae*

February 20, 2024

## CERTIFICATE OF COMPLIANCE

The foregoing brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(b)(4). The brief contains 2,596 words, excluding those parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and Circuit Rule 32(b) because this brief has been prepared using Microsoft Word 365 in 12-point Century Schoolbook, a proportionately spaced typeface.

/s/ *Caitlin J. Sandley*
_____
Caitlin J. Sandley

February 20, 2024

# CERTIFICATE OF FILING AND SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on February 20, 2024, I electronically filed the foregoing amicus brief via ECF, and service was accomplished on counsel of record by email through the means of ECF filing.

/s/ *Caitlin J. Sandley*

Caitlin J. Sandley