# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

ROY SARGEANT,

*Plaintiff-Appellant,*

v.

ARACELIE BARFIELD,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of Illinois, No. 3:19-cv-50187
Before the Hon. Iain D. Johnston

## BRIEF OF *AMICI CURIAE* THE RODERICK & SOLANGE MACARTHUR JUSTICE CENTER AND RIGHTS BEHIND BARS IN SUPPORT OF PLAINTIFF-APPELLANT'S PETITION FOR REHEARING EN BANC

Oren Nimni
RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
(202) 455-4399
oren@rightsbehindbars.org

*Counsel for Amicus Curiae
Rights Behind Bars*

Devi M. Rao
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3490
devi.rao@macarthurjustice.org

Elena S. Meth
RODERICK & SOLANGE
 MACARTHUR JUSTICE CENTER
160 E. Grand Ave., Sixth Floor
Chicago, IL 60611
(202) 869-3875
elena.meth@macarthurjustice.org

*Counsel for Amicus Curiae
Roderick & Solange MacArthur Justice
Center*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>21-2287</u>

Short Caption: <u>Sargeant v. Barfield</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Roderick & Solange MacArthur Justice Center</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Roderick & Solange MacArthur Justice Center</u>

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    <u>n/a</u>

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    <u>n/a</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>n/a</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>n/a</u>

Attorney's Signature: <u>/s/ Devi M. Rao</u>    Date: <u>2/20/2024</u>

Attorney's Printed Name: <u>Devi M. Rao</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☑   **No** ☐

Address: <u>Roderick & Solange MacArthur Justice Center</u>

<u>501 H St. NE, Suite 275, Washington, DC 20001</u>

Phone Number: <u>202-869-3434</u>    Fax Number: <u>202-869-3435</u>

E-Mail Address: <u>devi.rao@macarthurjustice.org</u>

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Roderick & Solange MacArthur Justice Center

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Roderick & Solange MacArthur Justice Center

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Elena S. Meth    Date: 2/20/2024

Attorney's Printed Name: Elena S. Meth

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: Roderick & Solange MacArthur Justice Center

    160 E. Grand Ave., 6th Fl., Chicago, IL 60611

Phone Number: 202-869-3875    Fax Number: 202-869-3435

E-Mail Address: elena.meth@macarthurjustice.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Rights Behind Bars

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Rights Behind Bars

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Oren Nimni    Date: 2/20/2024

Attorney's Printed Name: Oren Nimni

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✔]  No [ ]

Address: Rights Behind Bars

416 Florida Ave. NW, #26152, Washington, DC 20001

Phone Number: 202-455-4399    Fax Number:

E-Mail Address: oren@rightsbehindbars.org

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

INTEREST OF *AMICI CURIAE* ...............................................................1

ARGUMENT ..................................................................................................2

   I.      Prison officials routinely fail to protect prisoners from sexual and
           physical violence. .....................................................................................2

   II.    *Bivens* is the only recourse for prisoners seeking damages for their
           injuries resulting from prison officials' failure to protect them from
           violence, and is critical to deterring ongoing constitutional violations. ....8

CONCLUSION ............................................................................................11

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bistrian v. Levi*,
  912 F.3d 79 (3d Cir. 2018) ...............................................................6

*Boresky v. Graber*,
  No. 23-384, 2024 WL 156477 (U.S. Jan. 16, 2024)............................1

*Bulger v. Hurwitz*,
  62 F.4th 127 (4th Cir. 2023) .......................................................6, 10

*Burnam v. Smith*,
  787 F. App'x 387 (9th Cir. 2019) ......................................................5

*Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*,
  No. 4:23-cv-04155-YGR (N.D. Cal. Aug. 16, 2023) .........................2

*Caldwell v. Warden, FCI Talladega*,
  748 F.3d 1090 (11th Cir. 2014) .........................................................6

*Carlson v. Green*,
  446 U.S. 14 (1980)..................................................................8, 9, 10

