No. 21-2287

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ROY SARGEANT,

                Plaintiff-Appellant,

v.

ARACELIE BARFIELD,

                Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
District Court Case No. 19 C 50187
Hon. Iain D. Johnston

BRIEF OF THE CATO INSTITUTE AND THE LAW ENFORCEMENT
ACTION PARTNERSHIP AS *AMICI CURIAE*
IN SUPPORT OF THE PETITION FOR REHEARING EN BANC

GIBSON, DUNN & CRUTCHER LLP
Samuel Eckman
seckman@gibsondunn.com
Mudit Buch
mbuch@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for the Cato Institute and the
Law Enforcement Action Partnership*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2287

Short Caption: Sargeant v. Barfield

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
The Cato Institute; Law Enforcement Action Partnership

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Gibson, Dunn & Crutcher LLP

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
   N/A

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ Samuel Eckman     Date: February 20, 2024

Attorney's Printed Name: Samuel Eckman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ✓   No ☐

Address: 333 South Grand Avenue, Los Angeles, CA 90071-3197

Phone Number: 213-229-7204     Fax Number: 213-229-6204

E-Mail Address: SEckman@gibsondunn.com

rev. 12/19 AK

# TABLE OF CONTENTS

**Page**

STATEMENT OF IDENTITY OF *AMICI CURIAE*, INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE ........................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT.......................................1

ARGUMENT..............................................................................................................3

    I.    *BIVENS* IS AN ESSENTIAL AND EFFICIENT TOOL FOR VINDICATING CONSTITUTIONAL RIGHTS. ...............................3

    II.    APPLYING *BIVENS* TO EIGHTH AMENDMENT FAILURE-TO-PROTECT CLAIMS WOULD NOT UNDULY INTRUDE ON THE FEDERAL PRISON SYSTEM. ...........................................9

CONCLUSION........................................................................................................12

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7) ................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
   403 U.S. 388 (1971) ................................................................................ 1

*City of Riverside v. Rivera*,
   477 U.S. 561 (1986) ................................................................................ 6

*Egbert v. Boule*,
   596 U.S. 482 (2022) ................................................................................ 2

*Sargeant v. Barfield*,
   87 F.4th 358 (7th Cir. 2023) ................................................................ 2, 9

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ............................................................................ 2, 3

**Statutes**

42 U.S.C. § 1997e(a) ................................................................................ 10

**Other Authorities**

Alexander A. Reinert, *Measuring the Success of Bivens Litigation and Its Consequences for the Individual Liability Model*, 62 Stan. L. Rev. 809, 839 (2010) ................................................................................ 4, 8

Catherine Fisk & Erwin Chemerinsky, *Civil Rights Without Remedies: Vicarious Liability Under Title VII, Section 1983, and Title IX*, 7 Wm. & Mary Bill Rts. J. 755, 796 (1999) ................................................ 6

James E. Pfander et al., *The Myth of Personal Liability: Who Pays When Bivens Claims Succeed*, 72 Stan. L. Rev. 561, 579 (2020) ............... 10

James E. Pfander, *Iqbal, Bivens, and the Role of Judge-Made Law in Constitutional Litigation*, 114 Penn St. L. Rev. 1387, 1407 (2010) ........... 8

Joanna C. Schwartz, *How Governments Pay: Lawsuits, Budgets, and Police Reform*, 63 UCLA L. Rev. 1144, 1151 (2016) ................................ 6

Joanna C. Schwartz, *What Police Learn From Lawsuits*, 33 Cardozo L. Rev. 841, 845 (2012) ........................................................................ 5, 7

John C. Jeffries, Jr., *The Liability Rule For Constitutional Torts*, 99 Va. L. Rev. 207, 240 (2013) .................................................................... 6

Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1681 (2003) .................................................................................................... 6

Myriam E. Gilles, *In Defense of Making Government Pay: The Deterrent Effect of Constitutional Tort Remedies*, 35 Ga. L. Rev. 845, 858–65 (2001) .................................................................................. 4, 5

Richard H. Fallon, Jr. & Daniel J. Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 Harv. L. Rev. 1731, 1788 (1991) ........................................................................................ 9

# STATEMENT OF IDENTITY OF *AMICI CURIAE*, INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE[*]

The Cato Institute is a nonpartisan public-policy research foundation established in 1977 and dedicated to advancing the principles of individual liberty, free markets, and limited government.

The Law Enforcement Action Partnership is a nonprofit composed of police, prosecutors, judges, corrections officials, and other criminal-justice professionals who seek to improve public safety, promote alternatives to arrest and incarceration, address the root causes of crime, and heal police–community relations through sensible changes to our criminal-justice system.

*Amici* share a steadfast belief that the Eighth Amendment's prohibition against cruel and unusual punishment lies at the heart of American justice, and that the rigorous enforcement of this prohibition is imperative to preserving our system of limited government and promoting accountability.