*Chambers v. Herrera*,
  78 F.4th 1100 (9th Cir. 2023) ......................................................7, 10

*Farmer v. Brennan*,
  511 U.S. 825 (1994)...........................................................................3

*Ferreyra v. Hicks*,
  No. 23-324, 2024 WL 71950 (U.S. Jan. 8, 2024)...............................1

*Herrera v. United States*,
  No. 20-CV-10206, 2022 WL 902090 (S.D.N.Y. Mar. 27, 2022)..................5, 10

*Herron v. Meyer*,
  820 F.3d 860 (7th Cir. 2016) .............................................................7

*Hunt v. Matevousian*,
    336 F. Supp. 3d 1159 (E.D. Cal. 2018) ..........................................................7, 10

*Lehn v. Holmes*,
    364 F.3d 862 (7th Cir. 2004) ...........................................................................8

*Longworth v. Mansukhani*,
    No. 5:19-CT-3199-FL, 2021 WL 4472902
    (E.D.N.C. Sept. 29, 2021)...........................................................................5, 10

*Marquez v. C. Rodriguez*,
    81 F.4th 1027 (9th Cir. 2023) ...............................................................1, 6, 10

*Rios v. Redding*,
    No. 21-1060, 2022 WL 842749 (10th Cir. Mar. 22, 2022) ...................................1

*Sargeant v. Barfield*,
    87 F.4th 358 (7th Cir. 2023) .........................................................................9, 10

*Shorter v. United States*,
    12 F.4th 366 (3d Cir. 2021) .......................................................................1, 2, 3

*Silva v. United States*,
    45 F.4th 1134 (10th Cir. 2022) .........................................................................1

*Stanard v. Dy*,
    88 F.4th 811 (9th Cir. 2023) .............................................................................1

*Taylor v. Kobayashi*,
    No. 22-16017, 2023 WL 2400879 (9th Cir. Mar. 8, 2023) ............................5, 10

*Young v. Quinlan*,
    960 F.2d 351 (3d Cir. 1992) .............................................................................3

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017)........................................................................................9

**Statutes**

34 U.S.C. § 30301(2) .........................................................................................3

34 U.S.C. § 30301(13) .......................................................................................9

34 U.S.C. § 30302(1) .........................................................................................9

**Other Authorities**

Administrative Remedy Program: Excluded Matters, 67 Fed. Reg. 50,804 (Aug. 6, 2002).............................................................9

Compl., *Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*, No. 4:23-cv-4155 (N.D. Cal. Aug. 16, 2023)....................................4, 5

Compl., *Fisher v. Hollingsworth*, No. 18-16793, 2022 WL 3500432 (D.N.J. Aug. 18, 2022).......................................................3

Department of Justice: Office of Justice Programs, *Allegations of Sexual Victimization in Adult Correctional Facilities Nearly Tripled from 2011 to 2015*, Bureau of Justice Statistics (July 25, 2018) .....................................................................................3

James M. Byrne & Don Hummer, *Myths and Realities of Prison Violence: A Review of the Evidence*, 2 Victims & Offenders 77 (2007)........................................................................................8

M. Keith Chen & Jesse M. Shapiro, *Do Harsher Prison Conditions Reduce Recidivism? A Discontinuity-based Approach*, 9 Am. L. & Econ. Rev. 1 (2007) ..............................................................7

# INTEREST OF *AMICI CURIAE*[1]

The Roderick & Solange MacArthur Justice Center (RSMJC) is a public interest law firm founded in 1985 by the family of J. Roderick MacArthur to advocate for human rights and social justice through litigation. RSMJC routinely litigates issues surrounding the availability of *Bivens* causes of action and failure-to-protect claims arising under the Eighth Amendment throughout the federal circuits. *See, e.g.*, *Fisher v. Hollingsworth*, No. 22-2846 (3d Cir.); *Ballard v. Dutton*, No. 23-6416 (2d Cir.); *Rios v. Redding*, No. 21-1060, 2022 WL 842749 (10th Cir. Mar. 22, 2022); *Boresky v. Graber*, No. 23-384, 2024 WL 156477 (U.S. Jan. 16, 2024); *Ferreyra v. Hicks*, No. 23-324, 2024 WL 71950 (U.S. Jan. 8, 2024); *Rowe v. Church*, No. 21-3198 (10th Cir.).