## INTRODUCTION AND SUMMARY OF ARGUMENT

When the Supreme Court decided *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), more than 50 years ago, it

---

[*] Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), neither a party nor a party's counsel authored this brief, in whole or in part, or contributed money that was intended to fund the preparation or submission of this brief. No person (other than the *amici curiae*, their members, or their counsel) contributed money that was intended to fund preparing or submitting the brief. Both parties have consented to the filing of this brief. A motion for leave to file accompanies this brief.

1

recognized that earlier judge-made rules designed to deter the violation of constitutional rights—namely, the exclusionary rule—had proven woefully inadequate. In response, the Court built upon longstanding common-law traditions in authorizing private parties whose rights had been violated by federal officials to sue for damages.

Just seven years ago, the Supreme Court reaffirmed "the continued force, or even the necessity, of *Bivens*." *Ziglar v. Abbasi*, 582 U.S. 120, 134 (2017). *Bivens*, the Court explained, "vindicate[s] the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward." *Id.* Even where the Supreme Court has found *Bivens* inapplicable, it has unambiguously refused to "reconsider *Bivens* itself." *Egbert v. Boule*, 596 U.S. 482, 502 (2022).

This is for good reason. More than half a century of experience with *Bivens* confirms that it provides a potentially highly effective means of enforcing constitutional rights, exposing individual and systemic misconduct, and incentivizing policymakers to adopt needed reforms. And contrary to the panel's opinion, allowing federal prisoners a remedy under *Bivens* in cases like this one will not present "separation-of-powers concerns" by inviting courts to "interfere with . . . housing policies," *Sargeant v. Barfield*, 87 F.4th 358, 367 (7th Cir. 2023), because the Prison Litigation Reform Act ("PLRA") and its exhaustion

2

requirement ensure that the Bureau of Prisons ("BOP") will have the first opportunity to resolve any complaints raised by prisoners about their conditions. Indeed, a number of *Amicus* Law Enforcement Action Partnership's members who have worked in the prison system have emphasized the salutary effect constitutional tort actions have in maintaining harmonious relations between prisoners and their custodians.

Federal prisoners are among our Nation's most vulnerable populations. It is precisely these people—who cannot vote, who cannot protest or demonstrate, and who cannot garner the attention of the media—who most depend on the judicial system to have their voices heard and their rights protected. The panel's opinion denied them access to that forum. This Court should therefore grant rehearing en banc.

## ARGUMENT

I. ***BIVENS* IS AN ESSENTIAL AND EFFICIENT TOOL FOR VINDICATING CONSTITUTIONAL RIGHTS.**

More than 50 years into the *Bivens* era, the evidence is unequivocal: The private right of action for constitutional violations authorized by that decision is one of the most effective mechanisms available for policing and preventing government misconduct. Even as the Supreme Court has hesitated to extend *Bivens* to entirely new contexts, it has confirmed that *Bivens* remains a powerful tool in the "common and recurrent sphere of law enforcement." *Abbasi*, 582 U.S.

3

at 134. This Court should not blunt that tool by refusing to apply *Bivens* to claims, like this one, alleging violations of fundamental rights by federal law-enforcement officers.

Empirical analyses confirm that *Bivens* has provided an important pathway for citizens to obtain redress for the violation of their constitutional rights. A survey of five federal district courts across the country found that 38.9 percent of counseled *Bivens* actions—and 9.5 percent of pro se *Bivens* actions—resulted in a victory for the plaintiffs. Alexander A. Reinert, *Measuring the Success of Bivens Litigation and Its Consequences for the Individual Liability Model*, 62 Stan. L. Rev. 809, 839 (2010). Notably, *Bivens* actions alleging prison-condition violations had an overall success rate of 15.3 percent, *id.* at 836 n.138—despite the fact that the vast majority of these actions were brought pro se, with the "difference in success between pro se and represented plaintiffs . . . statistically significant in most districts and within the sample as a whole," *id.* at 838.

But *Bivens* actions are not limited to remedying individual violations of particular citizens' rights. On the contrary, one of the most important effects of *Bivens* has been to achieve systemic reforms by incentivizing government agencies to adopt policies that minimize the risk that constitutional constraints are violated in the first place. It has done so through its "informational" and "fault-fixing" functions. Myriam E. Gilles, *In Defense of Making Government Pay: The*

*Deterrent Effect of Constitutional Tort Remedies*, 35 Ga. L. Rev. 845, 858–65 (2001).