Rights Behind Bars (RBB) legally advocates for people in prison, jail, and immigration detention and contributes to a legal ecosystem in which such advocacy is more effective. RBB routinely litigates in the federal courts of appeals on *Bivens* causes of action under the Eighth Amendment. *See, e.g.*, *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021); *Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022); *Marquez v. C. Rodriguez*, 81 F.4th 1027 (9th Cir. 2023); *Stanard v. Dy*, 88 F.4th 811

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No person, other than the amici, their members, or their counsel, contributed money that was intended to fund preparation or submission of this brief. Petitioner consents to the filing of this brief and the defendant does not oppose its filing.

(9th Cir. 2023); *Longworth v. Mansukhani*, No. 21-7609 (4th Cir.). RBB also represents numerous former and current federal prisoners in trial courts seeking remuneration for injuries they suffered in federal facilities. *See, e.g.*, *Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*, No. 4:23-cv-04155-YGR (N.D. Cal. Aug. 16, 2023).

*Amici* therefore have both deep expertise and a particular interest in the consistent development of *Bivens* jurisprudence. *Amici* file this brief to situate the case within the broader stakes of losing *Bivens* as a remedy for federal prisoners.

## ARGUMENT

### I. Prison officials routinely fail to protect prisoners from sexual and physical violence.

Prison officials, who are tasked with ensuring prisoner safety, often ignore known safety risks, leading to tragic results. This is true even when prisoners warn officers that they are at risk of sexual assault by other prisoners, as happened to Chrissy Shorter. Despite knowing Shorter was transgender and at "significantly" higher risk of sexual assault, officers opted to house her in a room with eleven men and no lock. *Shorter v. United States*, 12 F.4th 366, 369 (3d Cir. 2021). Shorter pled for housing in a safer cell closer to a guard station or transfer to a safer facility, but nonetheless she was left in "the cell furthest from the officer's station." *Id.* at 370. Staff were well aware of the "apparent urgency of the situation," and yet slow-

walked her transfer request. *Id*. As a result, a prisoner entered Shorter's cell in the middle of the night, "raped her, and cut her seven times." *Id.*

Shorter's story exemplifies a pervasive pattern: even when prisoners facing threats of sexual assault ask for help and cooperate with officials, those officials fail to act. There is no shortage of similar cases arising within federal prisons. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 830 (1994) (officials placed transgender prisoner in general population where she was inevitably raped, despite knowing she was at a heightened risk of suffering violence); Compl. at 10-12, 14-17, *Fisher v. Hollingsworth*, No. 18-16793, 2022 WL 3500432 (D.N.J. Aug. 18, 2022) (officials refused to protect prisoner after receiving repeated threats and harassment, resulting in prisoner being repeatedly, violently raped); *Young v. Quinlan*, 960 F.2d 351, 353-56 (3d Cir. 1992) (prisoner who was sexually assaulted by cellmates repeatedly reported threats and attacks to guards who declined to protect him and forced him to endure horrific conditions as apparent retaliation).

Government data only underscores the sickening extent of sexual assault in prisons. In 2003, Congress found that "the total number of inmates who ha[d] been sexually assaulted in the past 20 years likely exceed[ed] 1,000,000." 34 U.S.C. § 30301(2). Between 2012 and 2015, prisoners reported 67,169 allegations of sexual victimization. Department of Justice: Office of Justice Programs, *Allegations of*

*Sexual Victimization in Adult Correctional Facilities Nearly Tripled from 2011 to 2015*, Bureau of Justice Statistics (July 25, 2018).[2]