In their informational function, *Bivens* actions bring to light individual and systemic abuses that might otherwise go unnoticed by policymakers. "When constitutional tort victims pursue litigation, motivated by the availability of compensatory damages, valuable information is unearthed and exposed." Gilles, 35 Ga. L. Rev. at 859. This litigation can encourage other victims of government misconduct to come forward, exposing patterns of abuse. And the crucible of discovery can fix attention on problem actors and institutional deficiencies within law-enforcement agencies. Studies confirm that constitutional tort litigation has informed "officials of misconduct allegations that did not surface through . . . other reporting systems," such as civilian complaints and internal reporting systems. Joanna C. Schwartz, *What Police Learn From Lawsuits*, 33 Cardozo L. Rev. 841, 845 (2012). In fact, a growing number of law-enforcement agencies have begun to "mine lawsuits for data about misconduct allegations and the details of those allegations." *Id.* at 846–47.

With respect to their "fault-fixing" function, *Bivens* actions can encourage policymakers to proactively protect constitutional rights in two ways. *First*, "the damages a plaintiff recovers contribute[] significantly to the deterrence of civil rights violations in the future" by forcing government actors to internalize the costs

of misconduct.  *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986).  Federal agencies naturally wish "to minimize the amount of their budget that is lost to paying damages," and *Bivens* actions "give[] [these agencies] a greater incentive to monitor, supervise, and control the acts of their employees" to ensure that they are hewing to constitutional strictures.  Catherine Fisk & Erwin Chemerinsky, *Civil Rights Without Remedies: Vicarious Liability Under Title VII, Section 1983, and Title IX*, 7 Wm. & Mary Bill Rts. J. 755, 796 (1999); *see also* John C. Jeffries, Jr., *The Liability Rule For Constitutional Torts*, 99 Va. L. Rev. 207, 240 (2013) ("[D]amages for constitutional violations . . . heighten the disincentives for governments to engage in conduct that might result in constitutional violations.").

*Second*, *Bivens* actions "can trigger bad publicity" that puts pressure on policymakers to prevent constitutional violations.  Margo Schlanger, *Inmate Litigation*, 116 Harv. L. Rev. 1555, 1681 (2003).  "[E]ven for an agency that doesn't care about payouts (perhaps because those payouts come from some general fund rather than the agency's own budget), media coverage of abuses or administrative failures can trigger embarrassing political inquiry and even firings, resignations, or election losses."  *Id.*; *see also* Joanna C. Schwartz, *How Governments Pay: Lawsuits, Budgets, and Police Reform*, 63 UCLA L. Rev. 1144, 1151 (2016) (noting that *Bivens* actions can put critical "nonfinancial pressures" on

6

policymakers "by generating publicity about allegations of misconduct and by revealing previously unknown information about the details of that misconduct").

An example of these informational and fault-fixing functions working together to produce proactive solutions to official misconduct can be found in Los Angeles. During a periodic review of suits brought against officers in the Los Angeles Sheriff's Department under 42 U.S.C. § 1983, officials discovered "clusters of improper vehicle pursuits, illegal searches, and warrantless home entries" for which no civilian complaint existed, and which "did not appear in officers' use-of-force reports." Schwartz, 33 Cardozo L. Rev. at 845. Once the Department's auditor identified the trend, he was able to recommend policy changes to prevent additional violations going forward, including "enhanced supervision to improve vehicle pursuits and accuracy when responding to calls." *Id.* at 854.

Compared to these many benefits, the costs of *Bivens* actions are exceedingly low. Although courts do occasionally confront meritless *Bivens* actions, just as they occasionally confront meritless actions of all types, they have proven adept at screening such actions when they arise. For example, the same multidistrict survey cited above found that "almost 20% of the *Bivens* claims identified . . . were dismissed sua sponte because the district court screened them for frivolity and determined that they should be dismissed out of hand," thereby

avoiding the "burdens of *Bivens* litigation about which courts and commentators express concern—no defendant is subject to intrusive discovery or the potential of liability, and no attorney even has to review the complaint and prepare an answer or motion to dismiss."  Reinert, 62 Stan. L. Rev. at 840.  These findings "persuasively refute[]" the prior "assumption that *Bivens* claims typically lack merit" and "threaten[] to overwhelm the federal judiciary."  James E. Pfander, *Iqbal, Bivens, and the Role of Judge-Made Law in Constitutional Litigation*, 114 Penn St. L. Rev. 1387, 1407 (2010).

Furthermore, *Bivens* cases make up a small fraction of federal courts' dockets.  "As a percentage of total civil filings involving federal questions, *Bivens* suits filed between 2001 and 2003 ranged anywhere from 0.7% to 2.5% of the work of" surveyed district courts, "and 1.2% of the total federal question filings."  Reinert, 62 Stan. L. Rev. at 835.  And they comprise less than 0.17 percent of all cases filed in federal court.  *Id.* at 837 (finding 243 *Bivens* filings out of 143,092 total civil filings in the districts surveyed).