Unfortunately, prisoners are not just at risk from the threat of sexual assault by other prisoners; prison officials can also be perpetrators, and other officials dismiss or ignore concerns or allegations of sexual assault. Cases arising out of FCI Dublin alone demonstrate as much.[3] When an officer who admitted to sexually assaulting four other women raped J.L., he pushed into her so violently that her head repeatedly hit the concrete wall in front of them. Complaint at 27, *Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*, No. 4:23-cv-4155 (N.D. Cal. Aug. 16, 2023). G.M. endured ongoing harassment by two officers, which included unwanted physical touching, such as an officer coming up behind her, rubbing his penis against her, and attempting to kiss her neck. *Id*. at 27-28. Another officer regularly entered the showers to watch her and other women, and would refuse to give G.M. a towel "unless she walked over to him naked." *Id*. at 28. S.L. was similarly repeatedly kissed and groped by an officer while she worked and after she

---

[2] https://bjs.ojp.gov/content/pub/press/svraca1215pr.pdf.

[3] Abuse is so rampant at FCI Dublin that the former Warden, Chaplain, and several guards have been convicted of sexually abusing those in their custody and current prisoners have formed a putative class action to address the "horrific abuse and exploitation at the hands of facility staff" that has gone unchecked for years. *See* Compl. at 1, *Cal. Coal. for Women Prisoners v. U.S. Fed. Bureau of Prisons*, No. 4:23-cv-4155 (N.D. Cal. Aug. 16, 2023).

showered. *Id.* at 30-31. And L.T. was forced to strip-dance repeatedly for an officer who fondled her bare breasts. *Id.* at 28. While officers, supervisors, and leadership throughout FCI Dublin were aware of the ongoing sexual abuse at the facility, prison staff protected their abusive colleagues by failing to investigate or respond meaningfully to claims and by retaliating against those who reported abuse. *Id.* As a result, the stories above represent only a fraction of the people who have come forward with similar allegations about FCI Dublin. *See id.* at 3.

Prison officials' failure to protect prisoners from staff-perpetrated sexual assault is by no means unique to FCI Dublin. Tragically, examples from across Federal Bureau of Prison (BOP) facilities abound. *See, e.g.*, *Burnam v. Smith*, 787 F. App'x 387, 390 (9th Cir. 2019) (prison official failed to protect prisoner from sexual harassment and abuse by another staff member, even after repeatedly witnessing abuse); *Taylor v. Kobayashi*, No. 22-16017, 2023 WL 2400879, at *1 (9th Cir. Mar. 8, 2023) (prison officials failed to protect prisoners from sexual assault perpetrated by officer, despite complaints); *Longworth v. Mansukhani*, No. 5:19-CT-3199-FL, 2021 WL 4472902, at *2 (E.D.N.C. Sept. 29, 2021) (prison officials who recognized a staff member was spending "an unusual amount of time alone" with a prisoner failed to protect prisoner from years of sexual assault by that staff member); *Herrera v. United States*, No. 20-CV-10206, 2022 WL 902090, at *3 (S.D.N.Y. Mar. 27, 2022) (correctional officer sexually abused at least fourteen prisoners, enabled

by flagrant violations of security and operating protocols obvious to other prison officials).

Prisoners also face the risk of extreme physical violence when prison officials fail to protect them. For example, Peter Bistrian, a federal prisoner who cooperated with officials at the Federal Detention Center in Philadelphia, was deliberately placed in a recreational yard with another prisoner who had been threatening him, a fact of which officials were well aware. *Bistrian v. Levi*, 912 F.3d 79, 83-84 (3d Cir. 2018). When it became known that he was cooperating with officials in a "surveillance operation," the threats intensified. *Id.* at 84. Bistrian reported these threats and yet guards placed Bistrian at risk of harm, looked on as he was brutally beaten, and waited to intervene until "the damage was done." *Id.*