Put simply, *Bivens* serves a critical function in not only righting individual wrongs, but incentivizing the adoption of systemic reforms to ensure strict adherence to the Constitution.  Many plaintiffs who assert claims under *Bivens* have in fact had their rights infringed by federal officials, and those who have not are unlikely to burden the judicial system because their claims are unlikely to

advance beyond the very earliest stages of litigation.  In other words, truncating *Bivens* will leave those Americans who have suffered a violation of their most fundamental rights without a remedy, while gaining next to nothing in terms of easing federal dockets.

## II. APPLYING *BIVENS* TO EIGHTH AMENDMENT FAILURE-TO-PROTECT CLAIMS WOULD NOT UNDULY INTRUDE ON THE FEDERAL PRISON SYSTEM.

In declining to recognize a *Bivens* claim here, the panel expressed its concern that such a claim "would interfere with the functioning of another branch" because "failure-to-protect claims against prison officials responsible for cell assignments under *Bivens* will invariably implicate housing policies, which factor in a sensitive mixture of things [courts] are ill-positioned to assess—a prison's determinations about safety, discipline, and resources."  *Sargeant*, 87 F.4th at 367.  But this concern is unwarranted for at least two reasons.

*First*, by providing only a damages remedy, *Bivens* does not mandate any programmatic changes at all, much less does it require the courts to choose what those changes should look like.  Indeed, "a damages award does not require discontinuation of such practices, [but] it exerts significant pressure on government and its officials to respect constitutional bounds."  Richard H. Fallon, Jr. & Daniel J. Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 Harv. L. Rev. 1731, 1788 (1991).  For this reason, recognizing a *Bivens* claim here would

9

leave the BOP free to determine housing policies however it likes—and in doing so, would not only facilitate institutional buy-in, but also encourage experimentation and adaptation. And because the Treasury Department's Judgment Fund covers the costs of *Bivens* judgments against federal prison officials, the BOP would retain all of the autonomy with none of the costs of litigation. *See* James E. Pfander et al., *The Myth of Personal Liability: Who Pays When Bivens Claims Succeed*, 72 Stan. L. Rev. 561, 579 (2020) (finding, in a study of 171 successful *Bivens* cases, that the Judgment Fund covered the payments while the BOP did not pay a cent).

*Second*, a *Bivens* action against federal prison officials would reach the courts only *after* the BOP has had an opportunity to resolve the issue in the first instance. Under the PLRA, a prisoner cannot bring a claim regarding prison conditions until he or she has first exhausted administrative remedies available through the prison system. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted."). Thus, the BOP will have the opportunity to balance the "sensitive mixture" of concerns cited by the panel, and only if it fails to do that in a satisfactory manner will the court have occasion to address the question.

Far from intruding on the BOP's prerogatives, *Bivens* plays an important role in maintaining harmonious relations between prisoners and their custodians by

10

ensuring that prisoners feel that their concerns will be heard and that abusive officers will be held to account. Richard Van Wickler, a former New Hampshire prison superintendent and member of *Amicus* Law Enforcement Action Partnership's Board of Directors, extolls the benefits of constitutional tort actions for prison officials. For Mr. Van Wickler, "[p]risoners who are heard, and reasonably responded to, contribute significantly to a peaceful environment that benefits inmates and staff alike." He asserts that "holding government officials accountable for conducting themselves professionally should never be considered an unreasonable burden on the government." On the contrary, Mr. Van Wickler believes that "heard claims contribute to a peaceful correctional environment by ensuring that unprofessional conduct is policed and corruption or bad faith curtailed."

Unfortunately, however, the panel's opinion leaves federal prisons without any judicial supervision, no matter how egregious the constitutional violation may be. This is a grave abdication of the judicial function, and one that abandons countless prisoners across the country to the mercy of their jailors. This is not—and cannot be—the law.

## CONCLUSION

For the foregoing reasons, the judgment of the panel should be reviewed en banc.

Dated: February 20, 2024

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Samuel Eckman
    Samuel Eckman
    Mudit Buch

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: seckman@gibsondunn.com
       mbuch@gibsondunn.com

*Attorneys for Cato Institute and the Law Enforcement Action Partnership*

# CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A)(7)

The undersigned, counsel of record for the Cato Institute and the Law Enforcement Action Partnership, furnishes the following in compliance with Federal Rule of Appellate Procedure 32(a)(7):

I hereby certify that this brief conforms to the rules contained in Federal Rule of Appellate Procedure 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 2,551 words.

Dated February 20, 2024.

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Samuel Eckman
    Samuel Eckman
    Mudit Buch

333 South Grand Avenue
Los Angeles, CA 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520
Email: seckman@gibsondunn.com
        mbuch@gibsondunn.com

*Attorneys for Cato Institute and the Law Enforcement Action Partnership*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                    */s/ Samuel Eckman*
                                                    Samuel Eckman