Numerous other cases show prison officials failing to protect prisoners from physical violence. Indeed, prison officials often *create* the conditions in which prisoners are allowed, or even incited, to attack another prisoner. *See, e.g.*, *Bulger v. Hurwitz*, 62 F.4th 127, 134, 137 (4th Cir. 2023) (placement of a "medically vulnerable" person with "a reputation as a 'snitch' and child molester" in general population, leading to prisoner being bludgeoned to death); *Marquez v. C. Rodriguez*, 81 F.4th 1027, 1029 (9th Cir. 2023) (denial of protective custody despite repeated requests due to threats of violence resulted in fellow detainees forcing plaintiff to exercise until collapse); *Caldwell v. Warden, FCI Talladega*, 748 F.3d

1090, 1093-95 (11th Cir. 2014) (prisoner assaulted and stabbed by cellmate with known history of violence toward other prisoners who was told by an officer "[k]ill [plaintiff]. I don't care").

Prison officials also regularly fail to protect prisoners from physical attack at the hands of other prison staff. *See, e.g.*, *Herron v. Meyer*, 820 F.3d 860, 862-63 (7th Cir. 2016) (Easterbrook, J.) (prison guard moved disabled prisoner "to a cell where he was likely to suffer an injury" as "on-the-spot punishment" for "fil[ing] too many grievances"); *Chambers v. Herrera*, 78 F.4th 1100, 1103 (9th Cir. 2023) (prison officials failed to protect plaintiff from an officer who threatened and broke his arm and wrist in several assaults); *Hunt v. Matevousian*, 336 F. Supp. 3d 1159, 1167 (E.D. Cal. 2018) (prison official watched on as three other officers brutally beat a disabled prisoner for complaining about his medically necessary assistive devices being confiscated and his lack of access to an accessible toilet and shower), *aff'd*, No. 18-17464, 2023 WL 8064536 (9th Cir. Nov. 21, 2023).

The data again demonstrate the magnitude of prison officials' failure to protect prisoners from violence. Reports show that 16% of federal minimum-security prisoners and 22% of federal maximum-security prisoners reported being seriously injured while incarcerated. M. Keith Chen & Jesse M. Shapiro, *Do Harsher Prison Conditions Reduce Recidivism? A Discontinuity-based Approach*, 9 Am. L. & Econ. Rev. 1, 8 (2007). But, again, these numbers likely undercount the problem.

Studies capturing under-reporting suggested that "assault victimization" was "at least ten times greater than the official estimates"—that the official report of 34,000 assaults in 2000 represented a conservative estimate of "around 300,000" actual physical and sexual assaults in prison. James M. Byrne & Don Hummer, *Myths and Realities of Prison Violence: A Review of the Evidence*, 2 Victims & Offenders 77, 79-80 (2007).

II. ***Bivens* is the only recourse for prisoners seeking damages for their injuries resulting from prison officials' failure to protect them from violence, and is critical to deterring ongoing constitutional violations.**

*Bivens* is one of the few legal tools that can hold prison officials accountable for unquestionable constitutional violations when they fail to protect prisoners in their custody. *See* Appellant's Pet. for Reh'g *En Banc* 12. *Bivens* was created as a way for individuals with claims against federal officers to seek compensation for their harm and to deter future harm by officers. *Carlson v. Green*, 446 U.S. 14, 21 (1980). Damages claims under *Bivens* are often the only form of relief available to victims and the only method of disincentivizing future bad acts by officials. Injunctive relief is often stymied because the BOP can moot any claim for injunctive relief by moving the victim from the facility where they experienced the harm. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Damages actions, however, can proceed regardless of transfer.

The Supreme Court has recognized that where a plaintiff pursues "individual instances" of official misconduct, such claims "due to their very nature are difficult to address except by way of damages actions after the fact." *Ziglar v. Abbasi*, 582 U.S. 120, 144 (2017). Money damages are unavailable in the BOP grievance system. Administrative Remedy Program: Excluded Matters, 67 Fed. Reg. 50,804, 50,804 (Aug. 6, 2002). Defendant officers often point to the Federal Tort Claims Act as providing a damages remedy, as defendant Barfield did here, but the FTCA does not provide reason to hesitate in recognizing a *Bivens* remedy for Eighth Amendment failure-to-protect claims. *See Sargeant v. Barfield*, 87 F.4th 358, 368 n.5 (7th Cir. 2023). And the Prison Rape Elimination Act, enacted to "establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States," 34 U.S.C. § 30302(1), lacks its own cause of action because Congress relied on *Bivens* to provide the cause of action for failure to protect sexual assault cases, *see* 34 U.S.C. § 30301(13) (citing favorably *Farmer* in the Act's preamble). For most prisoners harmed due to prison officials' failure to protect them, then, it is "damages or nothing." *Abbasi*, 582 U.S. at 144. That means *Bivens* or nothing.

No other federal remedy serves the second critical function of *Bivens*: deterrence. The Supreme Court has explicitly recognized that "the *Bivens* remedy, in addition to compensating victims, serves a deterrent purpose." *Carlson*, 446 U.S. at 21. Indeed, "[i]t is almost axiomatic that the threat of damages has a deterrent

effect." *Id.* The BOP's internal grievance system is hardly a deterrence mechanism. As noted above, it does not provide for damages. And by forcing prisoners to confront the same officials they are dependent on to have basic needs met, the grievance system routinely leads to retaliation for filing grievances against prison staff—as is the case for Sargeant. Sargeant filed grievances for a staff member's sexual harassment against him and, in retaliation, defendant Barfield "repeatedly" put Sargeant in cells with prisoners she knew were violent. *Sargeant*, 87 F. 4th 358 at 360-61. What is more, as the examples above illustrate, prison officials often perpetrate or condone the abuse they are supposed to report and deter.

In short, the *Bivens* remedy remains uniquely critical to ensuring that individual prison officials are held accountable for violating their duty to protect the incarcerated people in their care and are deterred from perpetuating the ongoing epidemic of sexual and violent assaults in the federal prison system. Many of the examples of horrible, preventable sexual and physical violence discussed in this brief come from circuits that have *rejected* the availability of *Bivens* actions, meaning that those harmed can have neither their day in court nor a chance at redress. *See, e.g.*, *Bulger*, 62 F.4th at 137-44; *Marquez*, 81 F.4th at 1030; *Chambers*, 78 F.4th at 1105-06; *Hunt*, 336 F. Supp. 3d at 1; *Taylor*, 2023 WL 2400879, at *1; *Longworth*, 2021 WL 4472902, at *5; *Herrera*, 2022 WL 902090, at *8-9. As a result, scandals like the widespread sexual abuse at facilities like FCI Dublin will continue absent

effective remedies and incentives. Rehearing en banc is critically important so that the full court can ensure that prisoners may receive justice when prison officials fail to protect them from known risks of sexual or physical assault.

## CONCLUSION

For the reasons stated above, and those raised in Plaintiff-Appellant's Petition for Rehearing En Banc, this Court should grant the petition and reverse the panel opinion.

Date: February 20, 2024

Respectfully Submitted,
*/s/ Devi M. Rao*

Oren Nimni
RIGHTS BEHIND BARS
416 Florida Ave. NW #26152
Washington, D.C. 20001
(202) 455-4399
oren@rightsbehindbars.org

*Counsel for Amicus Curiae*
*Rights Behind Bars*

Devi M. Rao
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, DC 20002
(202) 869-3490
devi.rao@macarthurjustice.org

Elena S. Meth
RODERICK & SOLANGE
  MACARTHUR JUSTICE CENTER
160 E. Grand Ave., Sixth Floor
Chicago, IL 60611
(202) 869-3875
elena.meth@macarthurjustice.org

*Counsel for Amicus Curiae*
*Roderick & Solange MacArthur Justice*
*Center*

## CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: February 20, 2024        */s/ Devi M. Rao*
                                        Devi M. Rao

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Seventh Circuit Rule 29 because it contains 2,546 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2016 and Times New Roman 14-point font.

Dated: February 20, 2024      */s/ Devi M. Rao*
                                           Devi M. Rao